FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA



2004 AUG -5 AM 10: 55

MIDDLE DISTRICT OF FLORIDA
FT MYERS DIVISION

Case No. 2:04-cv-47-FtM-29 SPC

WHITNEY INFORMATION
NETWORK, INC., a Colorado corporation,
and RUSS WHITNEY, an individual,

      Plaintiffs,

v.

XCENTRIC VENTURES, LLC., an
Arizona limited liability company;
BADBUSINESSBUREAU.ORG, an
Arizona limited liability company; and
ED MAGEDSON, an individual,

      Defendants.

_____/

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION

Plaintiffs, WHITNEY INFORMATION NETWORK, INC. and RUSS WHITNEY, by and through their undersigned counsel, file this, their Memorandum of Law in Opposition to Defendants' Motion to Dismiss Complaint for Lack of Personal Jurisdiction, and state:

### INTRODUCTION

On or about January 22, 2004, Plaintiffs filed a Complaint against Defendants, for: I) Federal Trademark Infringement; II) False Designation of Origin, False Description and False Representation under 15 U.S.C. § 1125(a); III) Common Law Trademark Infringement; and IV) Defamation per se of Business Reputation. On or about June 28, 2004, Defendants filed their Motion to Dismiss Complaint for Lack of Personal Jurisdiction with Supporting Memorandum of Law.

**SCANNED**

Dockets.Justia.com

Case No. 2:04-cv-47-FtM-29 SPC

## I.    STANDARD OF REVIEW FOR PERSONAL JURISDICTION

On a motion to dismiss for lack of personal jurisdiction, district courts must accept facts alleged in complaint as true to the extent they are uncontroverted by defendant's affidavits and where plaintiff's complaint and defendant's affidavits conflict, district courts must construe all reasonable evidence in favor of plaintiff. Hoechst Celanese Corp. v. Nylon Engineering Resins, Inc., 896 F. Supp. 1190, 1192 (M.D. Fla. 1995). Whether the Court can exercise personal jurisdiction over a nonresident defendant involves a two-part analysis. Id. at 1192; Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990); Cable/Home Communication Corp. v. Network Prods. Inc., 902 F.2d 829, 855 (11th Cir.1990); Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989).

First, the Court must determine whether Plaintiffs established sufficient jurisdictional facts to subject Defendants to Florida's long-arm statute. Venetian Salami Co., 554 So. 2d at 502. If there is a basis to assert personal jurisdiction over Defendants under Florida's long-arm statute, the Court next determines whether Defendants possess sufficient minimum contacts to satisfy constitutional due process requirements. Id. at 500. The initial burden is on Plaintiffs to plead a sufficient basis for service under Florida's long-arm statute. Id. at 502. If Defendants contest the allegations raised in Plaintiffs' Complaint they must file affidavit(s) in support of their Motion to Dismiss for Lack of Personal Jurisdiction. Id. at 502. If there is no conflict between the parties' affidavits as to the essential jurisdictional facts, the Court is free to resolve the issue of jurisdiction based on the affidavits. Id. at 502. If any essential facts relating to jurisdiction are in conflict, then the Court must conduct a limited evidentiary hearing to resolve the disputed facts. Id. at 503.

Case No.  2:04-cv-47-FtM-29 SPC

## II.    **BACKGROUND**

### A.    Defendants' Defamatory Publication  and use of Plaintiffs' trademarks on Defendants' Website in Florida

Defendants, Xcentric Ventures, Badbusinessbureau.org and Ed Magedson, publish websites known as "www.ripoffreport.com" and "www.ripoffrevenge.com" for commercial and economic gain and publish same in and throughout Florida.  Defendants hold themselves out to the public as a "worldwide consumer reporting website and publication, by consumers for consumers" to file and document consumer complaints about "companies or individuals who rip off consumers."  See Copy of Defendants' home page attached hereto as Composite Exhibit "A" and incorporated herein by reference.  Defendants solicit consumers to submit complaints about any company that has allegedly "ripped" the consumer off.

Once Defendants receive a complaint from the consumer about Plaintiffs, they review it and choose which complaint to publish on their website, "www.ripoffreport.com." Defendants do not notify Plaintiffs when a complaint has been made; rather they simply publish the defamatory information on their website without providing Plaintiffs any opportunity to rebut the allegations.  Defendants' publication of the chosen consumer complaints is with reckless disregard for the truth as Defendants do not verify such complaints for accuracy.  Defendants simply publish the chosen complaints and declare that Plaintiffs are "ripping off" consumers.  Further, in publishing the defamatory stories about Plaintiffs, Defendants use Plaintiffs' trademarks in the title of such stories in an effort to divert Internet traffic to Defendants' website.

Furthermore, while on Defendants' website, "www.ripoffreport.com," there are solicitations by the Defendant for consumers to click on a link titled "Rip Off Revenge"

where consumers are then directed to Defendants' second website, "www.ripoffrevenge.com." Through Rip Off Revenge, Defendants offer to sell consumers either a service wherein Defendants will "help victims collect in a few days or hours," or consumers can pay $19.95 and receive a "Do-it-Yourself Guide: How to get Rip-Off Revenge and your money back too..." See Copy of Defendants' home page attached hereto as Composite Exhibit "B" and incorporated herein by reference. Defendants' website, "www.ripoffreport.com," also offers advertising banner ads for sale, which advertisers can pay Defendants money and their company name and logo will appear on Defendants' website. See copy of Defendants' advertising page attached hereto as Composite Exhibit "C" and incorporated herein by reference. Further, Defendants solicit Internet consumers for "donations" "for the high cost of providing [the] service." See Copy of Defendants' solicitation page attached hereto as Exhibit "D" and incorporated herein by reference.

As a result of Defendants' website, residents of the State of Florida can and do access Defendants' website to research information regarding Florida corporations and to file complaints against Florida corporations. Defendants use Plaintiffs' trademarks to divert Internet consumers searching for Plaintiffs' website to Defendants' website. Moreover, Defendants publish and make available for viewing in Florida more than a dozen false stories about Plaintiffs, in Florida, with reckless disregard for the truth of such stories. See stories attached hereto as Composite Exhibit "E" and incorporated herein by reference.

Defendants seek Florida consumers by programming meta-tags[1] (invisible coding) on their website to alert search engines to the key words that relate to the content-specific information on Defendants' website. (See Durkin Aff. ¶¶ 11-12). Specifically, Defendants'

---

[1] Search engines have spiders that crawl a website's invisible and embedded code, called meta tags, which are programmed by web designers, to alert the search engine to the content of the website.

meta-tags list "Florida" as one of the key words for their website. (See Durkin Aff. ¶¶ 10, 13; see also Defendants' website source code attached hereto as Exhibit "F" and incorporated by reference).  By including the key word "Florida," Defendants are clearly seeking to be a top listing on search engines when Florida consumers are searching for information on Florida corporations. (See Durkin Aff. ¶ 14).  Thus, Defendants' allegation that they do not aim their website or stories at Florida is nothing shot of pure unadulterated fiction.

**B.    Legal Arguments Raised by Defendants' Motion**

Defendants, in their Motion to Dismiss, claim that Plaintiffs have failed to plead sufficient facts supporting personal jurisdiction over Defendants in Florida.  Defendants claim that Plaintiffs' allegations fail to satisfy Florida's long-arm statute and the Constitutional Due Process Clause.  Specifically, Defendants' Motion states that this Court does not have specific jurisdiction over Defendants as Defendants do not "operate, conduct, engage in, or carry on a business or business venture in the State of Florida."  Further, Defendants claim they have not committed a tort cognizable in Florida sufficient to satisfy specific jurisdiction pursuant to Florida's long-arm statute.  Defendants also contend that this Court lacks any basis to exercise general jurisdiction over Defendants as they have not been engaged in "continuous and systematic" and "extensive and pervasive" activity in Florida as required by the statute. Finally, Defendants claim that the Due Process analysis prevents this Court from exercising jurisdiction over Defendants.  Defendants are wrong.  Moreover, Defendants' Due Process argument and affidavit in support are woefully insufficient as Defendants fail to recognize that even if the "minimum contacts" test has not been met, and it has been in the case *sub judice,* due process standards permit consideration of "fair play and substantial justice" in addition to minimum contacts in establishing personal jurisdiction over an out of state defendant.  Because

Defendants' Motion to Dismiss for lack of personal jurisdiction and affidavit in support thereof fails to adequately controvert the well-pled facts in Plaintiffs' Complaint, Defendants' Motion should be **DENIED**.

### C.    Defendants' Affidavit is Insufficient to Support the Motion to Dismiss

Defendants filed the affidavit of Defendant, Ed Magedson, in an attempt to controvert allegations in the Complaint. However, Defendant Magedson's affidavit does not sufficiently refute all of Plaintiffs' jurisdictional allegations set forth in Plaintiffs' Complaint; thus those uncontroverted allegations must be taken as true. This fact alone undermines the Defendants' argument. Thus, Defendants' burden has not and cannot be met.

Defendant Ed Magedson's affidavit avers that he does not reside in Florida, does not own assets in Florida and has not visited Florida since 1973.  (Magedson Aff. ¶¶ 2-5). Further, Defendant Magedson avers that Defendant Xcentric does not transact business in Florida, does not have any agents in Florida, nor does it maintain any offices in Florida. (Magedson Aff. ¶ 7).  Defendant alleges that "Xcentric merely operates a website which allows consumers the ability to post complaints against companies with which they have done business." (Magedson Aff. ¶ 8).  "The website contains over 90,000 reports and the operators of the website cannot monitor all of these reports." (Magedson Aff. ¶ 9).  Finally, Defendant avers that "Badbusinessbureau.org was an Arizona Corporation that has never published Articles of Incorporation and which was administratively dissolved.  Defendant further avers that it has no involvement in the website at issue and it has never transacted business anywhere, including in the state of Florida." (Magedson Aff. ¶10).

While Defendants' affidavit attempts to controvert Plaintiffs' allegations that Defendants operate, conduct, engage in or carry on a business or business ventures within this

Case No. 2:04-cv-47-FtM-29 SPC

state through their Internet websites, Defendants completely fail to controvert the remaining factual allegations supporting personal jurisdiction in Plaintiffs' Complaint, set forth below.

**D.     Uncontroverted Jurisdictional Allegations in Plaintiffs' Complaint**

Plaintiffs' Complaint sets forth the following uncontroverted jurisdictional allegations against Defendants.

5.     Defendant, XCENTRIC VENTURES, LLC., is subject to the jurisdiction of this Court because it:

(a)     Operates, conducts, engages in or carries on a business or business ventures within this state through its Internet websites;

(b)     Infringed upon Plaintiffs valid trademarks in violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125 and published and continues to publish infringing marks in Florida; and

(c)     Committed and continues to commit a tort in Florida by publishing false and defamatory information on its websites about Plaintiffs, directed at Florida and causing injury in Florida that gives rise to a potential claim cognizable in Florida.

6.     Defendant, BADBUSINESSBUREAU.ORG, is subject to the jurisdiction of this Court because it:

(a)     Operates, conducts, engages in or carries on a business or business ventures within this state through its Internet websites;

(b)     Infringed upon Plaintiffs valid trademarks in violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125 and published and continues to publish infringing marks in Florida; and

(c)     Committed and continues to commit a tort in Florida by publishing false and defamatory information on its websites about Plaintiffs, directed at Florida and causing injury in Florida that gives rise to a potential claim cognizable in Florida.

7.     Defendant, ED MAGEDSON, an individual, is subject to the jurisdiction of this Court because he:

(a)     Operates, conducts, engages in or carries on a business or business ventures within this state through his Internet websites;

(b)     Infringed upon Plaintiffs valid trademarks in violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125 and published and

continues to publish infringing marks in Florida; and

(c)    Committed and continues to commit a tort in Florida by publishing false and defamatory information on his websites about Plaintiffs, directed at Florida and causing injury in Florida that gives rise to a potential claim cognizable in Florida.

8.    This Court has personal jurisdiction over all Defendants as they infringed on Plaintiffs' trademarks by intentionally publishing Plaintiffs' trademarks in Florida on their Internet website.  Defendants' use of Plaintiffs' trademarks is for interstate commercial activity and such use is a substantial aspect of Defendants' conduct giving rise to plaintiffs' claims.

(See Com. ¶¶ 5-8.)

Further, the following allegations in Plaintiffs' Complaint under the Venue heading, more appropriately allege additional jurisdictional facts against Defendants.  Plaintiffs' allege:

10.    Defendants intentionally and/or recklessly published defamatory information about Plaintiffs, a Florida corporation and Florida resident, and published same via the Internet within Lee County, Florida.

11.    Defendants intentionally and/or recklessly published defamatory information and clearly directed said information at a corporation in Florida, via their Internet websites, regarding Plaintiffs' business, resulting in significant injury and harm to Plaintiffs and their reputation. The bulk, if not all of the harm has occurred and will continue to occur in Florida.

12.    Defendants infringed on Plaintiffs' Marks in Florida by intentionally publishing Plaintiffs' Marks in Florida causing injury to Plaintiffs in Florida.

(See Com. ¶¶ 10-12.)

As discussed above, Defendants' affidavit only controverts the jurisdictional allegations set forth in paragraphs 5(a), 6(a) and 7(a) of Plaintiffs' Complaint.  Defendants' affidavit completely fails to controvert the remaining jurisdictional allegations in paragraphs 5(b)-(c), 6(b)-(c), 7(b)-(c), 8, 10, 11 and 12 of Plaintiffs' Complaint.  Further, Defendants' Motion to Dismiss completely ignores Plaintiffs' allegation for personal jurisdiction over Defendants based on Defendants' illegal use of Plaintiffs' trademarks.  Based on the

8

uncontroverted jurisdictional allegations set forth in Plaintiffs' Complaint, the Court must accept these facts as true and in the light most favorable to the Plaintiffs when applying jurisdictional analysis.

## III.    FLORIDA'S LONG ARM STATUTE

**Defendants Have Committed a Tortious Act within Florida Sufficient to Satisfy Florida's Long-Arm Jurisdiction**

In order for Defendants to fall within the ambit of Florida's long-arm statute, their acts must fall within one of the enumerated acts in Fla. Stat. § 48.193.   Specifically, Florida's long-arm statute states, in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> **(b) committing a tortious act within this state...**

Fla. Stat. § 48.193 (West 2003) (emphasis added).

"Florida courts subscribe to the rule that the tort of libel occurs wherever the offending material is circulated." Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998); citing Madara v. Hall, 916 F.2d 1510, 1515 (11th Cir. 1990)(finding jurisdiction over nonresident defendant for libel action on the basis that the libelous material was circulated in Florida, even though defendant was an individual and not the publisher of libelous information).  Florida courts have consistently allowed personal jurisdiction over nonresident defendants in libel actions when alleged libelous material was circulated in Florida, especially when the libelous material was directed at a Florida entity and/or resident. Id. at 1515.  Physical presence in Florida is not required to "commit a tortious act" for purposes of Florida's long-arm

statute. Wendt v. Horowitz, 822 So. 2d 1252 (Fla. 2002)(finding that telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under 48.193(1)(b) if the alleged cause of action arises from the communication). Furthermore, committing a tortious act under Florida's long-arm statute does not require that a physical tort occur in this state. Id. at 1258. As clearly set forth in Plaintiffs' Complaint, Defendants facilitate the publication of defamatory material and disseminate this defamatory material in Florida, which is specifically directed at Plaintiffs, Whitney, a company with its principal place of business in Florida, and Russ Whitney, a Florida resident.

Florida courts have uniformly found that they have an interest in adjudicating disputes arising from publication, dissemination or communication of defamatory information in Florida. See, e.g., Becker v. Hooshman, M.D., 841 So. 2d 561 (Fla. 4th DCA 2003) (finding jurisdiction over nonresident moderator of an Internet chat room for posting numerous defamatory comments about a Florida resident, causing injury to a Florida resident); Silver v. Levinson, 648 So. 2d 240 (Fla. 4th DCA 1994) (mailing a letter into the State of Florida was sufficient).

Further, the United States Supreme Court created an "effects test" to determine whether a district court had jurisdiction over a nonresident defendant in a defamation action. In Calder v. Jones, the Court held that a California court could constitutionally exercise personal jurisdiction over a Florida citizen whose only material contact with California was to write a libelous story in Florida, directed at a California citizen, for a publication circulated in California, knowing that the "injury would be felt by [the Californian] in the State in which she lives and works." 465 U.S. 783, 104 S.Ct. 1482 (1984)(stating the article concerned the California activities of a California resident and the alleged harm, injury to reputation and career and emotional distress, would occur in California); see also ALS Scan, Inc. v. Digitial Service Consultants, Inc., 293

F.3d 707, 714 (4th Cir. 2002). This is exactly what has occurred in the instant case. Defendants, Xcentric Ventures and Badbusinessbureau.org, Arizona companies and Ed Magedson, an Arizona resident, published libelous information in Florida, directed at a corporation with its principal place of business in Florida, and at a Florida resident, knowing that the bulk of the injury would be felt by Plaintiffs in Florida where Plaintiffs' business is based.

In ALS Scan, Inc., *supra,* the Fourth Circuit Court of Appeals adopted the Calder decision, holding that "specific jurisdiction in the Internet context may be based on an out-of-state person's Internet activity directed at [Florida] and causing injury that gives rise to a potential claim cognizable in [Florida]." Id. at 714 (finding that the court did not have personal jurisdiction over the defendant since the defendant was only an Internet Service Provider ("ISP") and not the actual publisher of the infringing website). The false and defamatory information is accessible to Florida consumers through Defendants' website in Florida, which is marketed toward Floridians, and is causing injury to Plaintiffs in Florida.

The website operated by Defendants is not akin to an Internet search engine such as the defendant in ALS Scan. Defendants' business is to provide information to consumers about corporations through their website, which it accomplishes every day. Defendants intentionally seek Florida consumers to research their database for the "Rip Off Report." Defendants' website convinces Florida consumers that the information published in the "Rip Off Report" is correct and reliable. However, the information published in the "Rip Off Report" regarding Plaintiffs is false and libelous and damaging to the Plaintiffs' reputation. Thus, Defendants should not be permitted to escape liability for the publication of the defamatory information published in the "Rip Off Report" in Florida, which is accessible only through Defendants' website. Therefore, as clearly alleged in Plaintiffs' Complaint, Defendants disseminated libelous material in Florida

11

and specifically directed such libelous information toward Plaintiffs, a Florida resident and a company with its principal place of business in the State of Florida, thereby satisfying the requirements of Florida's long-arm statute.

Further, in a recent opinion regarding personal jurisdiction and venue as it pertains to Internet law, the Supreme Court of North Dakota adopted the "effects test" outlined in Calder and found personal jurisdiction over a defendant who published defamatory information on her Internet website that featured articles about plaintiff, his trial attorney and the ensuing litigation. The court found that jurisdiction existed because the articles defendant published did particularly and directly target North Dakota on her website, specifically targeting a North Dakota resident, the plaintiff. Wagner v. Miskin, 2003 WL 21006217 (N.D. 2003).

The libelous information published in the "Rip Off Report" is expressly aimed at Plaintiffs in Florida. The only access to the "Rip Off Report" is through Defendants' website. The false and defamatory information contained in the "Rip Off Report" directly targets Plaintiffs' business operations in the State of Florida and claims that Plaintiffs are crooks and rip consumers off. Defendants are aware that the information published in the "Rip Off Report" is defamatory. However, Defendants continue to provide Florida consumers with the only known access to this false and defamatory information. Clearly, Defendants are directly targeting Plaintiffs, a Florida resident and a corporation with its principal place of business in Florida. Further, Defendants' website directly solicits and sells their "Rip Off Revenge" services and materials to Florida residents. As a direct result of Defendants' website, Plaintiffs have suffered and will continue to suffer significant damage to their business and reputation. Therefore, for all the reasons set forth herein, Defendants are subject to the jurisdiction of this Court for the

tortious act of disseminating defamatory information in the State of Florida directed at Plaintiffs, a Florida resident and a corporation with its principal place of business in Florida.

To dispute personal jurisdiction for the publication of false and defamatory information disseminated through their Internet website, Defendants claim that they merely operate a website which allows consumers the ability to post complaints against companies with which they have done business. (Magedson's Aff. ¶ 7). Further, Defendants claim that their website contains over 90,000 reports and the operators of the website cannot monitor all of these reports. (Magedson's Aff. ¶ 8). However, Defendants, without monitoring the reports or verifying their veracity, hold Plaintiffs out as crooks and as ripping consumers off and then attempt to claim that they are not responsible for publishing such reports in Florida. This argument is nonsensical. The purpose for Defendants' website is to provide consumers access to the "Rip Off Report" on their website about companies and to provide a vehicle through which consumers can report complaints about companies they think have wronged them. Further, Defendants sell their "Rip Off Revenge" products and services through their Internet website to Florida residents. Defendants knowingly provide this access to Florida consumers and corporations through their Internet website in Florida.

As discussed more fully above, and proved in the exhibits and affidavit proffered by Plaintiffs, Defendants' website is the only access Florida consumers have to find a "Rip Off Report" about Florida companies or to purchase "Rip Off Revenge" products or services from Defendants. Defendants' website provides Florida consumers with online access to research information on Plaintiffs, a Florida resident and a corporation located in Florida. Defendants' website leads consumers to the "Rip Off Report." The "Rip Off Report" contains false and defamatory information regarding Plaintiffs. See Exhibit "A" ¶ 14. Therefore, Defendants do, in

fact, disseminate the false and defamatory information in the "Rip Off Report" regarding Plaintiffs in the State of Florida.

Furthermore, Defendants rely on cases that apply a "sliding scale" for defining when electronic contacts with a state are sufficient to subject a nonresident defendant to a state's jurisdiction. See Hartoy Inc. v. Thompson, 2003 WL 21468079 (S.D. Fla. 2003); Miller v. Berman, 2003 WL 22462296 (M.D. Fla. 2003). These courts held that at one end of the spectrum is a defendant that clearly conducts business over the Internet and knowingly and repeatedly transmits computer files over the Internet, whereby personal jurisdiction is proper. At the opposite end is a defendant who posts informational, non-interactive websites designed solely to provide information to people who are interested in it, which is not enough to establish personal jurisdiction. Id. These websites have been termed "active" and "passive" respectfully.

Defendants claim that their website is merely a "passive" website that provides information to people who are interested in it. While this argument may sound persuasive, it is illusory. Defendants do in fact provide information over the Internet to people looking for it; however, Defendants are in the business of providing information on corporations for people searching for it. Providing information, supplying an avenue for consumers to file complaints, and providing dispute resolution products and services for such complaints is Defendants' business; it is the lifeblood of Defendants' business. Further, Defendants sell their "Rip Off Revenge" products and services to consumers via their Internet website, which is clearly for commercial and economic gain. By facilitating the gathering of information on Florida corporations and providing Florida consumers access to "Rip Off Reports" through Defendants' interactive website and subsequently selling Florida consumers their "Rip Off Revenge" products and services, Defendants have created more than a merely "passive" website. Rather,

Defendants' website is an "active" website designed to conduct its specialized commercial activity over the Internet.

Defendants have clearly and repeatedly directed an undeterminable number of Florida consumers to the false and defamatory statements contained in the "Rip Off Reports" regarding Plaintiffs for the purpose of and with the direct and proximate result of damaging Plaintiffs' business and reputation in the State of Florida. Thus, Defendants have committed a tort in Florida and are subject to Florida's long-arm statute. Simply, since Plaintiffs' principal place of business is in Florida and Plaintiff, Russ Whitney, is a Florida resident, the bulk, if not all, of the financial damage as a result of the false and defamatory information published in the "Rip Off Reports" have and will occur in the State of Florida. For all of the reasons stated above, Defendants have clearly committed a tortious act within Florida sufficient to satisfy specific jurisdiction pursuant to Florida's long-arm statute, Fla. Stat. § 48.193(1)(b).

## IV.    THE    EXERCISE    OF    PERSONAL    JURISDICTION    OVER DEFENDANTS WOULD NOT VIOLATE DUE PROCESS

In determining whether the assertion of personal jurisdiction over Defendants comports with due process, the court must first decide whether Defendants have established "minimum contacts" with Florida. Venetian Salami, 554 So. 2d at 500. Secondly, the court must decide whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." Madara v. Hall, 916 F.2d at 1514. "Due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he has certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).

**A.    Sufficient Minimum Contacts Exist to Satisfy Due Process Requirements**

The Florida Supreme Court in <u>Venetian Salami</u>, *supra,* held that the determination of minimum contacts depends upon the standards promulgated in <u>Worldwide Volkswagen Corporation v. Woodson</u>, 444 U.S. 286 (1980) and <u>International Shoe Co. v. Washington</u>, *supra.* In <u>Woodson</u>, the Supreme Court held that the standard for determining whether sufficient minimum contacts exist to satisfy the due process requirement of the Fourteenth Amendment is whether the defendant's conduct in connection with the forum state is such that he should reasonably anticipate being haled into court in the forum state. 444 U.S. at 297. In <u>International Shoe</u>, the Court required that minimum contacts exist with the forum state so that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316. Subsequently, in <u>Burger King Corporation v. Rudzewicz</u>, 471 U.S. 462 (1985), the Supreme Court held that a non-resident defendant must purposely establish a substantial connection with the forum state, and that random fortuitous or attenuated contacts would not suffice. <u>Id.</u> at 475. "Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is *not* the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum." <u>Madara</u>, 916 F. 2d at 1516-1517 (quoting <u>Asahi Metal Indust. Co. v. Superior Court</u>, 480 U.S. 102, 112 (1987)).

The Court must also consider the "quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, to determine whether the defendant's actions constitute 'purposeful availment.'" <u>Miot v. Kechijian</u>, 830 F.Supp. 1460, 1464 (S.D. Fla.

1993); citing Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1028 (5th Cir. 1983), cert. denied 466 U.S. 962 (1984).

The "minimum contacts" requirement "is satisfied if the defendant purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998); Hanson v. Denckla, 357 U.S. 235 (1958).

The Supreme Court of Florida has held that by committing a tort in Florida a nonresident establishes sufficient "minimum contacts" with Florida to justify the acquisition of *in personam* jurisdiction over him by personally serving him outside the state. Godfrey v. Neumann, 373 So. 2d 920 (Fla. 1979). Further, the Supreme Court of Florida specifically found that a tortious act can occur in Florida through the nonresident defendant's telephonic, *electronic* or written communications into Florida. Wendt v. Horowitz, 822 So. 2d 1252 (Fla. 2002). Applying the standards promulgated by Florida courts, Defendants' dissemination of defamatory information in the State of Florida is sufficient to establish minimum contacts with Florida to justify acquisition of personal jurisdiction.

Furthermore, in Murante v. Pedro Land, Inc., the district court held that even though an out-of-state defendant maintained no offices in Florida, had no agents in Florida and was not authorized to do business in Florida, the defendant had enough minimum contacts with the state such that the court could exercise personal jurisdiction over the defendant. 761 F. Supp. 786, 790 (S.D. Fla. 1991). The court found that the out-of-state defendant's placement of numerous billboards along a 200 mile stretch adjacent to I-95, running through North and South Carolina, was sufficient to satisfy the minimum contacts test and subject the defendant to the jurisdiction

of the Florida courts. Id. The court reasoned that since I-95 was a primary passage way for Floridians traveling to and from destinations along the eastern seaboard, it was evident that the defendant was seeking to elicit business from persons traveling between Florida and New York. Id. Therefore, the court found that minimum contacts existed.

By analogy, Defendants provide Floridians access to the false and defamatory information published on their website as Defendants know that the only way for Floridians to get Defendants' "Rip Off Report" on Florida corporations is through Defendants' website. It is foreseeable that Defendants' website would be viewed in the State of Florida and the false and defamatory information regarding Plaintiffs contained in the "Rip Off Report" would cause harm to Plaintiffs in Florida. In fact, Defendants purposefully programmed their website to contain the key word "Florida" in their meta-tags so their website would be listed as a top result when Florida consumers are researching Florida corporations. Therefore, it is reasonable for Defendants to anticipate that it may be sued in the State of Florida for publishing the defamatory stories about Florida corporations.

In Bangor Punta Operations, Inc. v. Universal Marine Co., the Fifth Circuit Court of Appeals found sufficient contacts over an out of state Defendant even given their limited contacts to the State of Florida, noting:

> As International Shoe indicated and subsequent cases have held, a single tortious act can support in personam jurisdiction, consistent with the Constitution, subject to the limitation that "there (must) be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235 (1958). In the case at bar, an official of the defendant intended to and did send or cause to be sent a false advertisement and infringing products into Florida and by so doing clearly satisfied the above standards ... We thus hold that the District Court properly had

> in personam jurisdiction over the foreign corporate defendant in
> this case based on the Florida long-arm statute.

543 F.2d 1107, 1110 (5th Cir. 1976)[2].

In the case, *sub judice,* the affidavit proffered by Plaintiffs establish that Defendants

website provides access to the false and defamatory information published in Defendants' "Rip

Off Reports" in the State of Florida, which has caused and continues to cause injury to Plaintiffs

in the State of Florida.  Defendants have continuously engaged in contacts with the State of

Florida through their Internet website.  Thus Defendants' argument that they have no ties

whatsoever to the State of Florida is clearly false.

**B.      Even if the Minimum Contacts Test Were Not Met, Considerations of  Fair Play and Substantial Justice Support Jurisdiction Over  Defendants**

In the unlikely event that this Court should find that the "minimum contacts" test has not

been met, due process standards permit consideration of "fair play and substantial justice" in

addition to minimum contacts. Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1034-1035

(11th Cir. 1991). These factors can at times serve to establish "the reasonableness of jurisdiction

upon a lesser showing of minimum contacts than would otherwise be required." Burger King

Corp. v. Rudzewicz, 471 U.S. at 477. These factors include:

> [1] the burden on the defendant, [2] the forum State's interest in
> adjudicating the dispute, [3] the plaintiff's interest in obtaining
> convenient  and  effective  relief,  [4]  the  interstate  judicial
> system's  interest  in  obtaining  the  most  efficient  resolution  of
> controversies, and [5] the shared interest of the several States in
> furthering fundamental social policies.

Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d at 1035 (quoting   Burger King  Corp.  v.

Rudzewicz).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit
adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1,
1981.

Case No.  2:04-cv-47-FtM-29 SPC

As discussed *supra*, Florida courts have uniformly found that they have an interest in adjudicating disputes arising from publication, dissemination or communication of defamatory information in Florida.  See, e.g., Becker v. Hooshman, M.D., 841 So. 2d 561 (Fla. 4th DCA 2003); Silver v. Levinson, 648 So. 2d 240 (Fla. 4th DCA 1994).  Therefore, Florida has a special interest in the adjudication of this suit.

Furthermore, it is evident that the burden on Defendants in defending the suit in Florida is not as extreme, and pales when compared to the burden that would be imposed on Plaintiffs in pursuing this action in Arizona.  By prosecuting this case in Florida, Plaintiffs' interest in obtaining convenient and effective relief would be effectuated as a majority of the witnesses involved in this case are based within the State of Florida.  Finally, Defendants' participation in the present suit would also further the interstate judicial system's interest in obtaining the most efficient resolution of controversies.  Accordingly, considerations of fair play and substantial justice support this court's assertion of personal jurisdiction over Defendants.

## CONCLUSION

For all the reasons set forth herein, and the attached affidavit and exhibits, Plaintiffs respectfully requests that Defendants' Motion to Dismiss Complaint for Lack of Personal Jurisdiction be **DENIED**.

Case No.  2:04-cv-47-FtM-29 SPC

Dated: August 4, 2004

ROTHSTEIN ROSENFELDT
**Attorneys for Plaintiffs**
300 Las Olas Place, Suite 860
300 SE Second Street
Fort Lauderdale, FL  33301
Telephone:     (954) 522-3456
Facsimile:     (954) 527-8663

By: _____

Scott W. Rothstein, Esq.
Florida Bar No.: 765880
Michael A. Pancier, Esq.
Florida Bar No.: 958484
Christina M. Kitterman, Esq.
Florida Bar No.: 595381

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, by mail, this 4th day of August, 2004, to:  James A. Weinkle, Esq., Defendants' Trial Counsel, Wachovia Financial Center, Suite 3400, 200 South Biscayne Boulevard, Miami, Florida, 33131-5323, Maria Crimi Speth, Esq., Defendants' of counsel, Jaburg & Wilk PC, 3200 North Central Avenue, Suite 2000, Phoenix, Arizona 85012, Jonathan P. Ibsen, Esq., 7047 East Greenway Parkway, Suite 140, Scottsdale, Arizona 85254.

**ROTHSTEIN ROSENFELDT**

By: _____

Scott W. Rothstein, Esq.
Michael A. Pancier, Esq.
Christina M. Kitterman, Esq.

Rip-off Report.com - badbusinessbureau.com
Page 1 of 8
Case 2:04-cv-00047-MMH-SPC    Document 18    Filed 08/05/2004    Page 22 of 37



**RIP-OFF** Report.com
**Don't let them get away with**
**Make sure they make the Rip-off**

*bad*businessbureau.com    Home    Blog    Search

File Report
Update Report
Search Reports
Picture Reports
Editorials
Thank you!
Volunteer
Rip-off Reporters
Link to Us
Lawsuits
Revenge Guide
Donate
About Us
FAQ

Hit Counter
**209,565,872**
visits to the
Rip-Off Report

**63,873**
Reports Entered

**Pick any**
**state!**


Search a company or indiviual now.    SEA


**Newest Rip-off Reports**

10/10/03, Illinois - Capital Acquisitions & Management Company Scam company tried to get me to pay $10,5 from a debt they couldn't validate Rockford Illinois

10/10/03, Michigan - Paradise Farms/THe Paint Zone H Saller ripoff Smiths Creek Michigan

10/10/03, New York - WILHELMINA SCOUTING NETWORK DISHONEST FRAUDULENT NEW YORK New York

10/10/03, Nationwide - Webland #1 FedEx Refunds Fedl

**Victim** of a consumer Rip-off? Want justice? Rip-off Report™ is a worldwide consumer reporting Website & Publication, by consumers, for consumers, to file & document complaints about Companies or Individuals who ripoff consumers.

Unlike the Better Business Bureau, *bad*businessbureau.com / Rip-off Report™ does not hide Reports of "satisfied" complaints. *ALL* complaints remain public in order to create a working history on the Company or Individual in question; unedited.

Rip-off Reports cover every category imaginable! You can **Browse the latest Reports**, **Search the Reports**, or submit your Report now for FREE, by clicking on **File Report**. CLICK HERE to view over 1,000 different Topics & Categories you can file under..

**BY FILING A RIP-OFF REPORT™ IT'S ALMOST LIKE CREATING YOUR OWN WEB SITE ..It's FREE.**
Your Rip-off Report™ will be discovered by millions of consumers! Search engines will automatically discover most Reports. This means that within just a few days or weeks; your Report may be found on search engines when consumers





Fairbanks Capital Corporation **LEADER OF THE PACK IN PREDATORY LENDING** owned and operated by The PMI Group, publicly-traded corporation NYSE Lawsuits nationwide under investigation

Lou Pearlman Rip-off - Trans Continental, TC Talent devolves Boy-Bands to Rubber Band Ethics

Bernard Rip-off: allege st tactic existent of hidc False r



Carolina Furniture Henry Lee Privette fraud N Carolina Att. General 200 complaints against Privette's furniture company

Ramada Plaza Resort Rip-off: Consumers nationwide: No Slack in Change of Date due to Military Deployment.

Primerica Rip-off: Consumers Complaine - Evil Pyramid-schemed Appendix of Citigroup

Bill I Chevrolc cons nation MSRP




Ugly Duckling now Drive Time, same scam different name, employee inside information

Don Lapre Rip-off: The o making money in this get-r scheme is Don Lap



**EXHIBIT**
"A"





search, using key words relating to your Rip-off Report™.

## HELPING YOU, THE CONSUMER...

Search the Rip-off Report™ before you do business...
Retail stores with bad return policies, checking & credit theft, rebate fraud *or* other unscrupulous business policies; such as phony auto repairs, auto dealer bait-and-switch tactics, restaurants with bad service *or* food, corrupt government employees & politicians, police corruption, home builders, contractors, unethical doctors &lawyers, online stores that sell non-existent products, dead beat Dads & Moms, landlords & tenants, employment career business opportunity, and individual con artists who scam consumers. These are just a few of the countless topics available, and the list is continually modified as new categories emerge.

## FILING A CLASS ACTION LAWSUIT & NOTIFYING THE AUTHORITIES

Filing a Rip-Off Report™ is important because you are helping us to help you, and others like you, achieve justice. We are able to accomplish this by working with the proper authorities for prosecution, and working with lawyers by using your Report to help organize lawsuits. It is important that you know that your information is held strictly confidential, and your identity is protected by the First Amendment of the US Constitution.

*We will contact you if a lawsuit is being considered or has been*





OCWEN CLASS ACTION LAWSUIT FILED Ocwen Bank Ripoff racketeering, breach of contract, unfair debt collection practices, overcharging borrowers bogus service, late and escrow fees, harassment, mail fraud

**LAWSUIT FILED**
Pizza Hut employee abuses, criminal activity, health code violations

Mesa Police d viola discrim corruptic their ow

»Alyon Technologies
»JD Marvel
»Girls Gone Wild
»Consolidated Media
»Tiran Zaken
»MCI Worldcom
»MWI Connections

»First National Credi
»Consumer First
»Freedom Resource
Lenox Capital
»Capital Choice Con
»Gibson Trust
»Providian




Pulte Homebuilder rip-off Nightmare Homes!

Immigrant workers droppe live in make-shift tree he working for $50.00 a w Civil & Human Rights Vic







Dead Beat Dad Donald "Reed" Powers

Dead Beat Dad Daryl Thomas Palmer

Hampton Virginia police & fire department corruption & racism

OSTRIC SCAM Ted Loe Steve I bilk mil se





Bill Groh Mega Tan Salon Ripoff Thousands of consumers

Con Artist MAX Maxwell Ivany

BBB
Better Business B

Better Business Bureau Racketeering Enterpi fraud to consumer:

filed which you may want to be a party to. The more Reports filed on a Company or individual, the more likely it is that the authorities and attorneys will want to take action.

## MEDIA ATTENTION

Quite often the media is interested in the Reports you filed and ask us to assist in their investigations giving you the publicity needed to help your cause. **File your Report now!** In the event your Rip-off Report™ is of interest to the media, we will put you in contact with them. Rip-off Report™ works regularly with most TV News Magazines & Networks and their affiliates, NBC, CBS, ABC, Fox News and local and National newspapers including The New York Times the Wall Street Journal to Auto Motive News.

## HELPING YOU, THE REPORTED BUSINESS OR INDIVIDUAL
### *MY COMPANY HAS BEEN REPORTED! HOW DO I RESPOND?*

If you are a business with a report(s) filed against you, you have a chance to make it right. If handled correctly, your Rip-off Report can actually help improve your reputation. We offer you the opportunity to file a REBUTTAL to any report. *(See the REBUTTAL BOX at the end of the specific Rip-off Report™ you wish to rebut).* Every company receives complaints, but how they handle those complaints separates good business from bad business.

## EMPLOYEE INSIDER / EX-EMPLOYEE INFORMATION

**If you are an** employee or ex-


Forecast Homes ..Rip-Off builders out of California



Credit Card Fraud: Tail O' The Pup Restaurant, NY Adirondack Mts.

New Yo Ripoff Gown C WORL GC


Circuit City stores selling returned merchandise as new!



Bank United BIG Texas Rip-Off

BP/Am Station


Wal-Mart Auto Center ruined my car.


C'N'V Con Auto Rippec


Sign-A-Rama Franchise Fraud


Storage USA Company Rip-Off


Ryan builde cust


How the City of Mesa Arizona put me and over 300 tenants OUT OF BUSINESS


Realty Executives broke into our home.


Just f charg Auto I not r



Ryder Truck Rental consumer ripoff

Al Collins Graphic Arts School


AAMCO, Americ Transmission Speci

employee with privileged information about the company or individual reported, and you can provide "insider information", please click on the REBUTTAL Box at the end of the specific Rip-off Report™ you wish to give information on. This sort of information is often very helpful to an investigation and always needed.

## WHISTLEBLOWERS
*Employees who want to expose corruption should file a Rip-off Report™. Any employees who do so should be protected by Federal Whistleblower Laws, additionally; Rip-off Report™ treats all victims as a* **confidential source**. *Remember, we are a publication; and we will never voluntarily reveal your identity. Instead we will protect our sources under the First Amendment of the US Constitution*

## DOING BUSINESS WITH THE COMPANY OR INDIVIDUAL REPORTED...
Consumers, just because a Company or Individual is reported on Rip-off Report™ does not necessarily mean you should not do business with them. By reading the experiences of other consumers, you will now be able to make more educated decisions, because now you know what to watch out for.

## USE YOUR REPORT TO GET WHAT IS COMING TO YOU
Faxing your Rip-off Report™ to the Company or Individual you have just reported can serve as a very valuable negotiating tool.

Include in your negotiation that you have the ability to **UPDATE your Report and reflect their good business practices by** explaining that their eagerness to satisfy the complaint and make things right will be seen by the entire world. Also, explain that failure to respond/rectify the situation will also be seen.

**YOU MUST <u>NOT</u>** call them threatening to file a report if they do not comply with your demands... this may be construed as Blackmail! You must first file a Rip-off Report™, then fax them a copy, offering them a chance to rectify the wrong that they did to you. Explain that then, and only then, you will UPDATE your Rip-off Report™ in a positive way; if deserved.

## <u>ORGANIZING CLASS ACTION LAWSUITS</u>
### <u>*VICTIMS & LAWYERS, WHO WANT TO SUE COMPANIES OR INDIVIDUALS REPORTED*</u>

Victims & attorneys who are interested in pursuing litigation against a particular company reported on this website may contact us directly. It is inappropriate to solicit business using this website other than through prior arrangement. This is largely because we need to ensure, the best we can, that our readers are not again being taken advantage of..

If you see a company with a good number of Rip-off Reports™, we have the database of contact information. We will e-mail those victims to contact you. Often we have additional information which does not appear on the victims

Rip-off Report.com - badbusinessbureau.com
Case 2:04-cv-00047-MHT-SRW    Document 18    Filed 08/05/2004    Page 27 of 37
Page 37 of 8

Rip-off Report™. We receive thousands of e-mails weekly on Rip-off businesses. We also have contact data on many of those victims as well.

We are anxious and willing to join forces with victims and attorneys to stand up for the rights of consumers and help them get justice. E-mail us. Both victims and attorneys should send their e-mails to: **ClassAction@ripoffreport.com**

**MORE IMPORTANT TO FILE ON RIP-OFF REPORT™ THAN WITH BBB & WE'RE JUST AS IMPORTANT AS ATTORNEYS GENERAL OR INVESTIGATIVE AGENCIES**
Many government sites (and the BBB) are only in place to collect all the information from you, the consumer; in most cases, never making it available for others to see. Listing your complaint on many Government sites is usually no better than filing with the Better Business Bureau (BBB). In fact, utilizing such sites is often just a waste of time; giving you false hope. Perhaps most frustrating is that the federal agencies tasked to investigate these disreputable enterprises receive tax dollars to do so, yet come to *bad*businessbureau.com for the results of our investigations and data, which we collect at no cost to the consumer while benefiting them.

By failing to make this information available publicly, it makes it harder for consumers to get educated about exactly what scams they should watch out for. In addition, when these agencies fail to make these

individual complaints public,
**consumers are robbed** of the
opportunity to know how bad a
Company or Individual really is,
and why.

On the other hand, many
government agencies have and
do come to the Rip-off Report™
for information. We have
assisted, and continue to assist
many government agencies for
some time now, including local
and state police departments,
the FBI, FTC and Attorney
General offices from around the
country

Since all the Reports are out in
the open for everyone to see, in
a way, this embarrasses these
agencies into doing something
about these scams when they
see so many Reports on a
Company or Individual.

Unfortunately, many (not all)
Attorneys General Offices and
government agencies will not
move against a rip-off unless
there will be some sort of
publicity, associated with some
political hay to be made.
Additionally, they normally won't
take action if the Rip-off does
not exceed $50,000. However,
your Reports have helped to
change this. Reporting your
experiences on Rip-off Report™
is the next best thing to getting
your story on TV or in a
newspaper. In fact, many
national TV networks and
several local TV stations from all
around the country come to the
Rip-off Report™ for information.
They do this because they know
that the BBB, Attorneys General,
and other agencies are not
reliable or cooperative sources
when compared to Rip-off

Report™. News stations know that they will get information from us that are unobtainable elsewhere.

Rip-off Report™ has instigated many local and national stories that have resulted in help for victims worldwide, in one way or another. Now that the government has cut back spending even more in this area, this dollar amount required to get the attention of investigative agencies will likely get even higher. This means that we can expect even less action, since fewer people and resources will be available to work on all these Rip-offs.

Additionally, by filing a Rip-off Report™, you might be contacted by one of us to notify you to make contact with a law firm that has shown interest in your case. We get requests every week for class action lawsuits; bringing victims together with lawyers willing to sue the company after reading your filed Rip-off Report™.

## Don't let them get away with it!™
## File your Report Now!

Feel free to send us suggestions and comments to our editorial staff.

Technical questions can be addressed to our webmaster.

Best if viewed with Netscape 4, Internet Explorer 4, or AOL 4.0. Support for JavaScript is needed to submit and search for reports.

If you are having trouble submitting via our JavaScript form such as Web TV users, please use our Non-JavaScript form.

Having trouble searching or filing a report? It may be a browser problem. See our FAQ for help

Home | File | Update | Search | Pictures | Reporter | Lawsuits(Coming Soon) | Revenge Guide
Volunteers | Thank You! | Editorial | Donate | Link | FAQ | E-Mail Us



**HELPING VICTIMS COLLECT**

**LEGALLY AND**
- ✓ **STOP THEIR BUS**
- ✓ **MAKE THEM FEEL U**
- ✓ **GET THE MONEY**
  **WITHIN A FEW HO**
  **DAYS, 99% OF**

SPONSORED BY: **Consumers Against Consumer Rip-O**

## HELPING VICTIMS COLLECT IN A FEW DAYS OR HOURS!

**Tired of Legal Fees?**

**Don't trust lawyers?**

**Don't trust the Scales of Justice?**

**Tired of Collection Agencies?**

**Waiting years to collect?**

**"Go ahead, sue me!" Sound familiar?**

**Victim of a Rip-Off? by an Auto dealer, Auto repair, home builder, retail store, or <u>any type of business.</u>**

*Get Rip-off Revenge™ and your money back too!*

**RIP OFF REVENGE?**

I have created the **Rip-Off Revenge ™** as a
take action on them.

In our society today, lawyers, & businesspeo
get away with than what is fair. Misuse of po
They take away the personal values of hone
some token political correctness. It's time for
honest attention!

**See what others are saying about the Rip**



**HOW TO GET RIP OFF REVENGE?**

**How to get** RipOff Revenge...



EXHIBIT

"B"

10/10/2003

1. File a detailed **Rip-off Report™** with the BAD Business Bureau's website at: http://www.ripoffreport.com/ ..include what you are owed at then end of your Report.

2. Order your copy of Rip-Off Report.com Do-It-Yourself Guide: How to get Rip-off Revenge™ ..and your money back too!

### To order now click HERE

YOUR FIRST STEP
TO REVENGE

First go to...

**RIP-OFF**

**Report**

to file your report
and begin your
Rip-off revenge

Click Here →



*"We used the Do-It-Yourself Guide and... in just 17 min we got a check... plus 15%. We got Rip-off Revenge and money back too!"*
-Jason and Rob
Glendale, Arizona

---

*"I was extremely discouraged after being taken by a fraudulent financial entity. What's worse is that I was so embarrassed that I would not have taken action even if I knew how to. Luckily, I read the preview edition of Rip-Revenge guide. Not only did the book help me to realize I had nothing to be ashamed of, it allowed me to obtain retribution. Without the Revenge Guide, I would have be lost. Thank you Rip-off Report for taking the time to construct such a wonderful book!"*
-S. Sarri
Long Island, New York

---

*"I fell for one of the credit card scams. I didn't think I w ever get my money back. After several unsuccessful atte at trying to communicate with the company I was ready give up. I found your site, read all the reports and filed Rip-off Report along with all the others. Then I followe your suggestions in your Rip-off Revenge Guide and it worked! My money was returned."*
-George M
Detroit, Michgan

**$19.95 includes shippi**

➡ <u>Order it now! ...to</u>
<u>CLICK HERE to</u>

You may also pay I
***bad*** busi
P(
Tempe,

## Not convince

**Rip-off Report Do-It-Yourself Guide to Rip**
**provides you with the tools you need to s**
**complaints.**

## STEP BY STE

**This Do-It-Yourself Guide: How to get Rip**
**most cases, is a detailed guide with 4 sim**
**with illustrations, photos and examples th**
**and Your money back too...** *and even mo*

**ALSO INSIDE:**

- **How to Recoup from Credit Card Scam:**
- **Repairs YOU Can Make to Your Credit F**
- **Postal Scams to Avoid**
- **What the Small Print Says on Credit Ca**
- **Tips for Collecting on Court Judgement**
- **Planning on Moving? Read this before**

**Buying a copy of Rip-off Revenge™ you v**
**pay to help keep the Rip-off Report.com v**



$19.95
includes shippi

## Do-it-Yourself Guide:
## How to get Rip-off
## Revenge™
**and your money back too..**

**Rip-off Revenge™ Do-it-yourself guide i**
$19.95
including Priority Shipping and Confirmatio

**All orders are shipped to arrive within 5 days**
**or less from receipt of orders.**

## To order now click HERE
to pay with your debit or credit card

Feel free to send us
© 2003 *bas*

Rip-off Report.com - badbusinessbureau.com
Case 2:04-cv-00047-MMH-SPC    Document 18    Filed 08/05/2004    Page 34 of 37
Page 1 of 4



Home    File    Search

**File Report**

**Update Report**

**Search Reports**

**Picture Reports**

**Editorials**

**Thank you!!**

**Volunteer**

**Rip-off Reporters**

**Link to Us**

**Lawsuits**

**Revenge Guide**

**Donate**

**About Us**

**FAQ**

RipoffReport.com offers four different size ad spaces on the left column of e Rip-off Report. Each option is designed to meet every business objective an marketing budget, to target the specific state or states your business is in. Y can purchase space for one state or several states. National advertisers car their ad on all Rip-off Reports from every state.

**Ads** are available in 4 sizes

Through August 2002, take 40% off the Rates below. Your ad can be as low as $19.00 a month.



120 x 60 pixels



120 x 120 pixels



120 x 240 pixels

- File size: 10k or less
- Format: .gif or .jpg, static or animated
- Link to company web page (Advertising Board approval required - No sexually-orien ads, No Rip-offs, etc.)
- Flat rate, targeted audience

## LOCAL ADVERTISING RATES *PER STATE.* Specific Search by Sta

| Contract Rate 120x60 pixels | Contract Rate 120 X 60 pixels | Contract Rate 120 X 120 pixels | Contract Rate 120 X 240 pixels | State(s) you want, abbreviate | Oi |
|---|---|---|---|---|---|
| **3 month minimum** | $55.00 each month **Total $165.00** | $65.00 each month **Total $195.00** | $78.00 each month **Total $234.00** | | |
| **6 Month Value Rate Agreement** | $29.00 each month **Total $174.00** | $39.00 each month **Total $234.00** | $54.00 each month **Total $324.00** | | |
| **12 Month Super Value Rate Agreement** | $20.00 each month **Total $240.00** | $32.00 each month **Total $384.00** | $42.00 each **Total $504.00** | | |

## NATIONAL ADVERTISING RATES on all rip-off reports



EXHIBIT

`C`

| Sidebar box ad rates for coverage on all report pages. | Contract Rate 120x60 pixels | Contract Rate 120 pixels X 120 pixels | Contract Rate 120 pixels x 240 pixels | O |
|---|---|---|---|---|
| **3 Month Run** | $323.00 each month **Total $969.00** | $423.00 each month **Total $1269.00** | $580.00 each month **Total $1740.00** | |
| **6 Month Value Rate Agreement** | $269.00 each month **Total $1613.00** | $353.00 each month **Total $2117.00** | $460.00 each month **Total $2760.00** | |
| **12 Month Super Value Rate Agreement** | $224.00 each month **Total $2688.00** | $294.00 each month **Total $3528.00** | $350.00 each month **Total $4200.00** | |

| | |
|---|---|
| | Sub-Total Costs |
| Take an additional **10%** discount for advertising in 3 states | |
| | Total Cost For Ads |

We reserve the right to refuse advertising to anyone, at anytime solely at our discretion!



RipoffReport.com offers one Premium Banner Ad that will appear on TOP of EVERY Rip-of Report page throughout the site. This premium spot guarantees the most impressions.

We also have three Premium fixed footer banners available that appear at the base of EVE Rip-off Report on the site.

Both placements are on the dynamically searched pages and are fixed to the permanent .h pages, which are registered on hundreds of search engines with over 20 thousand pages a many more every hour of the day.

**Premium Banner Ads** are available in 1 size for top or bottom page placement.



**468 x 62 pixels**

- File size: 14k or less
- Format: .gif or .jpg, static or animated
- Link to company web page (Advertising board approval required- No sexually-oriente
  No Rip-offs, etc.)
- Flat rate, targeted audience

## PREMIUM SPONSOR: BANNER AD NATIONAL RATES

| Premium Banners on top or bottom center of every report page. | Contract Rate<br>480 x 60 pixels Report Footer AD to follow at the end of every Rip-off Report | Contract Rate<br>480 x 60 pix. Report Header The top banner AD on every Rip-off Report | O |
|---|---|---|---|
| **4 Month Run** | $461.00 each month<br>**Total $1843.00** | $605.00 each month<br>**Total $2419.00** | |
| **6 Month Value Rate Agreement** | $384.00 each month<br>**Total $2304.00** | $504.00 each month<br>**Total $3024.00** | |
| **12 Month Super Value Rate Agreement** | $320.00 each month<br>**Total $3840.00** | $420.00 each month<br>**Total $5040.00** | |

| Total Cost For Banners | |
|---|---|

We reserve the right to refuse advertising to anyone, at anytime solely at our discretion!



www.badbusinessbureau.com

## Online Banner Ads ... No rotating ads, your ad is in a permanent position.

**Reach Tens of Thousands of Consumers each week**
**Your Ads can be purchased by targeting the specific State**

This gives you, the advertiser, a directed campaign to those potential customers seeking yo
products and services in your State. For as little as **$20.00 per month**, per state, you get a
banner ad that thousands of consumers will see each day!

- Advertising Your Business on the Rip-off Report is Easy!
- **Repetition and recognition is the key to advertising.**
- Your advertisement will not rotate like other web sites.
- **Keep Your Ad in the Same Position all the Time!**
- If you don't have an ad, our graphics agency can create one for as low as $100.

**Your ad will always appear on new Rip-off Reports filed every hour, automatically.**

**EXAMPLE :** Let's say you want to advertise your Business in Florida. When a consumer se
for any Rip-off Report from the state of Florida, your advertisement will be there - in the san
position, on every Rip-off Report. No matter how many new Rip-off Reports are added, you
will appear instantly.

# HOW TO SUBMIT YOUR AD

Sign up today to start advertising your product or service. E-mail us your Advertisement, co
information and one of our customer service associates will help you get going. E-mail us a
ads@ripoffreport.com and a staff member will get back to you from 8-5 EST. You may send
copy of your banner ad and the link to your website address with your contact information a
what contract rate you would be interested in. Contact info:

Name: _____    Company: _____

Phone: _____    e-mail: _____

Web Site: _____    Address: _____

City State Zip: _____

You may fax us your information to 305-832-2949

- We reserve the right to refuse any advertising for any reason.
- Just because you are an advertiser does not mean you are immune from being repo
Rip-off Reports.

**Don't Have a Web Page or a Banner Advertisement?**

We will create your web page and banner ad. Price will vary depending upon type of ad,
animation, and artwork requested. Send your proposed ideas for your advertisement to
ads@ripoffreport.com and someone will get back to you with a quote.

| | | | | |
|---|---|---|---|---|
| Feel free to send us suggestions and comments to our editorial staff. | Technical questions can be addressed to our webmaster. | Best if viewed with Netscape 4, Internet Explorer 4, or AOL 4.0. Support for JavaScript is needed to submit and search for reports. | If you are having trouble submitting via our JavaScript form such as Web TV users, please use our Non-JavaScript form. | Having trouble searching or filing a report? It may be a browser problem. See our FAQ for help |