UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**WHITNEY INFORMATION NETWORK, INC.**, a Colorado corporation, and
**RUSS WHITNEY**, an individual,

CASE NO. 2:04-CV-47-FtM-29-SPC

      **Plaintiffs,**

vs.

**XCENTRIC VENTURES, LLC,** an Arizona limited liability company;
**BADBUSINESSBUREAU.ORG,** an Arizona limited liability company; and
**ED MAGEDSON,** an individual,

      **Defendants.**
_____/

## DEFENDANTS' SECOND MOTION TO DISMISS - FAILURE TO STATE A CLAIM WITH SUPPORTING MEMORANDUM OF LAW

Xcentric Ventures, LLC, Badbusinessbureau.org, and Ed Magedson (collectively, the "Defendants") respectfully request that this Court dismiss the above-captioned action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because this Complaint fails to state a claim upon which relief can be granted and this action is barred by the Communications Decency Act.[1]

### I.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) should be granted if it appears beyond doubt that the plaintiff could prove no set of facts in support of its claims that would entitle it to relief. *Jackson v. Bellsouth Communications*, 372 F.3d 250 (11th Cir. 2004). In considering a motion to dismiss under Rule 12(b)(6), the

---

[1] By filing this Motion and participating in this case, Defendants do not consent to the jurisdiction of this Court.

court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *O' Connor v. Kawasaki Motors Corp.*, 699 F. Supp. 1538, 1542 (S.D. Fla. 1988). However, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquarading as facts will not prevent dismissal." *Id.* (internal quotations omitted).

II.     **COUNT IV IS BARRED BY THE COMMUNICATIONS DECENCY ACT.**

47 U.S.C. §230 prohibits civil actions that treat an interactive computer service as the "publisher or speaker" of messages transmitted over its service by third parties. *Doe v. America Online, Inc.*, 783 So.2d 1010 (Fl. 2001). The federal statute, which was passed by Congress with the desire to "promote unfettered speech," provides in relevant part that:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. §230; *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997).

The operation of an internet website upon which others post statements is an activity which is unequivocally protected by the Communications Decency Act, 47 U.S.C.A. §230. *Carafano v. Metrosplash.com, Inc. 339 F.3d 1119* (9th Cir. 2003)*; Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997); *Doe v. America Online, Inc.*, 783 So.2d 1010 (Fl. 2001); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37 (Wash.App 2001).

While the Eleventh Circuit has not yet considered the issue, every Federal court that has considered the issue has held that the Communications Decency Act immunizes a website operator for defamation it publishes if it is not the

**CASE NO. 2:04-CV-47-FtM-29-SPC**

information content provider of the content at issue. *Batzel v. Smith,* 333 F.3d 1018 (9th Cir. 2003); *Green v. America Online,* 318 F.3d 465 (3rd Cir. 2003); *Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 983-84 (10th Cir. 2000); *Zeran v. America Online,* 129 F.3d 327, 330 (4th Cir. 1997). In four other circuits – the Fifth, Seventh, Eighth and District of Columbia – the district courts have interpreted section 230 to bar lawsuits such as this. *Patentwizard, Inc. v. Kinko's Inc.,* 163 F.Supp.2d 1069 (D.S.D. 2001); *Smith v. Intercosmos Media Group, Inc.,* U.S.Dist.LEXIS 24251 (E.D.La. 2002); *Morrison V. America Online, Inc.,* 153 F.Supp.2d 930 (N.D. Ind. 2001); *Blumenthal v. Drudge,* 992 F.Supp. 44 (D.D.C. 1998).

In the case at bar, Xcentric Ventures, Ed Magedson and badbusinessbureau.org are alleged to be website operators who have published defamatory statements about Plaintiffs.

"Three elements are thus required for §230 immunity: the defendant must be a provider or user of an interactive computer service; the asserted claims must treat the defendant as a publisher or speaker of information; and the information must be provided by another information content provider." *Schneider* at 39.

Web hosts are recognized as §230 providers of interactive computer services. *See Schneider* at 40. The legislative history of §230 makes clear that Congress intended to extend immunity to all civil claims. *Id*. at 42. As the Fourth Circuit explained in *Zeran,* Congress deliberately chose not to deter harmful

online speech by means of civil liability on "companies that serve as intermediaries for other parties' potentially injurious messages." *Id.*

The defamation claim that is asserted here seeks to treat Defendants as publishers of the allegedly defamatory statements. Defendants are not the information content providers, and they are immune from claims that require them to be a publisher or speaker of the information as an element of the claim.

Here, Defendants are not the information content providers because they did not author the reports that are alleged to be defamatory. Recently, the Ninth Circuit confirmed that even where the website provided a detailed form and a menu of prepared responses that the user could chose from, the website was not the information content provider because the user made the choice as to which answers would be provided. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (August 13, 2003).

Further, it is well settled that to be an information content provider, the entity must have developed the information at issue. "The development of information, therefore, means something more substantial than merely editing portions of an email and selecting material for publication." *Batzel v. Smith,* 333 F.3d 1018, 1031 (9th Cir. 2003). The exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, post, or alter content does not transform an individual into an information content provider. *Zeran v. America Online,* 129 F.3d 327, 330 (4th Cir. 1997). Indeed, the very purpose of the CDA was to overrule case law that had held web hosts liable because they exercised editorial decisions. *Batzel v. Smith,* 333 F.3d 1018, 1029 (9th Cir.

2003).  Congress' express intent was to remove the disincentive that web hosts previously had to refrain from editorial decisions.  *Id.*

The only way that Defendants can be found to be an information content provider is if they created the actual content that Plaintiffs claim is false or misleading. *Carafano,* 339 F.3d at 1125.  It is not enough that it provided other content on the website. *Id.*

It is of no help to Plaintiffs that they allege that Defendants exercised control over the publication of the allegedly defamatory content.  "Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred." *Blumenthal v. Drudge*, 992 F. Supp. 44, 51 (D. D.C. 1998).

Case law makes clear that the immunity extends to protect website operators from claims based on the operator's failure to investigate postings or failing to edit or remove inaccurate postings, and claims based on the website operator making editorial decisions on what to post or not post. *Batzel v. Smith,* 2003 WL 21453358 (9th Cir. 2003).

Congress has chosen for policy reasons to immunize from liability for defamatory speech, providers or users of interactive computer services when the defamatory material is provided by someone else. *Id.*  One of these policy reasons is to "prevent lawsuits from shutting down websites and other services on the Internet." *Id.*

CASE NO. 2:04-CV-47-FtM-29-SPC

The Communications Decency Act preempts state law to the extent that state law allows defamation claims against website operators for content they did not create. "Preemption is required where state law conflicts with the express language of a federal statute." *Doe v. America Online*, at 1015. Further, the Communications Decency Act applies even where the website operator had notice and refused to remove the offending material. *Id.* at 1012-1013.

Because the Communications Decency Act immunizes Defendants from any liability for defamation, Count IV should be dismissed as Plaintiffs can prove no set of facts upon which liability exists.

### III.   COUNTS I, II AND III FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### A.   Plaintiff Has Not Stated a Claim Under 15 U.S.C. § 1114

15 U.S.C. § 1114 provides the remedy for a person's use, without consent of the registrant, of a **registered** mark, in a manner that is likely to cause confusion. Plaintiffs do not allege that their trademarks are registered. Indeed, Plaintiffs admit that their applications with the United States Patent & Trademark Office are pending. 15 U.S.C. §1114 is limited by its express terms to trademarks that are registered at the time of the infringement.

The Claim under 15 U.S.C. §1114 should also be dismissed for the reasons set forth below.

#### B.   Plaintiff Has Not Stated a Claim Under 15 U.S.C. § 1125

15 U.S.C. §1125 (a) provides in relevant part:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof,

-6-

or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged

15 U.S.C. §1125 also provides that:

**4)** The following shall not be actionable under this section:

**(A)** Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.

**(B)** Noncommercial use of a mark.

**(C)** All forms of news reporting and news commentary.

While Plaintiffs do not make it clear what their claims are under 15 U.S.C. §1125(a), there are two separate potential claims under this section, one for unfair competition under 15 U.S.C. § 1125(a)(1)(A), and the other for false advertising under 15 U.S.C. § 1125(a)(l)(B). The unfair competition or "consumer confusion" section of the Lanham Act "is intended to prevent confusion, mistake, or deception regarding the source of goods or services." *In re Connecticut Mobilecom, Inc.*, No. 02-12725 REG, 02-02519 WHP, 2003 WL23021959, at *8-*9 (S.D.N.Y. Dec. 23, 2003) (emphasis added). The false advertising section of the Lanham Act, on the other hand, "is intended to prevent confusion, mistake, or

deception regarding the characteristics or qualities of goods or services.' *Connecticut Mobilecom*, 2003 WL 23021959, at *9 (emphasis added).

### 1. **Prudential Standing is Lacking on the False Advertising Portion of the Lanham Act Claim**

In order to bring a Lanham Act claim, the Plaintiff must have standing. That standing is lacking as to the false advertising section of the Lanham Act.

There are two components to the standing doctrine. The traditional component refers to Article III standing, requiring a party to show injury, causation, and redressability. *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). Beyond constitutional requirements, federal courts also adhere to a second component that bears on the question of standing -- a set of prudential principles. *Bauer v. Texas,* 341 F.3d 353 , 357 (5th Cir. 2003); *McClure v. Asheroft*, 335 F.3d 404, 411(5th Cir. 2003) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982)).

Prudential standing is a set of rules forming an integral part of judicial self-government. *General Instrument Corp. v. Nu-Tek Electronics,* 197 F.3d 83, 87 (3rd Cir. 1999). The requirements "help courts identify proper questions of judicial adjudication, and further define the judiciary's role in the separation of powers." *McClure*, 335 F.3d at 411 (quoting *Ruiz,* 161 F.3d at 829 n.22). Specifically, those requirements address 'whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit. *Bennet v. Spear,* 520 U.S. 154, 162 (1997).

As a matter of statutory interpretation, Congress is presumed to have incorporated prudential standing principles, unless the statute expressly negates them. *Conte Bros. Automotive v. Quaker State-Slick 50,* 165 F.3d 221, 227 (3rd Cir. 1998). "Congress did not intend to abrogate prudential standing principles with respect to the Lanham Act." *Logan v. Burgers Ozark County Cured Hams, Inc.,* 263 F.3d 447, 460 n.9 (5th Cir. 2001) (citing *Procter & Gamble*, 242 F.3d at 560-61).

Accordingly, this Court should consider whether the Lanham Act was intended to confer standing upon plaintiffs who allege that they suffered injury by virtue of a non-competitor's allegedly defamatory remarks transmitted via an internet website. Under virtually identical facts, the Eastern District of Pennsylvania determined that Congress did not intend for the Lanham Act to be invoked in such a situation. *Nevyas v. Morgan,* 309 F. Supp.2d 673 (E.D. Pa. 2004)("despite the fact that plaintiffs may have suffered an injury to their commercial interests, they have not sustained competitive harm. We conclude that plaintiffs here cannot satisfy the prudential requirements to maintain standing to sue under the Lanham Act.") Here, as in the *Nevyas* case, the Defendants are alleged to have defamed the Plaintiffs but Defendants are not commercial competitors with the Plaintiffs. The Lanham Act is only intended to redress competitive harm. *Id.* at *680.

The injury complained of by Plaintiffs -- the erosion of Plaintiffs' goodwill and reputation and lost sales from potential customers because of the defendants posting of false, misleading, disparaging, and deceptive messages --

is not one that Congress sought to redress through the Lanham Act, because it is not the type of injury that the Lanham Act is aimed at. As recognized by the Fifth Circuit in *Procter & Gamble*, the Lanham Act focuses on "commercial interests [that] have been harmed by a competitor's false advertising . . and in secur[ing] to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." Id. (quoting *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316 (3d Cir. 1995); *Conte Bros.*, 165 F.3d at 234, and S. Rep. No. 1333, 79th Cong., 2d Sess. (1946), reprinted in 1946 U.S.C.C.A.N. 1274, 1275)). Redressing Plaintiffs' alleged injuries would further neither of these purposes. Although Plaintiffs' alleged injuries are commercial in nature (in that the misrepresentations might result in lost sales for its business), they are not competitive in nature. In other words, Plaintiffs contend only that they have been harmed by false advertising, not that they have been harmed by a competitor's false advertising touting the virtues of a competing product or service.

Regarding the Act's second purpose, Plaintiffs' alleged reputational harm is not the type of harm addressed by the Lanham Act. The Lanham Act addresses the diversion of one party's good will to another undeserving party. *Procter & Gamble*, 242 F.3d at 563 (recognizing that the Lanham Act focuses on "secur[ing] to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not") (emphasis added). Plaintiffs' allegations are missing an element of the variety of reputational harm Congress sought to address through the Lanham

Act. Taken together, the non-competitive nature of Plaintiffs' harm and the general nature of Plaintiffs' reputational injury weigh heavily against a conclusion that Plaintiffs have prudential standing under the Lanham Act. *See Cook Drilling Corp. v. HalcoAmerica, Inc.*, No. CIV. A. 01-2940, 2002 WL 84532 (ED. Pa. Jan. 22, 2002).

Another factor considered by courts in determining prudential standing -- directness of the alleged injury -- also suggests that Plaintiffs have no prudential standing to bring a claim under § 43(a) of the Lanham Act. When evaluating the second factor, there is standing where a competitor is directly injuring another by making false statements about his own goods and thus inducing customers to switch from a competitor. *See Logan*, 263 F.3d at 461 (finding the second factor to weigh in favor of prudential standing where the alleged injury was that HoneyBaked's false advertising about its own goods influenced its customers to buy its product instead of Logan's product); *Procter & Gamble*, 242 F.3d at 563 (finding the second factor to weigh against standing where there is no competitor directly injuring another by making false statements and inducing a customer to switch from a competitor). Plaintiffs' alleged injury does not arise from a competitor making false statements about his own goods. Nor does it arise from a competitor or non-competitor touting another's goods to induce customers to switch services. The Defendants and Plaintiffs do not even offer similar products. The Defendants are alleged to operate a consumer complaint forum, while Plaintiffs offer real estate investment seminars.

Another factor considered -- the proximity of the party to the alleged injurious conduct -- also weighs against standing in this case. This factor requires a court to determine whether there is "an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest," thus "diminish[ing] the justification for allowing a more remote party. . . to perform the offices of a private attorney general." *Procter & Gamble*, 242 F.3d at 563 (quoting *Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542 (1983)). In this case, the alleged harm caused by the defendants' deceptive and disparaging remarks about Plaintiffs likely affects only Plaintiffs. There is no direct competitor or even a non-competitor with a more immediate injury than Plaintiffs. Therefore, Plaintiffs are not persons whose self-interest would normally motivate them to vindicate the public interest. They are simply attempting to vindicate their own interests.

Because the Lanham Act was not intended to be used in the manner that Plaintiffs seek to use it, Plaintiffs lack standing to assert claims under the false advertising provision of the Lanham Act.

### 2. The False Advertising Portion of the Lanham Act Claim Fails to State a Claim Upon Which Relief Can Be Granted.

§ 1125(a)(1) (B) of the Lanham Act requires that "in commercial advertising or promotion," there is a misrepresentation. The use complained of by Plaintiffs is not in "commercial advertising or promotion." Although the statute does not define the phrase "commercial advertising or promotion," to qualify as "commercial advertising or promotion, most court require that the contested

representations consist of (1) commercial speech (2) made by a defendant who is in commercial competition with plaintiff (3) for the purpose of influencing consumers to buy defendants goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry." *Nevyas v. Morgan,* 309 F. Supp.2d 673 (E.D.Pa. 2004); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48 (2d Cir. 2002); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383, 1384 (5th Cir. 1996). This court need not inquire any further than the second and third elements to determine that the Defendants' postings on their websites do not constitute commercial advertising or promotion.

The acts complained of in the Complaint against the Defendants are surely not within the conduct contemplated by Congress in passing the Lanham Act. The Lanham Act is directed only against false representations in connection with the sale of goods or services in interstate commerce. "It has never been applied to stifle criticism of the goods or services of another by one, **such as a consumer advocate**, who is not engaged in marketing or promoting a competitive product or service." (emphasis added). *Wojnarowicz v. American Family Association*, 745 F.Supp 130, 141 (S.D.N.Y. 1990).

The legislative history makes clear that Congress did not intend the Lanham Act to apply to the conduct complained of in this case:

> Under this proposed change only false or misleading "advertising or promotion" would be actionable, whether it pertained to the advertiser itself or another party. The change would exclude all other misrepresentations from section 43(a) coverage. These others are the type which raise free speech concerns, **such as a Consumer Report which reviews and may disparage the**

> quality ... of products, [and] misrepresentations made by interested groups which may arguably disparage a company and its products.

(emphasis added) S. 1883, 101st Cong., 1st Sess., 135 Cong.Rec. 1207, 1217 (April 13, 1989), as cited in *Wojnarowicz,* 745 F. Supp. at 142.

Because Plaintiffs cannot show that the Defendants have used the Plaintiffs' marks in commercial advertising or promotion under § 43(a)(1)(B) of the Lanham Act, Plaintiffs have failed to state a false advertising claim for which relief can be granted.

### 3. The Unfair Competition Claims Fail to State a Claim Upon Which Relief Can Be Granted.

"The touchstone of a section 1125 (a)(1)(A) unfair competition claim is whether the defendant[s'] actions are 'likely to cause confusion,'" *McCoy v. Mitsitboshi Cutlery, Inc.*, 67 F.3d 917, 923 (Fed. Cir. 1995) (quoting *Matrix Essentials Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993)), *cert. denied*, 516 U.S. 1174(1996). Thus, an unfair competition claim is similar to a trademark infringement claim in that both claims depend on a likelihood of confusion. *Id.* at 923 (citing *Matrix Essentials*, 988 F.2d at 590, 592).

Plaintiffs do allege in Paragraph 34 and 48, that consumers may mistakenly believe that Defendants' website is sponsored or published by Plaintiffs. However, that allegation is a conclusory allegation and an unwarranted deduction of fact that need not, and indeed should not, be accepted as true. Plaintiffs' complaint alleges in Paragraph 67 that the Rip-off Report website contains false information about Plaintiffs, including that Russ Whitney lied and that the seminars are a rip-off, dishonest, and fraudulent. Plaintiffs' conclusory

allegation in Paragraphs 34 and 48 is contradicted by their factual allegations and wholly contrary to common sense.

      Plaintiffs may argue that likelihood of confusion is generally regarded as a question of fact and should not be decided in a Rule 12(b)(6) motion to dismiss or in a motion for summary judgment. There are, however, exceptions to the general rule. Where the goods between two parties are unrelated as a matter of law, dismissal of a likelihood of confusion claim pursuant to a Rule 12(b)(6) motion is appropriate. *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir. 1981); *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F.Supp.856, 860 (E.D.Pa. 1985). In the case at bar, not only are the goods unrelated as a matter of law, but neither party is a competitor of the other. Under these circumstances, a Rule 12(b)(6) motion is a proper vehicle for deciding whether Plaintiffs have stated a Lanham Act unfair competition claim.

      *Bihari v. Gross*, 119 F.Supp.2d 309 (S.D.N.Y. 2000), is highly instructive here. In *Bihari*, a provider of home design services, Bihari Interiors, brought a trademark infringement action and defamation suit against the operator of a website, Gross, who was critical of Bihari and her interior design services. *Id.* at 311-12, 314. Gross's website was similar to the defendants' website in the present case in that Gross's website provided disparaging guest book entries and defamatory titles. See *id.* at 314-15. All of the Gross websites used the "Bihari Interiors" mark as text and as metatags embedded within the websites' HTML code. *Id.* at 313.

Although *Bihari* recognized that the likelihood of confusion question generally requires a multi-factored test, the court declined to apply the factors. *Id*. at 319 n. 13. The court found that the factors were of little assistance because the Gross websites did not sell any goods of Bihari Interiors, did not directly compete with Bihari Interiors, and no longer used the Bihari Interiors mark in its domain name. *Id.* Together, these findings and the purpose of the website were enough to convince the court that any likelihood of confusion was minimal. *Id*. at 318-19. The purpose and function of the Gross websites was particularly relevant to the court. The court noted that "no reasonable viewer would believe that the disparaging comments regarding Bihari's business ethics . . are endorsed by Bihari." *Id*. at 319. Furthermore, the court found it relevant that there was no "lengthy delay between attempting to access plaintiff's home page and learning that one had failed to do so." *Id*.

In the present case, Defendants' website does not sell any goods or services of Plaintiffs and does not compete, directly or indirectly, with Plaintiffs. Furthermore, the defendants' website has never used any of the Plaintiffs' marks in its domain name. Most importantly, no reasonable viewer of the defendants' website would believe that the disparaging comments regarding Plaintiffs' business are endorsed by Plaintiffs. Those accessing the Defendants' websites would immediately recognize that the web pages do not belong to Plaintiffs. For these reasons, under no set of facts could Plaintiffs prove likelihood of confusion.

Plaintiffs also assert initial interest confusion. The *Bihari* case is equally instructive on this issue. In addition to finding no likelihood of conclusion, *Bihari*

concluded that there was no likelihood of initial interest confusion where the defendant websites are critical of the plaintiff, and use the plaintiff's protected marks in the text and metatags in the context of disparaging comments. *Bihari*, 119 F.Supp.2d at 319-21. *Bihari* recognized that the concern with initial interest of confusion in cyberspace is that "potential customers of one web site will be diverted and distracted to a competing web site." *Id*. at 319 (emphasis added). "The harm is that the potential customer believes that the competing website is associated with the website the [potential] customer was originally searching for and will not resume searching for the original website." *Id.*

In the present case, several facts indicate that Plaintiffs are virtually certain not to suffer such harm. First, the Defendants do not operate a competing website that sells or offers services similar to Plaintiffs. If the Defendants do not own or operate a competing website, they cannot divert Internet users away from Plaintiffs. *Id*. at 320; see also *BigStar Entertainment, Inc. v. Next Big Star, Inc*., 105 F.Supp.2d 185, 209-10 (S.D.N.Y. 2000) (stating that initial interest confusion does not arise where parties are not in close competitive proximity). Second, diversion of consumers because of initial interest confusion as to source or affiliation is highly unlikely where the defendants' websites provide people with information about Plaintiffs rather than diverting them from Plaintiffs. *See Bihari*, 119 F.Supp.2d at 320. Finally, initial interest confusion is even more unlikely where the Defendants' website is highly critical of Plaintiffs. Any Internet user who reads the disparaging text of the Defendants' website and sees the domain names of either "ripoffreport.com" or "badbusinessbureau.com" is unlikely to

believe that these websites belong to Plaintiffs. *See id.; Brookfield Communications, Inc. v.. West Coast Entertainment Corporation*, 174 F.3d 1036, 1062 (9th Cir. 1999) (relying on search engine results and different domain names to show that confusion is less severe when a mark is included in text or as a metatag as compared to a mark's inclusion in a domain name). Therefore, it is highly relevant that no reasonable viewer of the defendants' website would believe that the disparaging comments regarding Plaintiffs' business are endorsed by Plaintiffs. Those accessing the Defendants' websites would immediately recognize that the web pages do not belong to Plaintiffs. Therefore, just as there is no basis for finding a likelihood of confusion, there is also no basis for finding a likelihood of initial interest confusion. Consequently, Plaintiffs' complaint, whether grounded in likelihood of confusion or initial interest confusion, fails to state a claim for statutory trademark infringement.

### C. Plaintiff Has Not Stated a Claim Under Common Law Trademark Infringement

Plaintiffs have also claimed trademark infringement under common law. Likelihood of confusion is also the governing standard for common law trademark infringement claims. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, 2 U.S.P.Q. 2d 1292 (S.D. Fla. 1987). For the same reasons set forth above, Plaintiffs cannot establish likelihood of confusion.

### IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the

CASE NO. 2:04-CV-47-FtM-29-SPC

Complaint be dismissed in its entirety.

  RESPECTFULLY SUBMITTED this 27th day of September, 2004.

| Of Counsel:<br>**JABURG & WILK PC** | **DUANE MORRIS LLP** |
|---|---|
| Maria Crimi Speth, Esq.<br>Arizona Bar No. 012574<br>3200 North Central Avenue<br>Suite 2000<br>Phoenix, Arizona 85012<br>Telephone: 602.248.1000<br>Facsimile: 602.248.0522<br>E-mail  mcs@jaburgwilk.com | By:   /s Tina M. Talarchyk<br> Tina M. Talarchyk<br> Florida Bar No. 794872<br> James A. Weinkle<br> Florida Bar No. 710891<br> Trial Counsel<br> Wachovia Financial Center, Suite 3400<br> 200 South Biscayne Boulevard<br> Miami, Florida 33131-5323 |
| Jonathan P. Ibsen<br>7047 East Greenway Parkway<br>Suite 140<br>Scottsdale, AZ  85254<br>Telephone: 480.624.2777<br>Facsimile: 480.607.9483<br>E-mail:  jpi@jaburgwilk.com |  Telephone:  305.960-2200<br> Facsimile:   305.960-2201<br> E-Mail:  TMTalarchyk@duanemorris.com<br>  JAWeinkle@duanemorris.com<br><br>Attorneys for Defendants<br>Xcentric Ventures, LLC,<br>badbusinessbureau.org, and<br>Ed Magedson |
| Attorneys for Defendants<br>Xcentric Ventures, LLC, ,<br>badbusinessbureau.org, and Ed<br>Magedson | |

CASE NO. 2:04-CV-47-FtM-29-SPC

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2004, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participants:

Christina M. Kitterman, Esq.
ROTHSTEIN, ROSENFELDT, DOLIN & PANCIER, P.A.
300 Las Olas Place
300 S.E. 2nd Street
Suite 860
Ft. Lauderdale, Florida  33301

Telephone: 954.522.3456
Facsimile:   954.527.8663

By:   s/James A. Weinkle
       James A. Weinkle

I further certify that on September 28, 2004, I mailed the foregoing document and notice of electronic filing to the foregoing attorneys.

Scott W. Rothstein, Esq.
Alana D. Cappello, Esq.
Christina M. Kitterman, Esq.
ROTHSTEIN, ROSENFELDT, DOLIN & PANCIER, P.A.
300 Las Olas Place
300 S.E. 2nd Street
Suite 860
Ft. Lauderdale, Florida  33301

Telephone: 954.522.3456
Facsimile:   954.527.8663

By:   s/Tina M. Talarchyk
       Tina M. Talarchyk