Maria Crimi Speth, #012574
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| WHITNEY INFORMATION NETWORK, INC.; a Colorado corporation,<br><br>Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, LLC, an Arizona limited liability company; BADBUSINESSBUREAU.ORG, an Arizona limited liability company; and ED MAGEDSON, an individual,<br><br>Defendants. | Case No: 2:04-CV-47-ftm-29<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |

Xentric Ventures, LLC, ("Xcentric"), Badbusinessbureau.org ("BBB"), and Ed Magedson ("Magedson") (collectively, the "Defendants"), by their attorneys Jaburg & Wilk, P.C., by Maria Crimi Speth, respectfully request that this Court dismiss the above-captioned action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (the "Federal Rules") because this Court does not have Personal Jurisdiction over the Defendants.

### I. PROCEDURAL BACKGROUND

On June 28, 2004, Defendants moved to dismiss the original complaint for lack of personal jurisdiction. The original complaint was filed by two Plaintiffs, Whitney

Information Network, Inc., a Colorado corporation and Russ Whitney, a Florida resident. The Complaint alleged claims for Federal Trademark Infringement, False Designation of Origin, Common Law Trademark Infringement and Defamation Per Se of Business Reputation.

This Court denied the Motion to Dismiss accepting Plaintiffs' argument that Defendants committed a tortious act within Florida by publishing and continuing to publish infringing marks in Florida on their website and by publishing information on their website about plaintiffs, directed at Florida and causing injury in Florida. (Opinion and Order, September 8, 2004). This Court held that due process was satisfied because the activities were purposefully directed at the state of Florida, citing a report posted by a consumer that alleged that Russ Whitney lied and listed Mr. Whitney's residence as Cape Coral, Florida. This Court held that these comments targeted a Florida resident and a Florida corporation.

On September 27, 2004 Defendants filed a Motion to Dismiss for Failure to State a Claim.[1] This Court granted the motion on all counts. (Order dated July 14, 2005). The basis for the dismissal on the defamation count was that Defendants did not author the purportedly defamatory statements, but merely operate the website upon which third parties posted the comments. Pursuant to the Communications Decency Act, 47 U.S.C. §230, the provider of an interactive computer service shall not be treated as the publisher or speaker of any information provided by another information content provider. The Complaint was dismissed without prejudice.

On September 27, 2005, Plaintiff Whitney Information Network, filed its First Amended Complaint. Unlike the original complaint, the First Amended Complaint was not filed on behalf of Russ Whitney, a Florida resident. Rather it is only on behalf Whitney Information Network, a Colorado corporation. Moreover, the First Amended Complaint alleges only defamation, it does not re-allege the dismissed trademark claims.

---

[1] It was incorrectly titled Second Motion to Dismiss for Lack of Jurisdiction, which title was corrected in a notice of errata.

This Court lacks jurisdiction over defendants for the claims alleged in the First Amended Complaint. The grounds for which the Court previously found jurisdiction, do not exist in the First Amended Complaint.

## II. INTRODUCTION

The Defendants' Motion should be granted because none of the Defendants have any connection to the State of Florida and no tort has been committed by Defendants; and thus no tort was committed in Florida.

The grounds for jurisdiction that this Court previously determined existed were based, at least in part, on the effect of Defendants' conduct on a Florida resident, Russ Whitney and on the Defendants' use of Plaintiff's trademarks. The First Amended Complaint dropped Russ Whitney as a Plaintiff and dropped all of the trademark claims. The remaining claim for defamation is brought by a Colorado corporation that does business all over the country and did not suffer the brunt of the harm in Florida. Further, the Defendants did not commit defamation because they cannot be treated as a publisher or author under the Communications Decency Act.

## III. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FEDERAL RULE 12(b)(2).

In determining a Motion to Dismiss pursuant to Rule 12(b)(2), "[a] court must conduct a two-part inquiry when deciding the issue of personal jurisdiction." *Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1249 (11th Cir. 2000)(*citing, Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996)).

First, a court must determine whether personal jurisdiction exists under the State's applicable Long-Arm Statute, then a court must inquire as to whether such jurisdiction is Constitutional. *Id.* (*citing, Schulptchair,* 94 F.3d at 626; *International Shoe v. Washington,* 326 U.S. 310 (1945)).

Here, Plaintiffs' allegations satisfy neither Florida's Long Arm Statute, nor the applicable Constitutional requirements.

A. **DEFENDANTS' CONDUCT DOES NOT GIVE RISE TO PERSONAL JURISDICTION UNDER FLORIDA'S LONG-ARM STATUTE BECAUSE NO TORT WAS COMMITTED BY DEFENDANTS**

Florida's long arm jurisdiction may be based on the commission of a tort within Florida. Here, however, no tort was committed by Defendants. The only tort alleged is defamation. To defame a company, the Defendant must author or publish a false and defamatory statement about the company. As this Court held in its July 14, 2005 Order, 47 U.S.C. §230 prohibits publisher liability for defamation where the claim is against an interactive computer service.

In its First Amended Complaint, Plaintiff attempts to circumvent this Court's ruling by making the new, entirely baseless, allegations that Defendants are the authors of the content at issue. In the *original* complaint, which was dismissed for failure to state a claim, paragraph 44 read, "[h]ere Defendants publish and make available for viewing more than a dozen false stories about Plaintiffs with reckless disregard for the truth of such stories." In the First *Amended* Complaint, Plaintiff, in order to avoid the application of the Communications Decency Act, alleges in paragraph 48, "[h]ere Defendants publish and make available for viewing more than a dozen false stories about Plaintiff, *the content of which the Defendants themselves largely created*, with reckless disregard for the truth of such stories." The allegations that Defendant created this content will be the subject of a future Rule 11 motion.

The allegation that Defendants created the content about Plaintiff is entirely false and was inserted without reasonable inquiry and without a good faith belief that it is true. In support of Defendants' first Motion to Dismiss for lack of jurisdiction, Ed Magedson affirmed that neither he nor any agent of Xcentric authored the reports about Plaintiff and *Plaintiff never disputed that evidence*. Plaintiff has no evidence to even infer that

Defendants authored the postings about Plaintiff. Indeed, the content of the reports themselves reflect that they were created by consumers who had taken Plaintiff's seminar. (Exhibit "D"). Additionally, Ben Smith, who works for a company called TecServ, which provides technology services to Xcentric, has tracked the IP addresses of each of the postings about Plaintiff and none of the IP addresses belong to the computers utilized by Magedson or Xcentric. (Exhibit "E").

Since no tort was committed, then personal jurisdiction can not be based on the commission of a tort within Florida.

**B.  DEFENDANTS' CONDUCT DOES NOT GIVE RISE TO PERSONAL JURISDICTION UNDER FLORIDA'S LONG-ARM STATUTE EVEN IF A TORT WAS COMMITTED BY DEFENDANTS**

Defendant, Xcentric, is an Arizona limited liability company which neither transacts any business, nor maintains any offices, or agents or employees within the State of Florida. (Exhibit "A," Magedson Aff. at ¶ 7). Xcentric operates the Rip-off Report website, upon which third parties have posted allegedly defamatory comments about Plaintiff.

Badbusinessbureau.org was an Arizona non profit corporation that was created in 2002 with the intent of creating a consumer advocacy foundation. However, it never even published its Articles of Incorporation and was administratively dissolved. It has no involvement in the website at issue and it has never transacted business anywhere, including in the State of Florida. (Id. at ¶ 10; Exhibit "B"). Xcentric does use the d/b/a badbusinessbureau.com (not .org) in connection with the Rip-Off Report website, but that is unrelated to the administratively dissolved badbusinessbureau.org. Additionally, prior to Xcentric, the Rip-off Report website was operated by badbusinessbureau.com, llc, a Nevis West Indies company that was an entirely separate entity from the Arizona non-profit corporation that is no longer in existence.

Defendant, Ed Magedson, resides in Arizona. Further, he has never resided in the State of Florida and has not been in the State of Florida since 1973, during which time he operated a flower business. (Exhibit "A" at ¶ 2-3). Magedson sold his flower business in or about 1974, and has neither owned any assets, nor maintained any offices in the State of Florida since that time. (Id. at ¶ 4).

Neither Ed Magedson, nor Xcentric Ventures direct their activities toward Florida. (Exhibit "A"). Rather, they operate a website wholly within Arizona that can be viewed anywhere in the world and upon which people from all over the world post stories explaining their experiences with companies. (Exhibit "A"). There well over 90,000 such postings on the Rip-off Report website. (Exhibit "A"). Only a handful of these postings are about Plaintiff, Whitney Information Network, Inc. None of the postings about Plaintiff were posted by Xcentric, Magedson, or any of their agents. (Exhibit "A").

The Supreme Court of Florida has held that committing a tortious act in Florida can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. *Acquadro v. Bergeron,* 851 So.2d 665 (2003) *citing Wendt v. Horowitz,* 822 So.2d 1251 (Fla. 2002). In *Acquadro,* the Court held that defamatory calls into Florida by a nonresident could be sufficient to establish personal jurisdiction. Neither of these decisions hold that hosting a website which can viewed from within Florida establishes jurisdiction.

Plaintiff will likely rely on these decisions. However, each of these cases involves telephonic, electronic or written communications that were specifically directed at the State of Florida or a resident of the State of Florida. Here, Xcentric operated a website upon which third parties posted statements about Plaintiff (Exhibit "A"). Xcentric's agents did not author the complaints that were made that Plaintiff contends were defamatory. (Exhibit "A").

After the Court's decision in *Wendt,* and acknowledging that holding, the District Court of Appeals for the Second District of Florida held that a website that was viewed

6

by a Florida resident was insufficient to establish jurisdiction. *Homeway Furniture Company of Mount Airy, Inc. v. Horne,* 822 So.2d 533 ( Fla. 2nd DCA 2002). The Court held that the existence of an injury in Florida, standing alone, is insufficient to establish jurisdiction pursuant to section 48.193(1)(b), Fla. Stat.

The basis for the Court's previous finding of jurisdiction was that Magedson and Xcentric "publish and continue to publish infringing marks in Florida on his websites, which are directed at Florida and cause injury in Florida. (Opinion and Order dated September 8, 2004). The Court also accepted Plaintiffs' allegation that badbusinessbureau.org published information on its website about plaintiffs, directed at Florida and causing injury in Florida. (Id.). First, badbusinessbureau.org published nothing. It is a dissolved corporation. Xcentric, which does operate the website, did publish information on its website about Plaintiff, but there is no evidence that information was directed at Florida *by Xcentric,* or that the brunt of injury was felt in Florida. It is irrelevant whether the third party who posted the reports about Whitney Information Systems, Inc. directed his or her posting at Florida because jurisdiction must be based on the activities of the Defendant, not some third party. *Auto Wax, Inc. v. Kasei Kogyo Co., Ltd.* 2001 WL 1891719, *2 (W.D.Tex.) (W.D.Tex.,2001).

Additionally, the Court's finding that injury was caused in Florida was based on the fact that Russ Whitney is a Florida resident. Russ Whitney, however, is no longer a Plaintiff in this case. Thus, the only Plaintiff claiming injury is a Colorado corporation that claims its principal place of business is in Florida, but indisputably does business all over the country. Attached as Exhibit "C" are print-outs from Plaintiff's current and past websites that show that Plaintiff does business all over the country, including in Pennsylvania, California, Ohio, New Jersey, Florida, Louisiana, Wisconsin, Virginia, Oregon, New Mexico, Washington, Colorado, Michigan, Idaho, New York, Texas, Massachusetts, Utah, Nevada, Georgia, Connecticut, Tennessee, Minnesota, Indiana, Vermont, Canada and the United Kingdom. Also, of the 50 postings about Plaintiff, the

authors are from California, Colorado, Ohio, Alberta Canada, Washington, Arizona, Illinois, Michigan, New Jersey, Ohio, and West Virginia. (Exhibit "E"). Only four of the 50 postings indicate that they are from Florida residents. (Exhibit "E").

As is set forth below, Plaintiff must show that it suffered the brunt of its injury in Florida. That is impossible where Plaintiff is a Colorado company that does business throughout the country and internationally.

C.  **DUE PROCESS PREVENTS THIS COURT FROM EXERCISING JURISDICTION OVER THE DEFENDANTS.**

Alternatively, even if this Court were to determine that Defendants' activities were sufficient to confer Personal Jurisdiction under Florida's Long-Arm Statute, this Court is still lacking personal jurisdiction over the Defendants by the Due Process Clause of the United States Constitution.

> There are three considerations under the due process clause (1) purposeful availment of the forum state; (2) the cause of action arises out of the activities of which you purposefully availed yourself, i.e., the contacts must proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state; and (3) reasonable forseeability that 'a defendant should reasonably anticipate being haled into court there.' (internal citations omitted).
>
> *Future Technology*, 218 F.3d 1247, 1250-1251 (*citing, Burger King v. Rudzewicz,* 471 U.S. 462, 474 (1985)(*quoting, World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297 (1980))).

In essence, the Due Process Clause ensures that persons will have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Burger King,* 471 U.S. at 472.

Here Due Process mandates dismissal. To begin, none of the Defendants' business activities have any direct or purposeful connection to Florida. Rather, the

website operated by Xcentric has over 90,000 reports pertaining to a multitude of different jurisdictions. (Magedson Aff. Exhibit "A" at ¶ 9)

Plaintiff may claim that Defendants intentionally aimed their conduct at Plaintiff by defaming Plaintiff. However, Xcentric and its agents are not the authors of the allegedly offending materials. Xcentric merely operates the website upon which consumers post their own complaints. Even if the consumer purposefully aimed its writings at a company that is based in Florida, Xcentric did not.

The purposeful availment requirement cannot be satisfied by "random," "fortuitous," or "attenuated" contacts with the forum state or by plaintiff's or a third party's unilateral activities; instead, Auto Wax must show "actions by the defendant himself that create a 'substantial connection' with the forum state." Auto *Wax, Inc. v. Kasei Kogyo Co., Ltd.* 2001 WL 1891719, *2 (W.D.Tex.) (W.D.Tex.,2001)

In a virtually identical factual context where the previous operator of this very website was accused of defamation and extortion in Wisconsin, the United States District Court dismissed the action pursuant to the due process clause.[2] *Hy Cite Corporation v. badbusinessbureau.com, llc.*, 297 F. Supp.2d 1154 (W.D. Wis. 2002). In *Hy Cite,* as here, the Plaintiff claimed that Xcentric's predecessor published defamatory statements on the website and extorted Hy Cite by requesting money to remove the reports. The *Hy Cite* Court noted that for jurisdiction to attach, the contacts between the defendant and the forum state may not be "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Instead, "the sufficiency of the contacts is measured by the defendant's purposeful acts." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580 (7th Cir. 1994). The minimum contacts with the forum state must be the result of the defendant's

---

[1] This website is the subject of multiple lawsuits because it is a forum in which consumers complain about deceptive business practices, prompting businesses to threaten and file lawsuits to try to force the removal of negative information. This is an additional reason that this matter should be dismissed. If Xcentric is subject to jurisdiction in every state where the website it viewed, the financial hardship would be extreme.

10297-1/MCS/DAG/500435_v1

purposefully availing itself of the privilege of conducting business in the forum state, thereby invoking the protections and benefits of the forum state's law. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 *(1958); International Medical Group, Inc. v. American Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir.2002). The *Hy Cite* Court held:

> Plaintiff fails to allege any facts demonstrating that defendant expressly aimed its activities at Wisconsin. The facts of record do not indicate that defendant creates the text of the consumer complaints. It is the *consumers* that are using plaintiffs name and making allegedly defamatory statements. If defendant is not creating the text, then defendant is not purposefully directing its activities toward any particular company or state.

Here, as in *Hy Cite,* the evidence is that consumers wrote the complaints on the website, not Xcentric. Thus, Xcentric is not purposefully directing its activities toward any particular company or state.

The *Hy Cite* Court further noted that the Plaintiff failed to show that it suffered the brunt of its injury in Wisconsin. The Court rejected the contention that just because Plaintiff has its principal place of business in a state, its injury is in that state:

> When an injured party is an individual, it is reasonable to infer that the brunt of the injury will be felt in the state in which he or she resides. This is not necessarily the case when the injured party is a corporation. "A corporation does not suffer harm in a particular geographic location in the same sense that an individual does." *Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1486 (9th Cir.1993). *Calder,* 465 U.S. at 789, 104 S. Ct. 1482, still requires that the harm be particularized to the forum state, *see Janmark* 132 F.3d at 1202. Even if a corporation has its principal place of business in the forum state, it does not follow necessarily that it makes more sales in that state than any other or that harm to its reputation will be felt more strongly in that state.

Here, as in *Hy Cite,* Plaintiffs must make a showing that it suffered the brunt of their injury in Florida. It cannot show that it suffered the brunt of its injury in Florida because its own website demonstrates that it is an international company that conducts

business all over the United States as well as abroad. The majority of courts considering the issue hold that merely identifying the Plaintiff's principal place of business is not enough without more to show that the Plaintiff has suffered the brunt of an injury in the state. *See, e.g., Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1112 (9th Cir. 2002); *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 265 (3d Cir. 1998); *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1079 (10th cir. 1995); *Dakota Indus, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1391 (8th Cir. 1991); *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 773 (5th Cir. 1988) (the location of Plaintiff's place of business is a "mere fortuity" when other minimum contacts are not established.)

## III.  CONCLUSION

Based upon the foregoing, Defendants request that the Complaint be dismissed in its entirety for lack of jurisdiction, together with any further relief that this court deems just and proper.

DATED this 21st day of October, 2005.

JABURG & WILK, P.C.

*/s/ Maria C. Speth*

Maria Crimi Speth, Esq.
Attorneys for Defendants

10297-1/MCS/DAG/500435_v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of October, 2005, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Christopher C. Sharp, Esq.
Scott W. Rothstein, Esq.
Rothstein, Rosenfeldt, Adler
300 Las Olas Place, Suite 860
300 Southeast Second Street
Fort Lauderdale, Florida 33301
Attorneys for Plaintiffs

By /s/ Brian J. Stack

10297-1/MCS/DAG/500435_v1