UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 2:04-cv-47-FtM-29 SPC

WHITNEY INFORMATION
NETWORK, INC., a Colorado corporation,

　　　　Plaintiff,
v.

XCENTRIC VENTURES, LLC., an
Arizona limited liability company;
BADBUSINESSBUREAU.ORG, an
Arizona limited liability company; and
ED MAGEDSON, an individual,

　　　　Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

　　　　Plaintiff, WHITNEY INFORMATION NETWORK, INC. ("WIN"), by and through its undersigned counsel, hereby files its Memorandum of Law in Opposition to Defendants' Motion to Dismiss Complaint for Lack of Personal Jurisdiction, filed October 21, 2005, and states:

**<u>INTRODUCTION</u>**

　　　　On or about January 22, 2004, Plaintiffs WIN and RUSS WHITNEY filed a Complaint against Defendants, for: I) Federal Trademark Infringement; II) False Designation of Origin, False Description and False Representation under 15 U.S.C. § 1125(a); III) Common Law Trademark Infringement; and IV) Defamation per se of Business Reputation.

1

On June 28, 2004, Defendants filed their first Motion to Dismiss Complaint for Lack of Personal Jurisdiction with Supporting Memorandum of Law [D.E. 6]. By its Opinion and Order entered September 8, 2004 [D.E. 24], the Court denied the Motion to Dismiss for Lack of Personal Jurisdiction.

Subsequent to the Court's denial of the Motion to Dismiss for lack of personal Jurisdiction, Defendants' filed a Second Motion to Dismiss – Failure to State a Claim. [D.E. 26]. By Order entered July 14, 2005, the Court granted the Second Motion to Dismiss on all counts [D.E. 49].

On September 27, 2005, Plaintiff WIN filed its First Amended Complaint [D.E. 56]. The First Amended Complaint omitted the federal and common law claims that had been dismissed by the Court (Counts I, II and III of the initial Complaint), and raised a single count for defamation per se of WIN's business reputation. The defamation claim is now supported by additional allegations concerning Defendants' personal involvement in creating the content of the defamatory website postings concerning Plaintiff, which were not known to Plaintiff when the initial Complaint was filed. In addition, although WIN'S founder and CEO, Russ Whitney, was a Plaintiff in the initial Complaint, he is no longer pursuing his individual claims against Defendants.

Other than the omission of the trademark claims and the individual defamation claims, the First Amended Complaint is supported by the same jurisdictional allegations as the initial Complaint, i.e., that the Defendants committed tortious acts within the State of Florida, and that they have sufficient minimum contacts in Florida such that they could reasonably anticipate being sued in Florida for their defamatory statements concerning a

corporation that is based in Lee County and maintains a substantial presence in the State of Florida.

Because Defendants have essentially reargued the same issues as they did previously, and there are no new facts alleged in the Amended Complaint or the Motion to Dismiss that would warrant a different result, the Court should once find that it has personal jurisdiction over the Defendants in this case.

### I.   STANDARD OF REVIEW FOR PERSONAL JURISDICTION

On a motion to dismiss for lack of personal jurisdiction, district courts must accept facts alleged in complaint as true to the extent they are uncontroverted by defendant's affidavits; where plaintiff's complaint and defendant's affidavits conflict, district courts must construe all reasonable evidence in favor of plaintiff. Hoechst Celanese Corp. v. Nylon Engineering Resins, Inc., 896 F. Supp. 1190, 1192 (M.D. Fla. 1995).

Whether the Court can exercise personal jurisdiction over a nonresident defendant involves a two-part analysis. Id. at 1192; Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990); Cable/Home Communication Corp. v. Network Prods. Inc., 902 F.2d 829, 855 (11th Cir.1990); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989). First, the Court must determine whether Plaintiff has established sufficient jurisdictional facts to subject Defendants to Florida's long-arm statute. Venetian Salami Co., 554 So. 2d at 502. The Court next determines whether Defendants possess sufficient minimum contacts to satisfy constitutional due process requirements. Id. at 500. The initial burden is on Plaintiff to plead a sufficient basis for service under Florida's long-arm statute. Id. at 502. If Defendants contest the allegations raised in Plaintiff's Complaint they must file

3

affidavit(s) in support of their motion to dismiss for lack of personal jurisdiction. Id. at 502. If there is no conflict between the parties' affidavits as to the essential jurisdictional facts, the Court is free to resolve the issue of jurisdiction based on the affidavits. Id. at 502. If any essential facts relating to jurisdiction are in conflict, then the Court must conduct a limited evidentiary hearing to resolve the disputed facts. Id. at 503.

II.     BACKGROUND

A.     Defendants' Defamatory Publication on Defendants' Website in Florida

Defendants, Xcentric Ventures, Badbusinessbureau.org and Ed Magedson, publish websites known as "www.ripoffreport.com" and "www.ripoffrevenge.com" for commercial and economic gain and publish same in and throughout Florida. Defendants hold themselves out to the public as a "worldwide consumer reporting website and publication, by consumers for consumers" to file and document consumer complaints about "companies or individuals who rip off consumers." See Copy of Defendants' home page attached to Plaintiffs' Memorandum in Opposition to Motion to Dismiss [D.E. 18] as Composite Exhibit "A" and incorporated herein by reference.[1]  Defendants solicit consumers to submit complaints about any company that has allegedly "ripped" the consumer off.

Once Defendants receive a complaint from the consumer, they review it and choose which complaint to publish on their website, "www.ripoffreport.com." Defendants' publication of the chosen consumer complaints is with reckless disregard for the truth as Defendants do not verify such complaints for accuracy, and provide little or

---

[1] Unless otherwise noted, Plaintiff is relying on the same exhibits that supported its prior response to Defendants' initial Motion to Dismiss for Lack of Personal Jurisdiction.

4

no opportunity for rebutal.  Rather, Defendants simply publish the chosen complaints and declare that Plaintiffs are "ripping off" consumers.

Furthermore, while on Defendants' website, "www.ripoffreport.com," there are solicitations by the Defendants for consumers to click on a link titled "Rip Off Revenge" where consumers are then directed to Defendants' second website, "www.ripoffrevenge.com."  Through Rip Off Revenge, Defendants offer to sell consumers either a service wherein Defendants will "help victims collect in a few days or hours," or consumers can pay $19.95 and receive a "Do-it-Yourself Guide: How to get Rip-Off Revenge and your money back too…" See Copy of Defendants' home page attached to Plaintiffs' Memorandum in Opposition to Motion to Dismiss [D.E. 18] as Composite Exhibit "B" and incorporated herein by reference.  Defendants' website, "www.ripoffreport.com," also offers advertising banner ads for sale, which advertisers can pay Defendants money and their company name and logo will appear on Defendants' website.  See copy of Defendants' advertising page attached Plaintiffs' Memorandum in Opposition to Motion to Dismiss [D.E. 18] as Composite Exhibit "C" and incorporated herein by reference.  Further, Defendants solicit Internet consumers for "donations" "for the high cost of providing [the] service." See Copy of Defendants' solicitation page attached to Plaintiffs' Memorandum in Opposition to Motion to Dismiss [D.E. 18] as Exhibit "D" and incorporated herein by reference.

As a result of Defendants' website, Florida residents can and do access Defendants' website to research information regarding Florida corporations and to file complaints against Florida corporations.  Moreover, Defendants publish and make available for viewing in Florida more than a dozen false stories about Plaintiff, with

5

reckless disregard for the truth of such stories. <u>See</u> stories attached to Plaintiffs' Memorandum in Opposition to Motion to Dismiss [D.E. 18] as Composite Exhibit "E" and incorporated herein by reference

Defendants further seek Florida consumers by programming meta-tags[2] (invisible coding) on their website to alert search engines to the key words that relate to the content-specific information on Defendants' website. <u>See</u> Scott Durkin Affidavit [D.E. 22], at ¶¶ 11-12. Specifically, Defendants' meta-tags list "Florida" as one of the key words for their website. <u>See</u> Durkin Aff. ¶¶ 10, 13; <u>see</u> also Defendants' website source code attached to Plaintiffs' Memorandum in Opposition to Motion to Dismiss [D.E. 18] as Exhibit "F" and incorporated by reference. By including the key word "Florida," Defendants are seeking to be a top listing on search engines when Florida consumers are searching for information on Florida corporations. <u>See</u> Durkin Aff. ¶ 14. Thus, Defendants' allegation that they do not aim their website or stories at Florida is a fiction.

In the First Amended Complaint, it is also alleged that Defendants' posting of false and slanderous "complaints" on their website is part of an illicit extortion scheme. In addition to encouraging "clients" to complain about companies such as Plaintiff, Defendants often tailor and re-write the complaints themselves, adding words such as "ripoff," "dishonest," and "scam," notwithstanding the nature of the complaint, after which Defendants would have the "client" anonymously post the complaint on Defendants' website. Furthermore, upon information and belief, Defendants also create fictional complaints themselves, which are then attributed to people with false names or "anonymous" titles from fictional locations around the United States, despite knowing

---

[2] Search engines have spiders that crawl a website's invisible and embedded code, called meta tags, which are programmed by web designers, to alert the search engine to the content of the website.

6

that such complaints were fabricated by Defendants themselves.

The contrived numerosity of the complaints gives the appearance of legitimacy, and the multiple complaints are absorbed by search engines on the Internet, resulting in higher placement of the defamatory material on Internet search engines. Consequently, the defamatory material would be viewed by greater numbers of Plaintiff's customers and potential customers, and ultimately, Plaintiff. This was done in an effort to damage the targeted company and bring it closer to Defendants' extortion scheme, under which the targeted company is requested to pay a "fee" to cease the publication of such defamatory material. Defendants never succeeded in their attempts to extort Plaintiff because Plaintiffs commenced this action before Defendants had an opportunity to seek such payment from Plaintiff, and in any event, Plaintiff would have refused to pay any extortion fees for the removal of the defamatory material.

### B.   Legal Arguments Raised by Defendants' Motion

As they did previously in their unsuccessful Motion to Dismiss for Lack of personal Jurisdiction, Defendants' assert that Plaintiff has failed to plead sufficient facts supporting personal jurisdiction over Defendants in Florida, and that due process considerations prevent this Court from exercising jurisdiction over Defendants.

Significantly, the only new argument raised in support of the Motion to Dismiss that can be even considered by the Court on a 12(b)(2) motion is that the "grounds for jurisdiction that this Court previously determined existed were based, at least in past, on the effect of Defendants' conduct on a Florida resident, Russ Whitney." See Motion to Dismiss, at 3. However, because the Court's prior finding of personal jurisdiction was based equally on the fact that Defendants' conduct "targeted . . . a Florida corporation,

7

and concerned a Florida community," Opinion and Order [D.E. 24], at 9, the mere omission of Russ Whitney as a named Plaintiff should not lead the Court to reach a different result.[3]

### C. Defendants' Affidavit is Insufficient to Support the Motion to Dismiss

In support of their Motion to Dismiss, and in an attempt to controvert the allegations of the First Amended Complaint, Defendants have re-filed the same affidavit of Defendant MAGEDSON as was submitted in support of the previously-denied Motion to Dismiss. However, unlike fine wine, the Affidavit has not improved with age, and it suffers from the same infirmities as it did previously, in that it does not sufficiently refute all of Plaintiffs' jurisdictional allegations set forth in Plaintiffs' Complaint.

### D. Uncontroverted Jurisdictional Allegations in Plaintiffs' Complaint

MAGEDSON'S Affidavit in support of the Motion to Dismiss completely fails to controvert the following jurisdictional allegations in Plaintiff's First Amended Complaint:

> 4. Defendant, XCENTRIC VENTURES, LLC., is subject to the jurisdiction of this Court because it:
>
> (a) Operates, conducts, engages in or carries on a business or business ventures within this state through its Internet websites; and
>
> (b) Committed and continues to commit a tort in Florida by publishing false and defamatory information on its websites about Plaintiffs, directed at Florida and causing injury in Florida that gives rise to a potential claim cognizable in Florida.

---

[3] In their Motion to Dismiss, Defendants' further assert that "the Defendants did not commit defamation because they cannot be treated as a publisher or author under the Communications Decency Act." Motion to Dismiss, at 3. In support of this argument, they submit the Declaration of Ben Smith, dated October 21, 2005, in which Mr. Smith states that he has personally verified that none of the email addresses corresponding to the defamatory postings about Plaintiffs match the email addresses of Defendants or their agents. That argument, however, addresses the merits of Plaintiff's claim, making it inappropriate on a motion to dismiss brought under Rule 12(b)(2), and more suited to a summary judgment motion pursuant to Rule 56, after discovery has been conducted.

> 5. Defendant, BADBUSINESSBUREAU.ORG, is subject to the jurisdiction of this Court because it:
>
> (a) Operates, conducts, engages in or carries on a business or business ventures within this state through its Internet websites; and
>
> (b) Committed and continues to commit a tort in Florida by publishing false and defamatory information on its websites about Plaintiffs, directed at Florida and causing injury in Florida that gives rise to a potential claim cognizable in Florida.
>
> 6. Defendant, ED MAGEDSON, an individual, is subject to the jurisdiction of this Court because he:
>
> (a) Operates, conducts, engages in or carries on a business or business ventures within this state through his Internet websites; and
>
> (b) Committed and continues to commit a tort in Florida by publishing false and defamatory information on his websites about Plaintiffs, directed at Florida and causing injury in Florida that gives rise to a potential claim cognizable in Florida.
>
> 7. This Court has personal jurisdiction over all Defendants as they intentionally published defamatory material concerning Plaintiff in Florida on their Internet website. Defendants' use of such defamatory material is for interstate commercial activity and such use is a substantial aspect of Defendants' conduct giving rise to Plaintiff's claims.

See First Amended Complaint, ¶¶ 4-7.

Further, the following allegations in Plaintiffs' First Amended Complaint allege additional jurisdictional facts against Defendants:

> 9. Defendants intentionally and/or recklessly published defamatory information about Plaintiffs, a Florida corporation and Florida resident, and published same via the Internet within Lee County, Florida.
>
> 10. Defendants intentionally and/or recklessly published defamatory information and clearly directed said information at a corporation in Florida, via their Internet websites, regarding Plaintiffs' business, resulting in significant injury and harm to Plaintiffs and their reputation. The bulk, if not all of the harm has occurred and

> will continue to occur in Florida.
>
> 11. At all times material hereto, Defendants engaged in and continue to engage in substantial activity within the State of Florida by, inter alia, engaging in and continuing to engage in solicitation or service activities within the State of Florida.

See First Amended Complaint, ¶¶ 9-11.

Defendant MAGEDSON'S Affidavit only controverts the jurisdictional allegations set forth in paragraphs 4(a), 5(a) and 6(a) of Plaintiffs' Complaint, and completely fails to controvert the remaining jurisdictional allegations. To the extent the jurisdictional allegations set forth in Plaintiff's First Amended Complaint are undisputed, the Court must accept those facts as true and in the light most favorable to the Plaintiff when applying jurisdictional analysis. This fact alone is fatal to Defendants' argument, as was noted in the Court's prior Opinion and Order finding personal jurisdiction in this case. See Opinion and Order [D.E. 24], at 5-7 (discussing Magedson Affidavit and noting that it does not dispute allegations that Defendants published defamatory information about Plaintiff WIN, directed at Florida, and causing injury in Florida).

### III.   FLORIDA'S LONG ARM STATUTE

**Defendants Have Committed a Tortious Act within Florida Sufficient to Satisfy Florida's Long-Arm Jurisdiction**

In order for Defendants to fall within the ambit of Florida's long-arm statute, their acts must fall within one of the enumerated acts in Fla. Stat. § 48.193. Specifically, Florida's long-arm statute states, in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(b) committing a tortious act within this state…

Fla. Stat. § 48.193 (West 2003) (emphasis added).

"Florida courts subscribe to the rule that the tort of libel occurs wherever the offending material is circulated." Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716, 719 (Fla. 4th DCA 1998); citing Madara v. Hall, 916 F.2d 1510, 1515 (11th Cir. 1990) (finding jurisdiction over nonresident defendant for libel action on the basis that the libelous material was circulated in Florida, even though defendant was an individual and not the publisher of libelous information). Florida courts have consistently allowed personal jurisdiction over nonresident defendants in libel actions when alleged libelous material was circulated in Florida, especially when the libelous material was directed at a Florida entity and/or resident. Id. at 1515. Because Florida courts make no distinction between individuals and corporations when considering the personal jurisdiction issue in libel actions, the omission of Russ Whitney as a Plaintiff in this action should be irrelevant to the Court's jurisdictional analysis regarding WIN'S claims.

Neither physical presence in Florida nor the commission of a tort within this state is required to "commit a tortious act" for purposes of Florida's long-arm statute. Wendt v. Horowitz, 822 So.2d 1252 (Fla. 2002) (finding that telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under 48.193(1)(b) if the alleged cause of action arises from the communication). Moreover, Florida courts have uniformly found that they have an interest in adjudicating disputes arising from publication, dissemination or communication of defamatory information in Florida. See, e.g., Becker v. Hooshman, M.D., 841 So.2d 561 (Fla. 4th DCA 2003) (finding jurisdiction over nonresident moderator of an Internet chat room for posting numerous defamatory comments about a Florida resident, causing injury to a Florida resident); Silver

11

v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994) (mailing a letter into the State of Florida was sufficient).

The United States Supreme Court has created an "effects test" to determine whether a district court had jurisdiction over a nonresident defendant in a defamation action. In Calder v. Jones, the Court held that a California court could constitutionally exercise personal jurisdiction over a Florida citizen whose only material contact with California was to write a libelous story in Florida, directed at a California citizen, for a publication circulated in California, knowing that the "injury would be felt by [the Californian] in the State in which she lives and works." 465 U.S. 783, 104 S.Ct. 1482 (1984) (stating the article concerned the California activities of a California resident and the alleged harm, injury to reputation and career and emotional distress, would occur in California); see also ALS Scan, Inc. v. Digitial Service Consultants, Inc., 293 F.3d 707, 714 (4th Cir. 2002). This is exactly what has occurred in the instant case. Defendants, Xcentric Ventures and Badbusinessbureau.org, Arizona companies and Ed Magedson, an Arizona resident, published libelous information in Florida, directed at a corporation with its principal place of business in Florida, knowing that the bulk of the injury would be felt by Plaintiff in Florida where Plaintiff's business is based.

In ALS Scan, Inc., *supra,* the Fourth Circuit Court of Appeals adopted the Calder decision, holding that "specific jurisdiction in the Internet context may be based on an out-of-state person's Internet activity directed at [Florida] and causing injury that gives rise to a potential claim cognizable in [Florida]." Id. at 714 (finding that the court did not have

12

personal jurisdiction over the defendant since the defendant was only an Internet Service Provider ("ISP") and not the actual publisher of the infringing website).[4]

In this case, Plaintiff has met the requirements of Florida's long-arm statute, by alleging that Defendants create, facilitate and disseminate the publication of defamatory material in Florida, which is specifically directed at Plaintiff WIN, a company with its principal place of business in Lee County, Florida, and whose President, founder and namesake is also a well-known Florida resident.  The fact that Plaintiff may suffer damages in other states where it conducts operations is irrelevant, since the false and defamatory information contained in the "Rip Off Report" directly targets Plaintiff WIN'S business operations without geographic distinction, and those operations are based in the State of Florida.  Defendants are aware that the information published in the "Rip Off Report" is defamatory, and indeed, much of the content identifying WIN'S corporate headquarters in Cape Coral is authored by the Defendants themselves.  Clearly, taking Plaintiff's allegations as true, Defendants have committed a tortious act within Florida sufficient to satisfy personal jurisdiction pursuant to Florida's long-arm statute, irrespective of whether Russ Whitney remains a party to the case.

### IV.  THE EXERCISE OF PERSONAL JURISDICTION OVER DEFENDANTS WOULD NOT VIOLATE DUE PROCESS

In determining whether the assertion of personal jurisdiction over Defendants comports with due process, the court must first decide whether Defendants have established

---

[4] Although Defendants will undoubtedly argue otherwise on a 12(b)(6) or Rule 56 motion, the website operated by Defendants is not akin to an Internet search engine such as the defendant in ALS Scan, or a mere "passive website" under the Communications Decency Act. Defendants intentionally solicit Florida consumers to research their database, knowing that the information posted about Plaintiff is false, libelous and damaging to Plaintiff's reputation. In addition, because it is now known to Plaintiff that Defendants are the original source of much of the defamatory material posted on the website, and that the defamatory material was created by the Defendants as part of their illicit extortion scheme, Defendants should not be able to avail themselves of the protections of the Communications Decency Act.

"minimum contacts" with Florida. Venetian Salami, 554 So.2d at 500. Secondly, the court must decide whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." Madara v. Hall, 916 F.2d at 1514. "Due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he has certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).

As it did previously, the Court should once again find that, as a result of their purposeful contacts with the State of Florida, Defendants could reasonably anticipate being sued in Florida for their defamatory statements about Plaintiff WIN. See Opinion and Order [D.E. 24], at 9.

> **A.   Sufficient Minimum Contacts Exist to Satisfy Due Process Requirements**

The Florida Supreme Court in Venetian Salami, *supra,* held that the determination of minimum contacts depends upon the standards promulgated in Worldwide Volkswagen Corporation v. Woodson, 444 U.S. 286 (1980) and International Shoe Co. v. Washington, *supra*.

In Woodson, the Supreme Court held that the standard for determining whether sufficient minimum contacts exist to satisfy the due process requirement of the Fourteenth Amendment is whether the defendant's conduct in connection with the forum state is such that he should reasonably anticipate being haled into court in the forum state. 444 U.S. at 297. In International Shoe, the Court required that minimum contacts exist with the forum state so that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316.

Subsequently, in <u>Burger King Corporation v. Rudzewicz</u>, 471 U.S. 462 (1985), the Supreme Court held that a non-resident defendant must purposely establish a substantial connection with the forum state, and that random fortuitous or attenuated contacts would not suffice. <u>Id.</u> at 475. The Court must also consider the "quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, to determine whether the defendant's actions constitute 'purposeful availment.'" <u>Miot v. Kechijian</u>, 830 F.Supp. 1460, 1464 (S.D. Fla. 1993); <u>citing</u> <u>Hydrokinetics, Inc. v. Alaska Mechanical, Inc.</u>, 700 F.2d 1026, 1028 (5th Cir. 1983), <u>cert.</u> <u>denied</u> 466 U.S. 962 (1984).

The Supreme Court of Florida has also held that by committing a tort in Florida a nonresident establishes sufficient "minimum contacts" with Florida to justify the acquisition of *in personam* jurisdiction over him by personally serving him outside the state. <u>Godfrey v. Neumann</u>, 373 So.2d 920 (Fla. 1979). A tortious act subjecting a non-resident to jurisdiction can occur in Florida through the nonresident defendant's telephonic, *electronic* or written communications into Florida. <u>Wendt v. Horowitz</u>, 822 So.2d 1252 (Fla. 2002).

In <u>Bangor Punta Operations, Inc. v. Universal Marine Co.</u>, the Fifth Circuit Court of Appeals found sufficient contacts over an out of state Defendant even given their limited contacts to the State of Florida, noting:

> As <u>International Shoe</u> indicated and subsequent cases have held, a single tortious act can support in personam jurisdiction, consistent with the Constitution, subject to the limitation that "there (must) be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235 (1958). In the case at bar, an official of the defendant intended to and did send or cause to be sent a false advertisement and infringing products into

15

> Florida and by so doing clearly satisfied the above standards … We thus hold that the District Court properly had in personam jurisdiction over the foreign corporate defendant in this case based on the Florida long-arm statute.

543 F.2d 1107, 1110 (5th Cir. 1976)[5].

Applying the standards promulgated by Florida courts, Defendants' dissemination of defamatory information in the State of Florida is more than sufficient to establish minimum contacts with Florida to justify the exercise of personal jurisdiction, and it is reasonable for Defendants to anticipate that they may be sued in the State of Florida for publishing false and defamatory stories about Florida corporations. See Opinion and Order [D.E. 24], at 9 ("As a result of defendants' contacts with Florida, they should anticipate being sued for any defamatory statements published on their websites").

**B.   Even if the Minimum Contacts Test Were Not Met, Considerations of Fair Play and Substantial Justice Support Jurisdiction Over Defendants**

In the unlikely event that this Court should reverse its prior Opinion and Order and find that the "minimum contacts" test has somehow not been met by Plaintiff's First Amended Complaint, due process standards permit consideration of "fair play and substantial justice" in addition to minimum contacts. Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1034-1035 (11th Cir. 1991). These factors can at times serve to establish "the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Burger King Corp. v. Rudzewicz, 471 U.S. at 477. These factors include:

> [1] the burden on the defendant, [2] the forum State's

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

> interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental social policies.

<u>Sun Bank, N.A. v. E.F. Hutton & Co.</u>, 926 F.2d at 1035 (quoting <u>Burger King Corp. v. Rudzewicz</u>).

As discussed *supra*, Florida courts have uniformly found that they have an interest in adjudicating disputes arising from publication, dissemination or communication of defamatory information in Florida. <u>See</u>, e.g., <u>Becker v. Hooshman, M.D.</u>, 841 So.2d 561 (Fla. 4th DCA 2003); <u>Silver v. Levinson</u>, 648 So.2d 240 (Fla. 4th DCA 1994). Therefore, Florida has a special interest in the adjudication of this suit.

Furthermore, it is evident that the burden on Defendants in defending the suit in Florida is not as extreme, and pales when compared to the burden that would be imposed on Plaintiffs in pursuing this action in Arizona. By prosecuting this case in Florida, Plaintiff's interest in obtaining convenient and effective relief would be effectuated as a majority of the witnesses involved in this case are based within the State of Florida. Finally, Defendants' participation in the present suit would also further the interstate judicial system's interest in obtaining the most efficient resolution of controversies. Accordingly, considerations of fair play and substantial justice support this court's assertion of personal jurisdiction over Defendants.

## **CONCLUSION**

In sum, Defendants' Motion to Dismiss should be denied because the Defendants have the same connection to the State of Florida that supported the Court's previous finding of personal jurisdiction in this case. Because the same grounds for personal jurisdiction still

exist, and the omission of Russ Whitney as a named party has no effect on personal jurisdiction analysis regarding the claims of Plaintiff WIN, it is respectfully requested that Defendants' Motion to Dismiss Plaintiff's First Complaint for Lack of Personal Jurisdiction be **DENIED**.

        Respectfully submitted,

By: /s/ Christopher C. Sharp
Scott W. Rothstein, Esq.
FBN: 765880
Christopher C. Sharp, Esq.
FBN: 996858
ROTHSTEINROSENFELDT ADLER
**Counsel for Plaintiffs**
300 Las Olas Place, Suite 860
300 S.E. Second Street
Fort Lauderdale, Florida 33301
Tele: 954/522-3456
Fax: 954/527-8663

Dated: November 22, 2005    E-Mail: srothstein@rrdplaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, by mail, this 22nd day of November, 2005, to: Maria Crimi Speth, Esq., Jaburg & Wilk, P.C., Counsel for Defendants, 3200 North Central Avenue, Suite 2000, Phoenix, AZ 85012.

ROTHSTEIN ROSENFELDT ADLER

By: /s/ Christopher C. Sharp
Scott W. Rothstein, Esq.
Christopher C. Sharp, Esq.

H:\swrdocs\03-8471\Response to Motion to Dismissagc.doc