Whitney Information, et al v. Xcentric Ventures, et al                                                                    Doc. 72 Att. 1
Case 2:04-cv-00047-MMH-SPC   Document 72-2   Filed 03/16/2006   Page 1 of 13
Case 2:04-cv-00047-VMC-SPC   Document 69   Filed 02/15/2006   Page 1 of 13

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WHITNEY INFORMATION NETWORK, INC.;
a Colorado corporation,

        Plaintiff,

vs.                                      Case No.  2:04-cv-47-FtM-33SPC

XCENTRIC VENTURES, LLC, an Arizona
limited liability company;
BADBUSINESSBUREAU.ORG, an Arizona
limited liability company; and ED
MAGEDSON, an individual,

        Defendants.
_____

## ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction (Doc. # 58), filed on October 21, 2005.[1]  On November 22, 2005, Plaintiff filed its Memorandum of Law in Opposition to Defendants' Motion to Dismiss.[2] (Doc. # 62).  Upon review of the

---

[1] Defendants filed two identical motions to dismiss, which appear as # 57 and # 58 on the docket sheet.  Docket # 58 includes several attachments and appears to be the most complete version of the motion.  For this reason, and because counsel for Defendants has agreed that the two documents were otherwise identical, the Court considers docket # 58 only and directs the clerk to terminate docket # 57.

[2] Although docket # 62 was technically filed in response to docket # 57, the Court has already noted that docket # 57 is identical to docket # 58 except that docket # 58 contains several attachments and appears to be the most complete verison of the motion.  Because the motions were otherwise identical, the Court

1

motion to dismiss and the memorandum in opposition, the Court grants Defendants' motion.

## I. STANDARD OF REVIEW

In deciding a motion to dismiss, the Court "accept[s] the facts of the complaint as true and view[s] them in the light most favorable to the non-moving party." See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle it to relief." 75 Acres, LLC v. Miami-Dade County, Fla., 338 F.3d 1288, 1293 (11th Cir. 2003)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The plaintiff is not required by the Federal Rules of Civil Procedure to "set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must be sufficient to afford the defendant "fair notice of what the claim is and the grounds upon which it rests." United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003)(quoting Conley, 355 U.S. at 47).

---

considers docket # 62 as if it were filed in response to docket # 58.

## II. BACKGROUND

Whitney Information Network provides post-secondary educational products, services, and training for real estate investing, business development, financial investment, and asset protection real estate. (Doc. # 56 at ¶19). Plaintiff spends millions of dollars each year on infomercials and other advertising to promote its products and services. (Doc. # 56 at ¶ 21). Plaintiff owns the statutory and common law rights for "Russ Whitney," "Whitney," "Whitney Information Network," and "Whitney Education Group" (herein referred to as "Plaintiff's marks"). (Doc. # 56 at ¶ 23). The service mark applications for "Russ Whitney" and "Whitney" are pending in the United States Patent and Trademark Office. (Doc. # 56 at ¶ 24). Plaintiff's marks are generally known among the public and have developed secondary meaning. (Doc. # 56 at ¶26-28).

Plaintiff has a website to promote its products and services. (Doc. # 56 at ¶ 29). Consumers can access the website through any search engine by entering in any of Plaintiff's marks. (Doc. # 56 a ¶ 30). Plaintiff alleges that Defendants' website appears as a search result on various search engines when consumers enter Plaintiff's Marks, mistakenly diverting the consumer from Plaintiff's website. (Doc. # 56, ¶ 31).

Defendants publish the websites www.ripoffreport.com and www.ripoffrevenge.com. (Doc. # 56 at ¶¶ 32). The websites purport

3

to provide consumers with an outlet for reporting companies that "ripoff" consumers. (Doc. # 56 at ¶ 33). Plaintiff alleges that it became a target of an attempted extortion scheme when Defendants began posting false and slanderous "complaints" on www.ripoffreport.com. (Doc. # 56 at ¶¶ 34-35). Defendants encouraged "clients" to complain about companies such as Plaintiff's businesses and actively solicited those "clients" to submit complaints about any company that has allegedly "ripped" the consumer off. (Doc. # 56, ¶ 36).

Plaintiff alleges that Defendants actively, and with reckless disregard for the truth, select which complaints to publish on their website. (Doc. # 56 ¶ 36). Plaintiff alleges that Defendants often tailor and re-write the complaints, adding words such as "ripoff," "dishonest," and "scam," notwithstanding the nature of the complaint, after which Defendants post the complaint anonymously on its website. (Doc. # 56 at ¶ 39). Plaintiff also alleges that Defendants create fictional, false, and slanderous complaints and attribute them to individuals given false names or "anonymous" titles from fictional locations around the United States. (Doc. # 56 at ¶ 40).

Plaintiff claims that as part of their extortion scheme, Defendants use the contrived complaints to create the appearance of legitimacy and the multiple complaints are absorbed by search engines on the Internet. (Doc. # 56 at ¶ 41). As a result, the

4

defamatory material is viewed by a greater number of Plaintiff's customers and potential customers in attempt to damage Plaintiff's company and increase its susceptibility to Defendants' extortion scheme. (Doc. # 56 at ¶ 41). Part of Defendants' scheme is to refuse to post rebuttals and/or step up the campaign of targeting the company with additional complaints to silence the rebuttal. (Doc. # 56 at ¶ 42). If the targeted company persists in its rebuttal attempts, Defendants offer to let the company pay a "fee" to cease the publication of the defamatory material. (Doc. # 56 at ¶ 43). Plaintiff admits that Defendants never sought such a fee from it, but states that it would not have paid the fee if it had been given the chance. (Doc. # 56 at ¶ 43).

Consumers posting on the website www.ripoffreport.com can click on a link for www.ripoffrevenge.com and may purchase either a service or a do-it-yourself kit for getting their money back. (Doc. # 56 at ¶ 45). Defendants also solicit consumers for donations and sell advertisement space on their websites. (Doc. # 56 at ¶¶ 46-47).

According to Plaintiff, Defendants publish and make available for viewing more than a dozen false stories about Plaintiff, the content of which Plaintiff claims was created by Defendants. (Doc. # 56, ¶ 48). As consumers search for Plaintiff's products and services, they are directed to Defendants' website and thus subjected to the false and defamatory stories about Plaintiff.

5

(Doc. # 56, ¶ 49).

On September 8, 2004, this Court entered an Order (Doc. # 24) denying Defendants' motion to dismiss the original complaint for lack of personal jurisdiction. In that order, the Court found that Defendants were subject to Florida's long-arm statute because they committed a tortious act in Florida under section 48.193(1)(b), Florida Statutes. (Doc. # 24, pp. 5-9). As the basis for its ruling, the Court noted that the original complaint had alleged, and Defendants had not disputed, that Defendants are in the business of publishing infringing marks in Florida on its websites, which are directed at Florida and cause injury in Florida. (Id. at 5). Because the website allowed users to target Florida and the undisputed facts alleged that Defendants had gone beyond mere maintenance of a passive website, the Court concluded that Florida's long-arm statute was satisfied. (Id. at pp. 5-7). Furthermore, the Court found that the due process minimum contacts requirement was met because Defendants' activities-- including the maintenance of websites that allow consumers to target their search to Florida and contained comments that targeted a Florida resident, corporation, and community-- were "purposefully directed" at the state of Florida. (Id. at 9).

On July 14, 2005, this Court entered an Order (Doc. # 49) granting Defendants' motion to dismiss for failure to state a claim. The basis for the Court's ruling in that Order was that

6

service providers such as Defendants are immunized under the Communications Decency Act from liability for information developed by a third party that is published on the Internet. (Id. at pp. 6-7).[3] The Court denied Plaintiff's Motion for Reconsideration on August 3, 2005. (Doc. # 52).

On September 27, 2005, Plaintiff filed its Amended Complaint, which omitted the company's CEO as a Plaintiff and sought relief exclusively for Defendants' defamation of Plaintiff's business. (Doc. # 56, p. 2). The Amended Complaint contains new factual allegations and asserts that Defendants not only failed to verify the accuracy of the published complaints, but they "often tailor and re-write the complaints themselves, adding words such as 'ripoff,' 'dishonest,' and 'scam,' notwithstanding the nature of the complaint, after which Defendants would have the 'client' anonymously post the complaint on Defendants' website." (Doc. # 56, ¶ 39). The Amended Complaint also alleges that Defendants created fictional complaints against Plaintiff. (Id. at ¶ 40).

### III. ANALYSIS

The exercise of personal jurisdiction over a non-resident defendant is governed by a two-part analysis. First, the Court must determine whether Plaintiff has alleged facts sufficient to subject Defendants to Florida's long-arm statute. Future Tech.

---

[3] The Court's July 14, 2005 Order also dismissed three other claims, which were not re-asserted in the First Amended Complaint.

Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)(citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623 (11th Cir. 1996)). Second, once it has determined that the long-arm statute is satisfied, the Court must evaluate whether the exercise of personal jurisdiction over Defendants would violate the Constitution's requirement of due process. Id. Because this Court finds that the long-arm statue has not been satisfied, it does not reach the second prong of this analytical framework.

### A. Long-Arm Statute

Florida's long-arm statute states that a nonresident who commits a tortious act within the state subjects him or herself to the jurisdiction of the Florida court system. See Fla. Stat. § 48.193 (West 2003). Plaintiff argues that Defendants fell within the long-arm statute's scope when they committed a tortious act in Florida by authoring and posting false and defamatory information about Plaintiff on Defendants' website. (Doc. # 56, ¶¶ 36-55).

Plaintiff's allegations that Defendants authored the material in question first appeared in the First Amended Complaint, apparently in reaction to this Court's previous holding that Defendants were not the authors of the stories about Plaintiff. The Court's July 14, 2005 Order held that because Defendants were not authors of the information, they were immune under the Communications Decency Act, which provides that "[n]o provider or user of an interactive computer service shall be treated as the

8

publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (2005). Plaintiff's new allegations that Defendants were the authors of some of the statements on their website are essential to the survival of its argument in support of personal jurisdiction. After all, if Defendants did not author the information, then they are immune under the Communications Decency Act, did not commit a tortious act in the state of Florida, and the Court lacks personal jurisdiction over them.

Through affidavits, Defendants rebutted Plaintiff's allegations that Defendants had authored some of the complaints on the website. (Doc. # 58-5). The Declaration of Ben Smith states that a technical services company examined the IP address of everyone who has posted on the Rip-Off Report website since early 2003. (Doc. # 58-5, ¶¶ 1-4). An IP address identifies the computer from which the submission originated. (Id. at ¶ 5). There were three postings that did not have IP addresses that Smith could capture, but two of those postings contained what appear to be valid names, email addresses, mailing addresses, and telephone numbers. (Id. at ¶¶ 7, 9-11). The third posting did not provide a name, address, or telephone number and the email address provided was invalid; however, the same email address was used later and an IP address was captured for those rebuttals. (Id. at ¶ 10). Smith stated that for each of the reports and all associated rebuttals

9

listed in his Exhibit 1, he compared the IP address of the person who submitted the posting to the IP addresses of the computers used by Excentric Ventures and its agents, including Ed Magedson. (Id. at ¶ 12). Smith's affidavit concludes that

> [n]one of the IP addresses of any of the computers that posted any of the reports listed in Exhibit 1 or any rebuttal to any report listed in Exhibit 1 match the IP address of any of the computers used by Xcentric or its agents, including the computers used by anyone in my office, the mail server used by Xcentric, the remote access server used by Xcentric, the computers used by agents of Xcentric, and Ed Magedson's personal and work computers.

(Id. at ¶ 13).

A specific burden-shifting scheme applies for cases such as this one. As stated in Walt Disney Co. v. Nelson, 677 So. 2d 400 (Fla. 5th DCA 1996):

> The burden of demonstrating the applicability of § 48.193 may initially be met by pleading facts within a jurisdictional basis contained in the statute. If the plaintiff has pled a prima facie case for jurisdiction, a simple motion to dismiss for lack of jurisdiction must fail, as a motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading. If, however, the defendant supplements the motion with an affidavit contesting jurisdiction, then the burden returns to the plaintiff who must, by affidavit or other sworn statement, prove a sufficient jurisdictional basis.

Id. at 402; see also Future Tech. Today, Inc., 218 F.3d at 1249 (quoting Prentice v. Prentice Colour, Inc., 779 F. Supp. 578, 583 (M.D. Fla. 1991)(After plaintiff alleges sufficient facts supporting the exercise of personal jurisdiction under a long arm statute, "the burden shifts to the defendant to make a prima facie

10

showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.")).

In its Amended Complaint, Plaintiff made a prima facie case for jurisdiction; therefore, if Defendant had filed a simple motion to dismiss, the motion would have failed. However, Defendants supplemented their motion with affidavits contesting jurisdiction, which caused the burden to shift back to Plaintiff to prove "by affidavit or other sworn statement" a sufficient basis for jurisdiction. See Walt Disney Co., 677 So. 2d at 402. Plaintiff failed to provide any affidavit or sworn statement to support its claim that Defendants were the authors of the information on their website. Under the Eleventh Circuit's burden-shifting scheme, Plaintiff has failed to carry its burden.

In its motion, Plaintiff notes that in some circumstances the Court is required to hold an evidentiary hearing to resolve disputed facts if they are essential to the jurisdictional determination. (Doc. # 62, p. 4). In so arguing, Plaintiff cites Venetian Salami, a Florida Supreme Court case involving a jurisdictional dispute. Venetian Salami Co. v. Parthenais, 554 So. 2d 499 (Fla. 1989). However, Venetian Salami does not support Plaintiff's proposition in this case because it held that a limited

evidentiary hearing is necessary only if affidavits filed by Plaintiff and Defendants cannot be harmonized. Id. at 503. There is no need for an evidentiary hearing when, as is the case here, only the Defendants have filed affidavits. The pertinent part of Venetian Salami states that a defendant should file affidavits if it wishes to contest jurisdictional allegations; after the defendant files its affidavits, the burden shifts to the plaintiff to prove through its own affidavits the factual basis upon which the Court has jurisdiction. Id. Only then, when both parties have filed affidavits that cannot be harmonized, must the trial court hold the limited evidentiary hearing to determine the jurisdiction issue. Id. Because Plaintiff has not filed affidavits, Defendants affidavits are not controverted and no evidentiary hearing is necessary.

Because Defendants have filed affidavits controverting Plaintiff's jurisdictional allegations and Plaintiff has failed to carry its burden of proving that Defendants committed a tortious act in the state of Florida, the Defendants' motion to dismiss for lack of personal jurisdiction must be granted. Because Plaintiff was unable to prove that the requirements of the long-arm statute were met, the Court declines to engage in a due process analysis.

## IV. CONCLUSION

Plaintiff has failed to prove facts sufficient to support its claim that Florida's long-arm statute applies to the Defendants'

actions in this case. Because the exercise of personal jurisdiction is proper in this case only if the long-arm statute applies, Defendants' Motion to Dismiss is GRANTED.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

(2) This matter is dismissed with prejudice.

(3) The Clerk is directed to enter judgment accordingly and close the file. The Clerk is further directed to terminate all previously scheduled deadlines and pending motions.

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this <u>15th</u> day of February, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

13