# United States Court of Appeals
For the Eleventh Circuit

No. 06-11888

District Court Docket No.
04-00047-CV-FTM-29-SPC

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Aug 1, 2006

THOMAS K. KAHN
CLERK

WHITNEY INFORMATION NETWORK, INC.,
a Colorado corporation,

Plaintiff-Appellant,

versus

XCENTRIC VENTURES, LLC,
an Arizona limited liability company,
BADBUSINESSBUREAU.ORG,
an Arizona limited liabiity company,
ED MAGEDSON, an individual,

Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

Appeal from the United States District Court
for the Middle District of Florida

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
AUG 3 0 2006
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered: August 1, 2006
For the Court: Thomas K. Kahn, Clerk
By: Gilman, Nancy

2006 SEP -1 PM 12:58    FILED

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
                                FILED
                        U.S. COURT OF APPEALS
                          ELEVENTH CIRCUIT
                             AUG 1, 2006
                          THOMAS K. KAHN
                               CLERK
```

No. 06-11888
Non-Argument Calendar

D. C. Docket No. 04-00047-CV-FTM-29-SPC

WHITNEY INFORMATION NETWORK, INC.,
a Colorado corporation,

                                                              Plaintiff-Appellant,

versus

XCENTRIC VENTURES, LLC,
an Arizona limited liability company,
BADBUSINESSBUREAU.ORG,
an Arizona limited liabiity company,
ED MAGEDSON, an individual,

                                                               Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(August 1, 2006)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Whitney Information Network, Inc. ("Whitney") appeals from the district court's order granting Defendants Xcentric Venture's ("Xcentric"), badbusinessbureau.org's, and Ed Magedson's ("Magedson") combined motion to dismiss for lack of personal jurisdiction. We vacate and remand for further proceedings.

## I. BACKGROUND

Whitney states that it provides "post-secondary educational and training products and services in the areas of real estate investing, business development, financial investment and asset protection real estate to students world-wide." Among other things, Whitney conducts monthly real estate training programs and advertises its services through infomercials and on various websites. Whitney also purports to own statutory and common law rights in various marks that are used in connection with its educational and training services. When these marks are entered into an Internet search engine, Whitney states, one of the search results that appears is a website operated by Defendants.

Defendants operate the websites "www.ripoffreport.com" and "ripoffrevenge.com," and allegedly "hold themselves out to the public as a 'worldwide consumer reporting website and publication, by consumers for

consumers' to file and document consumer complaints about 'companies or individuals who rip off consumers.'" According to Whitney, Defendants solicit consumers to submit complaints about any company that has "ripped" the consumers off, and Defendants then choose to publish certain of these complaints on their website "www.ripoffreport.com," thereby implying that the companies named in the complaints are "ripping off" consumers. Whitney contends that Defendants do not attempt to verify consumer complaints for accuracy, and seek to "extort" money from companies complained about on Defendants' website by offering to cease publication of the complaints in exchange for a fee.

Complaining that Defendants's use of its marks was causing consumer confusion and harming its reputation, Whitney (along with its CEO Russ Whitney) sued Defendants in federal district court, asserting claims for violations of the Lanham Act, 15 U.S.C. § 1051 et seq., common law trademark infringement, and defamation per se of a business reputation. Defendants moved to dismiss for lack of personal jurisdiction, arguing that their activities did not satisfy Florida's long-arm statute, and that the exercise of jurisdiction would offend due process. The district court concluded that the undisputed facts alleged in the complaint, including Defendants' continued publication of infringing marks in Florida on their websites, satisfied Florida's long-arm statute, and that the exercise of personal

jurisdiction over Defendants would not offend due process. *See Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 347 F. Supp. 2d 1242, 1244-46 (M.D. Fla. 2004). Accordingly, the court denied the motion to dismiss. *Id.* at 1246.

The case was then reassigned to a different district judge and Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that the complaint failed to state a claim under the Lanham Act or for common law trademark infringement, and that the defamation claim was barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 223 et seq. The district court agreed and dismissed the complaint without prejudice. With respect to the defamation claim, the court found that, based on the allegations of the complaint, Defendants did not author the messages located on their website, but merely published the comments of third-party consumers who felt defrauded. As a result, the court explained, Defendants were immune from liability under the CDA because "§ 230(c)(1) immunizes a service provider from liability for information developed by a third party that is published on the Internet." *See Batzel v. Smith*, 333 F.3d 1018, 1026-34 (9th Cir. 2003); *Ben Ezra, Weinstein, & Co., Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997).

Plaintiffs filed a motion for reconsideration and for an enlargement of time to file an amended complaint, noting that the district court's dismissal had been

without prejudice. The court denied reconsideration as to its previous order, but granted Plaintiffs time to file an amended complaint. The amended complaint contained significant changes, naming Whitney as the sole plaintiff, eliminating the Lanham Act and common law trademark infringement claims, and adding new allegations in support of the defamation claim. These allegations claimed, *inter alia*, that Defendants tailored and rewrote consumer complaints submitted by third parties to make it appear that, regardless of the true nature of the complaint, the company complained of (i.e., Whitney) was "ripping off" customers. *See, e.g.*, Pl.'s Am. Compl. ¶¶ 38-39. This tailoring and rewriting allegedly included the addition of words such as "ripoff," "dishonest," and "scam." *See id.* Furthermore, Whitney claimed that Defendants knowingly fabricated entire consumer complaints, "which were then attributed to people with false names or 'anonymous' titles from fictional locations around the United States . . . and were false and slanderous." *Id.* ¶ 40.

Defendants responded by moving to dismiss the amended complaint for lack of personal jurisdiction, claiming that the grounds previously relied upon by the district court for finding jurisdiction no longer existed. Whitney's defamation claim, Defendants asserted, "is brought by a Colorado corporation that does business all over the country and did not suffer the brunt of the harm in Florida."

Furthermore, Defendants argued, Florida's long-arm statute was not satisfied because they had committed no tort, for the CDA "prohibits publisher liability for defamation where the claim is against an interactive computer service." In support of this argument, Defendants submitted the declarations of Defendant Magedson and Ben Smith, who provided technology services to Defendant Xcentric. Magedson declared that neither he nor any agent of Xcentric "authored the statements that are the subject of this lawsuit," while Smith declared that the IP addresses[1] of those computers that posted the complaints or rebuttals at issue did not match the IP address of any computer used by Xcentric or its agents. Whitney responded by arguing, *inter alia*, that Magedson's declaration was insufficient to controvert all jurisdictional allegations of the amended complaint, and that Smith's declaration reached the merits of Whitney's claim, thereby "making it inappropriate on a motion to dismiss under Rule 12(b)(2), and more suited to a summary judgment motion . . . ."

The district court agreed that Whitney had not satisfied the requirements of Florida's long-arm statute, and granted the motion to dismiss on that basis. Given the protection afforded Defendants under the CDA, the court stated, "[Whitney's] new allegations that Defendants were the authors of some of the statements on

---

[1] Smith explained in his declaration that "[a]n IP address is a unique address that identifies the computer that the submission came from."

6

their website are essential to the survival of its argument in support of personal jurisdiction." If Defendants did not "author" the statements, the court reasoned, "then they are immune under the [CDA], did not commit a tortious act in the state of Florida, and the Court lacks personal jurisdiction over them." The court agreed that the allegations of Whitney's amended complaint made a prima facie case for jurisdiction, but found that Defendants' declarations–particularly that of Ben Smith–caused the burden to shift back to Whitney to prove jurisdiction by means of an affidavit or other sworn statement. Whitney had produced no such materials, the court explained, and therefore failed to carry its burden. Having concluded that Whitney did not satisfy the requirements of Florida's long-arm statute, the court declined to perform a due process analysis and dismissed the amended complaint with prejudice. Whitney now appeals that dismissal.

## II. STANDARD OF REVIEW

We review a dismissal for lack of personal jurisdiction de novo. *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 916 (11th Cir. 1989). "When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). "A prima facie case is established if the

plaintiff presents enough evidence to withstand a motion for a directed verdict." *Id.*

"[We] must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). If a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam). When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, we must construe all reasonable inferences in favor of the plaintiff. *Meier*, 288 F.3d at 1269; *Madara*, 916 F.2d at 1514.

### III. DISCUSSION

The determination of whether a court has personal jurisdiction over a given defendant involves a two-part inquiry. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). First, the court determines "whether the

exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Id.* Second, the court must examine whether the exercise of personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause, "which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotes omitted).

Here, the sole issue raised on appeal is whether the district court erred in determining that Whitney failed to satisfy the requirements of Florida's long-arm statute. The only portion of the long-arm statute upon which Whitney relied was Fla. Stat. § 48.193(1)(b), which "provides for the assertion of jurisdiction over an out-of-state defendant who commits a tortious act in Florida." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005).[2] We must construe the provisions of the long-arm statute as the Florida Supreme Court

---

[2] The statute states in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

. . .

(b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(b).

would. *Id.* at 1166-67. "'[C]ommitting a tortious act' in Florida under section 48.193(1)(b) can occur through the non-resident defendant's telephonic, electronic, or written communications into Florida," so long as the plaintiff's cause of action arises from the communications. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (quoting Fla. Stat. § 48.193(1)(b)). The district court found–and Defendants do not dispute on appeal–that the allegations of Whitney's amended complaint, if taken as true, satisfied the requirements of § 48.193(1)(b) as to each of the Defendants. This was so, the court explained, because the amended complaint, unlike the original complaint, alleged that Defendants "were the authors of some of the statements on their website," not merely publishers of third-party statements. Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by *another* information content provider." 47 U.S.C. § 230(c)(1) (emphasis added).[3] "No

---

[3] The CDA defines the term "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). Whitney does not dispute on appeal that Defendants Xcentric or badbusinessbureau.org qualified as a "provider or user of an interactive computer service" under § 230(c)(1). *Cf. Batzel*, 333 F.3d at 1030 ("There is . . . no need here to decide whether a listserv or website itself fits the broad statutory definition of 'interactive computer service,' because the language of § 230(c)(1) confers immunity not just on 'providers' of such services, but also on 'users' of such services."). Whitney does contend, however, that Defendant Magedson could not have qualified for CDA immunity because he "submitted no evidence to establish himself as an 'interactive computer service.'" Although we need not address this argument because Whitney raises it for the first time in its reply brief, *see Bauknight v. Monroe County, Fla.*, 446 F.3d 1327, 1329 n.2 (11th Cir. 2006), we note that § 230(c)(1) requires only that Magedson have been a

10

cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). By alleging that Defendants authored some of the statements posted on the website, Whitney indicated that Defendants were themselves an "information content provider" and thus not necessarily immune under the CDA. The court further determined, however, that the Smith and Magedson declarations controverted these critical allegations about authorship, and thereby shifted the burden back to Whitney "to substantiate [its] jurisdictional allegations by affidavits or other competent proof, and not merely [to] reiterate the factual allegations in the complaint." *Future Tech. Today*, 218 F.3d at 1249 (internal quotes omitted). In producing no such evidence, the court held, Whitney failed to carry this burden and Defendants were therefore entitled to dismissal.

A defendant's filing of an affidavit contesting jurisdictional allegations shifts the burden back to the plaintiff (to support those allegations with evidence) only when the defendant's affidavit is legally sufficient to effect the shift. *See*

---

"provider or user" of an interactive computer service, not the service itself.

11

*Acquadro v. Bergeron*, 851 So. 2d 665, 671 (Fla. 2003); *Horizon Aggressive Growth*, 421 F.3d at 1168-69. The mere assertion of a legal conclusion, for example, is insufficient to shift the burden back to the plaintiff. *See, e.g., Acquadro*, 851 So. 2d at 672 (explaining that defendant's statement in her affidavit that she "did not make defamatory statements" about the plaintiff was insufficient to shift the burden back to plaintiff); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (per curiam) (explaining that statements which, though presented in the form of factual declarations, are in substance legal conclusions do not "trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction"). On appeal, Whitney contends that Defendants' declarations were insufficient to shift the burden of proof because those declarations contained conclusory denials and failed to contest all relevant allegations of the amended complaint. Defendants maintain that the declarations adequately disputed any claim that they "authored" the complaints or rebuttals about Whitney on their website. As Whitney produced no evidence to the contrary, Defendants argue, they were clearly entitled to CDA immunity and thus committed no tort for purposes of § 48.193(1)(b). Having reviewed the declarations, we disagree that they were adequate to shift the burden back to Whitney. Thus, it is not clear that Defendants were entitled to CDA immunity.

Magedson states that agents of Xcentric "do not choose which stories to post," that they "review the reports before posting solely to redact profanity, obscenity and personal contact information," and that they "are instructed never to add content to a report." While these statements may describe Xcentric's review practices and what its agents are generally instructed to do, the statements make no representation about what actually occurred with respect to the website postings about Whitney. Magedson also declares summarily that neither he nor any agent of Xcentric "authored the statements that are the subject of this lawsuit," but he does not explain how he has knowledge as to the actions of Xcentric's agents. Even if this conclusory denial can be said to challenge Whitney's allegation that Defendants fabricated some of the consumer complaints posted on their website, it does not controvert Whitney's allegations that Defendants tailored complaints submitted by other individuals, adding words such as "ripoff," "dishonest," or "scam." Indeed, Magedson's own representation about Xcentric's policy regarding redactions implies that Xcentric's agents had the power to edit consumer complaints before they were posted.[4]

Defendants contend that Magedson's assertions about authorship are supported by the Smith declaration, because Smith found that none of the captured

---

[4] Magedson also conceded that he "do[es] not personally review all of the postings that are made on Rip-off Report before they are posted."

13

IP addresses of computers from which reports were posted about Whitney on Defendants' website matched the IP address of "any computer used by Xcentric or its agents . . . ." Smith further states that he did not recognize the contact information provided by any of the persons who submitted consumer complaints about Whitney as belonging to agents of Xcentric. The implication is that Defendants did not fabricate and post any of the consumer complaints at issue, because if they had done so the IP addresses of their computers would have appeared during Smith's examination, or he would have recognized their contact information. However, Smith admits that he was unable to obtain IP addresses corresponding to three of the consumer complaints at issue. Furthermore, it is not clear that the IP addresses of computers used by Xcentric's agents would have even appeared during Smith's search if those computers were used merely to revise consumer complaints submitted by others, rather than to submit a fabricated complaint.[5]

As indicated above, the CDA defines an "information content provider" as "any person or entity that is responsible, in whole *or in part*, for the creation or

---

[5] Whitney suggests that Xcentric's agents might have used non-work computers and assumed names as a subterfuge for submitting fabricated complaints, such as by logging on a computer at an internet cafe under an assumed name. Whitney did not allege this in its amended complaint, however, and it is not a defect in Defendants' evidence, but rather mere speculation on the part of Whitney that we give little weight.

14

development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added).  For the reasons stated, Defendants' declarations do not adequately rebut the allegations of the amended complaint insofar as it pleads Defendants' involvement in creating or developing the alleged defamatory content of consumer complaints posted on their website.  Thus, whether Defendants were entitled to CDA immunity remained in question, as did the issue of whether their conduct was tortious.  *Cf. Hy Cite Corp. v. badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1148-49 (D. Ariz. 2005) (declining to grant defendants' motion to dismiss based on CDA immunity because plaintiffs alleged that defendants added editorial comments, titles, and original content to third-party complaints posted on defendants' website).  The district court therefore erred when it shifted the burden of proof to Whitney based on Defendants' declarations and then granted Defendants' motion to dismiss based on Whitney's failure to substantiate its allegations with evidence.  Taking the allegations of the amended complaint as true to the extent they were not controverted by Defendants' declarations, and construing all reasonable inferences in favor of Whitney, *see Madara*, 916 F.2d at 1514, we conclude that Whitney would have survived a motion for directed verdict on whether it satisfied § 48.193(1)(b) of Florida's long-arm statute.  *See Carruthers v. BSA Adver., Inc.*,

357 F.3d 1213, 1215 (11th Cir. 2004) (per curiam) ("A directed verdict is only proper when the facts and inferences so overwhelmingly favor the verdict that no reasonable juror could reach a contrary decision.") (citation omitted). As the district court declined to address whether the exercise of personal jurisdiction over Defendants would violate due process (an issue not briefed on appeal), we vacate the district court's judgment and remand for further proceedings.

## IV. CONCLUSION

The district court erred in concluding that Whitney failed to satisfy § 48.193(1)(b) of Florida's long-arm statute with respect to Defendants, and thus erred in dismissing the amended complaint for lack of personal jurisdiction on that basis. Whether the exercise of personal jurisdiction over Defendants would violate due process, however, is yet to be resolved. Accordingly, we vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia