UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Whitney Information Network, Inc.,              Case No. 2:04-CV-47-FTM-UA-SPC

                        Plaintiff,

v.                                             **MEMORANDUM AND ORDER**

Xcentric Ventures, LLC;
Badbusinessbureau.org; and Ed
Magedson,

                        Defendants.

_____

      This matter is before the Court[1] on remand from the Eleventh Circuit Court of Appeals

for consideration of Defendants' Motion to Dismiss, specifically, whether the exercise of

personal jurisdiction over Defendants comports with the due process requirements of the

Fourteenth Amendment.  For the reasons that follow, the Court finds that due process is

satisfied and therefore denies the Motion.

**BACKGROUND**

      This action concerns Defendants' publication of allegedly defamatory material about

Plaintiff on their website.  Plaintiff is a Florida corporation that provides educational and

training services and products.  Defendant Xcentric Ventures is an Arizona limited liability

company.  Defendant Badbusinessbureau.org previously was an Arizona corporation, but it

has been administratively dissolved.  Defendant Edward Magedson is an Arizona resident

_____

      [1]Pursuant to 28 U.S.C. § 294(d), the undersigned has been assigned to this case to
address the pending Motion.

Dockets.Justia.com

who is "personally familiar with the policies and the practices" of the two Defendant business entities. (Magedson Aff. ¶ 6.) According to the Amended Complaint, Magedson is a principal of Xcentric.

Defendants Xcentric and Magedson operate the website www.ripoffreport.com. They portray the website as providing a consumer-reporting and information-sharing service. Xcentric agents gather complaints from consumers, review them, and publish certain complaints on the website. Plaintiff characterizes the reports as false and libelous and accuses Defendants of failing to verify the complaints for accuracy before disseminating them to the public. Plaintiff also claims that Defendants insert language such as "ripoff," "dishonest," and "scam" into the reports. (Am. Compl. ¶ 39.)

Defendants have published twenty-four consumer reports about Plaintiff on www.ripoffreport.com, four of which were made by Florida consumers. If consumers search for Plaintiff's products and services on the Internet, they will be directed to Defendants' website, which subjects the consumers to the allegedly defamatory reports. One specific instance of alleged defamation is recounted in the Amended Complaint; Plaintiff claims that Defendants published false information by accusing Plaintiff of lying about its product and by using the terms "ripoff," "scam," "dishonest," and "fraudulent" to describe Plaintiff. Plaintiff contends that Defendants have caused substantial and irreparable harm to its business and reputation in Florida by diverting sales and damaging its goodwill. Finally, Plaintiff contends that the bulk of damages and injury to it occurred in Florida.

Other minor connections to Florida exist as well. Defendants solicit donations from

the users of its website, and there is at least one recorded donation from a Florida resident. The website also allows users to target their search to Florida companies.

Defendants filed their first motion to dismiss in this case on June 28, 2004, arguing that the court lacked personal jurisdiction over them. The court denied the motion, finding that Defendants' activities satisfied the Florida long-arm statute and that Defendants had sufficient contacts with Florida so as to satisfy due process. Two weeks later, Defendants filed a second motion to dismiss, this time based on Plaintiff's alleged failure to state a claim on which relief could be granted. The court granted the motion without prejudice and permitted Plaintiff to file an amended complaint, which it did on September 27, 2005. The Amended Complaint repeats the bases for personal jurisdiction that were alleged in the original complaint and adds further allegations.

Defendants brought a third motion to dismiss on October 21, 2005, again based on personal jurisdiction. The court granted the motion and dismissed the case with prejudice, finding that Plaintiff had failed to present evidence that Defendants committed a tortious act in Florida and therefore had not proven the applicability of Florida's long-arm statute to Defendants. The court did not reach Defendants' due process argument. Plaintiff appealed to the Eleventh Circuit, which vacated the court's decision and remanded for a determination of whether the exercise of personal jurisdiction would offend due process. Whitney Info. Network, Inc. v. Xcentric Ventures, LLC, 199 Fed. App'x 738, 744 (11th Cir. 2006).

**DISCUSSION**

**A.     Standard of Review**

To defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendants. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). A plaintiff establishes a prima facie case by presenting enough evidence to withstand a motion for directed verdict. Id. The court must accept as true the factual allegations in the complaint to the extent they are unrefuted by the defendant's affidavits. Id. If the parties' evidence conflicts, the court must grant the plaintiff the benefit of all reasonable inferences. Id.

**B.     Merits**

In commencing this analysis, the Court is mindful that the Honorable John E. Steele found personal jurisdiction over the Defendants on September 8, 2004, when he denied their first motion to dismiss. However, because the instant motion involves an amended pleading whereas the first motion to dismiss related to the original complaint, the Court will engage in its own due process analysis, incorporating Judge Steele's prior findings where appropriate.

To determine whether personal jurisdiction over a nonresident defendant exists, the Court engages in a two-part analysis. Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 855 (11th Cir. 1990). First, the court must decide whether jurisdiction is proper under the state's long-arm statute. Id. This question has already been answered in this case. Thus, the Court turns to the second part of the analysis: whether Defendants have

4

sufficient minimum contacts with Florida to satisfy the Due Process Clause of the Fourteenth Amendment, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted).  Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citation omitted).

A determination of whether due process is satisfied requires its own two-part analysis. First, the Court must decide whether Defendants have minimum contacts with Florida. Second, the Court must determine whether the exercise of personal jurisdiction would offend the ideals of fair play and substantial justice.  Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir. 1988).

The factual allegations in the Amended Complaint, as set forth fully above, are essentially these.  Each Defendant is subject to jurisdiction because it operates, conducts, engages in, or carries on a business within Florida through its Internet website.  Each Defendant committed a tort in Florida by intentionally publishing defamatory information

on its website about Plaintiff, and each Defendant directed the tort at Florida. This activity caused substantial injury and harm to Plaintiff's business and reputation, the majority of which occurred in Florida.

Defendants' evidence only summarily and generally controverts the allegation that each Defendant is subject to jurisdiction by operating or engaging in a business in Florida through its Internet website. Defendants have no evidence that they did not publish information in Florida via their website; that they did not direct activities at Florida; that they did not publish defamatory information about Plaintiff, a Florida company; or that they have not caused injury to Plaintiff in Florida. As the Eleventh Circuit noted, Defendants' "statements make no representation about what actually occurred with respect to the website postings about" Plaintiff. Whitney Info. Network, 199 Fed. App'x at 743. Even more damaging to Defendants' evidence is the Eleventh Circuit's pronouncement that "Defendants' declarations do not adequately rebut the allegations of the amended complaint insofar as it pleads Defendants' involvement in creating or developing the alleged defamatory content of consumer complaints posted on their website." Id. at 744. Although the court was viewing the declarations in the context of another claim, its assessment of the evidence is nevertheless applicable to the issue at hand. Finally, it is significant that Magedson has not explained how he has knowledge of Xcentric's agents or their activities. Id.

The Court finds that Plaintiff has sustained its burden to show that Defendants' dissemination of allegedly defamatory information in Florida is sufficient to establish

minimum contacts with the forum. Defendants' activities were purposefully directed at Florida. Their website publishes information on Florida companies, including Plaintiff, and permits consumers to target or search companies in a specific state, such as Florida. Defendants solicit donations from Florida consumers, and Defendants have accepted at least one donation from a Florida resident. Published reports from Florida residents and others accuse Plaintiff of scamming, ripping-off, and treating consumers fraudulently. According to Plaintiff's unrebutted allegations, the published statements caused substantial harm to its business and reputation, the bulk of which occurred in Florida. Thus, Defendants should have anticipated being haled into court here, and its contacts with Florida are not random, attenuated, or the result of another person's unilateral action.

As to the second step of the due process analysis, the Court finds that the exercise of personal jurisdiction over Defendants does not offend the ideals of fair play and substantial justice. Florida has an interest in resolving disputes arising from the publication or dissemination of defamatory information in Florida or about a Florida company. Many of the witnesses are located in Florida. Defendants have demonstrated no inordinate burden to litigating in Florida, and indeed, they have done so adeptly for three years.

**CONCLUSION**

The exercise of personal jurisdiction over Defendants comports with the due process requirements of the Fourteenth Amendment.  Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Docket No. 57) is **DENIED**.


Dated: February 23, 2007

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge
