## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

Case No. 2:04-cv-47-FtM-33 SPC

WHITNEY INFORMATION
NETWORK, INC., a Colorado corporation,

      Plaintiff,

v.

XCENTRIC VENTURES, LLC., an
Arizona limited liability company;
BADBUSINESSBUREAU.ORG, an
Arizona limited liability company; and
ED MAGEDSON, an individual,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS' AMENDED MOTION FOR PROTECTIVE ORDER

Plaintiff, WHITNEY INFORMATION NETWORK, INC. ("WIN"), by and through its undersigned counsel, files this, its Response to Defendants' Amended Motion for Protective Order, and states as follows:

1. On or about January 22, 2004, Plaintiffs filed a Complaint against Defendants, for: I) Federal Trademark Infringement; II) False Designation of Origin, False Description and False Representation under 15 U.S.C. § 1125(a); III) Common Law Trademark Infringement; and IV) Defamation per se of Business Reputation

2. On June 28, 2004, Defendants filed their first Motions to Dismiss for lack of personal jurisdiction. The Motion was denied.

1

3. Subsequently, Defendants filed their Second Motion to Dismiss, arguing Plaintiff failed to state a cause of action, which was granted by this Court on September 27, 2005. The action was dismissed, without prejudice.

4. An Amended Complaint was subsequently filed, and Defendants filed a third Motion to Dismiss on October 21, 2005, again alleging lack of personal jurisdiction.

5. This Court granted the Motion and dismissed the above styled action. Plaintiff appealed the dismissal with the Eleventh Circuit Court of Appeals.

6. By Order entered November 13, 2006, this Court, pursuant to the Mandate of the Eleventh Circuit Court of Appeals, issued August 30, 2006, vacated its prior order dismissing Plaintiff's Amended Complaint [Docket # 69] and reopened the case for further proceedings. This Order further directed the Clerk to reopen Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction [Docket #58] so that this Court could consider the issue of whether the exercise of personal jurisdiction over Defendants would violate due process, which was not addressed by the Eleventh Circuit on appeal. Finally, this Order established the following pretrial deadlines: Joint Final Pretrial Statement due March 16, 2007; Final Pretrial Conference to be held March 26, 2007 at 9:00 a.m. before a judge who was not yet assigned to the case; and trial term to commence April 2, 2007.

7. On February 23, 3007, this Court denied the Motion to Dismiss for Lack of Subject Matter Jurisdiction.

8. On February 16, 2007, Plaintiff served a Subpoena on Christopher J. Whitelock, Esq., requesting the non-privileged litigation file his firm maintained in a

2

former lawsuit against Defendants. Included within the litigation file was Defendant, Magedson's, videotaped deposition.

9. On February 23, 2007, Defendants filed a Motion for Protective Order and to Quash Subpoena.

10. On February 23, 2007, this Court entered an Order directing Defendants to file an Amended Motion for Protective Order.

11. On February 28, 2007, Defendants filed their Amended Motion for Protective Order and to Quash Subpoena. In their Amended Motion, Defendants contend that they did not receive the Subpoena. Further, Defendants argue that, although there is no evidence whatsoever that Plaintiff plans on utilizing the videotaped deposition of Magedson for an improper purpose, it should not be produced by the third party.

12. Plaintiff is not in possession of Magedson's deposition transcript, nor is it in possession of the videotaped deposition. Review of the videotaped deposition would assist Plaintiff in assessing the demeanor and mannerisms of Magedson, and would further help determine whether or not Mr. Magedson would make a good witness. Viewing one's testimony, as opposed to merely reading a transcript, is invaluable in making certain determinations.

13. As to the issue of service of the Subpoena, it is the ordinary practice of the undersigned law firm to always mail a Subpoena to opposing counsel, pursuant to Rule 45, Fed.R.Civ.P, contemporaneously with the service of the Subpoena. Due to the size of the undersigned law firm, twenty seven (27) attorneys and the massive amount of mail that is sent each day, the assistant responsible for mailing the Subpoena to opposing counsel cannot aver to the fact that it was mailed, however, it is her ordinary practice to

mail a Subpoena to opposing counsel contemporaneously with serving the Subpoena. If the fault lies with undersigned law firm's failure to mail the Subpoena to Defendants, and not Defendants' misfiling, problems with U.S. Mail, etc., then the failure to mail the Subpoena to Defendants was completely unintentional. Although it is admittedly impossible for Defendants to make a showing that the Subpoena was not mailed, other than Defendants' representation that they did not receive the Subpoena, there is no evidence whatsoever that Plaintiff did anything improper.

14. Nonetheless, Defendants were given notice of the Subpoena and have had sufficient time to assert their objections. Accordingly, Defendants have not been prejudiced by the purported failure to serve them, and as such, should not factor into the determination with regards to the production of the information. Should this Court determine that the failure to provide the Subpoena to Defendants result in the granting of Defendants' Motion for Protective Order and to Quash Subpoena, then Plaintiff will serve an identical Subpoena, and everyone will end up in the same place. Such a result would undoubtedly not promote judicial economy. Further, as this action is set for trial, pending a Motion for Continuance, commencing on April 2, 2007, time is of the essence with regards to issues pertaining to discovery.

15. As to Defendants' substantive arguments, it appears that Defendants' only concern centers around the videotaped deposition of Magedson. Defendants contend that should Plaintiff receive the videotape, somehow there is a possibility of it being utilized to harass Magedson, be edited, altered and manipulated to create slanted and false impressions of Magedson, and would otherwise result in the annoyance, embarrassment and oppression of Magedson. Defendants concede that they have no evidence,

4

whatsoever, that Plaintiff would commit these actions, only pointing to other incidents, unrelated to any videotaped occurrences, where other persons unrelated to Plaintiff took steps to attack Magedson.

16. It should be noted that Attorney Whitelock has not objected to producing the documentation.

17. As such, Defendants' Motion for Protective Order should be denied, and the third party production should proceed.

18. It should be noted that the footnote contained on page 3, denoting that counsel for Plaintiff Robert Buschel "refused to return the telephone call of the undersigned counsel or to otherwise respond to the telecopy sent by the undersigned counsel objecting to the Subpoena", is a complete misrepresentation of the facts with regards to the resolution of this motion. This is evidenced by the fact that Defendants reference conversations with Mr. Buschel at page 7 of their Amended Motion, wherein "Plaintiffs also refused to stipulate to a protective order limiting the use of the video deposition…" Motion at 7. Further, it is undisputed that Mr. Buschel did in fact discuss the issues with Defendants' counsel.

## MEMORANDUM OF LAW

### A.   Initial Facts

Plaintiff, WHITNEY INFORMATION NETWORK, was created in 1996 by its CEO, RUSS WHITNEY, to provide post-secondary educational and training products and services in the areas of real estate investing, business development, financial investment and asset protection real estate to students world-wide. Plaintiff conducts approximately 150 real estate free preview training programs per month with

approximately 24,000 new students registered each month. Furthermore, Plaintiff spends millions of dollars each year on infomercials and other advertising to promote its products and services. Plaintiff's training programs are designed to present their students with the maximum amount of education by offering cutting-edge real estate and investing materials and educational trainings to facilitate success for their students

This is an action for Defendants', XCENTRIC, BBB.ORG and ED MAGEDSON, unlawful publication of defamatory material concerning Plaintiff throughout its website, so that consumers and potential consumers searching the Internet for Plaintiff's products and services are subjected to defamatory material published by Defendants regarding Plaintiff and its business.

Defendants publish websites known as "www.ripoffreport.com" and "www.ripoffrevenge.com" for commercial and economic gain. Defendants hold themselves out to the public as a "worldwide consumer reporting website and publication, by consumers for consumers" to file and document consumer complaints about "companies or individuals who rip off consumers." Despite Plaintiff's excellent reputation for services in the community and amongst its customers, Plaintiff became a target for an attempted extortion scheme by Defendants, in part because of Plaintiff's nationwide success and clientele.

Upon targeting Plaintiff, Defendants commenced their illicit extortion scheme by posting false and slanderous "complaints" on their website, www.ripoffreport.com. The illicit extortion scheme involved the Defendants encouraging "clients" to complain about companies such as Plaintiff's businesses. Defendants actively solicit these "clients" to submit complaints about any company that has allegedly "ripped" the consumer off.

6

Once Defendants receive the complaints from the consumers they review them and actively select which complaints to publish on their website, "www.ripoffreport.com." In Defendants' selection process, they include a large number of negative comments but omit a large number of positive comments.

In addition to failing to verify the accuracy of the chosen complaints, Defendants often tailor and re-write the complaints themselves, adding words such as "ripoff," "dishonest," and "scam," notwithstanding the nature of the complaint, after which Defendants would have the "client" anonymously post the complaint on Defendants' website. Furthermore, and upon information and belief, Defendants would also create fictional complaints themselves, which were then attributed to people with false names or "anonymous" titles from fictional locations around the United States, despite knowing that such complaints were fabricated by Defendants themselves, and were false and slanderous. The posting of multiple complaints about a particular business allows Defendants to advance their extortion scheme. The contrived numerosity of the complaints gives the appearance of legitimacy to the complaints, and the multiple complaints are absorbed by search engines on the Internet, resulting in higher placement of the defamatory material on Internet search engines. Consequently, the defamatory material would be viewed by greater numbers of Plaintiff's customers and potential customers, and ultimately, Plaintiff. This was done in an effort to damage the targeted company and bring it closer to Defendants' extortion scheme. If a targeted company contacts Defendants to rebut the information on Defendants' websites, Defendants' either refuse to post the rebuttals, or step up the campaign of targeting the company with additional defamatory complaints to silence such rebuttal statements. If a targeted

company persists in its effort to rebut Defendants' false and defamatory postings, **the Defendants then launch an illicit extortion scheme whereby the targeted company is requested to pay a "fee" to cease the publication of such defamatory material**. Defendants never succeeded in their attempts to extort Plaintiff because Plaintiffs commenced this action before Defendants had an opportunity to seek such payment from Plaintiff, and in any event, Plaintiff would have refused to pay any extortion fees for the removal of the defamatory material.

Subsequent to the instant action being filed, Defendants filed suit against the undersigned law firm and Chris Sharp, Esq., an attorney working on this case, and his wife, listed as Jane Doe Sharp, in Arizona, titled <u>Magedson v. Christopher C. Sharp and Jane Doe Sharp; and Rothstein Rosenfedlt [sic] Adler</u>, Case No.: CV 1007-001968, Superior Court of Arizona, Maricopa County.

### B.   Standard

Pursuant to Rule 26(c), Fed.R.Civ.P., upon the filing of a motion accompanied by a certificate of good faith conference:

> [A]nd for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, . . . may make any order which justice requires to protect a party of person from annoyance, embarrassment, oppression, or undue burden or expense, . . . that the . . . disclosure or discovery not be had.

Rule 26(c)(1), Fed.R.Civ.P.  Defendants must show that Magedson would be annoyed, embarrassed or oppressed should the videotaped deposition be produced.

### C.   Failure to Serve

As discussed *supra*, it is the ordinary practice of the undersigned law firm to always mail a Subpoena to opposing counsel, pursuant to Rule 45, Fed.R.Civ.P,

contemporaneously with the service of the Subpoena. Due to the size of the undersigned law firm, twenty seven (27) attorneys and the massive amount of mail that is sent each day, the assistant responsible for mailing the Subpoena to opposing counsel cannot aver to the fact that it was mailed, however, it is her ordinary practice to mail a Subpoena to opposing counsel contemporaneously with serving the Subpoena. If the fault lies with undersigned law firm's failure to serve the Subpoena to Defendants, and not Defendants' misfiling, problems with U.S. Mail, etc., then the failure to mail the Subpoena to Defendants was completely unintentional.

Nonetheless, Defendants were given notice of the Subpoena and have had sufficient time to assert their objections as well as two opportunities to file Motions for Protective Order. Accordingly, Defendants have not been prejudiced by the purported failure to serve them, and as such, should not factor into the determination with regards to the production of the information. Should this Court determine that the failure to provide the Subpoena to Defendants result in the granting of Defendants' Motion for Protective Order and to Quash Subpoena, then Plaintiff will serve an identical Subpoena, and everyone will end up in the same place. Such a result would undoubtedly fail to promote judicial economy. Further, as this action is set for trial, pending a Motion for Continuance, commencing on April 2, 2007, time is of the essence with regards to issues pertaining to discovery. The third party did not object to producing the documents pursuant to the Subpoena.

### D. Good Cause / Annoyance

Substantively, Defendants must show that Magedson would be annoyed, embarrassed, unduly burdened and unfairly prejudiced if the videotaped deposition be

9

provided to Plaintiff.

Defendants' motion is predicated on the fact that Magedson operates a website, wherein Defendants post complaints critical of certain companies, and therefore, certain companies have become resentful of Defendants and might retaliate in some manner.[1] Defendants concede that: "Defendants do not claim that Russ Whitney or his business (Plaintiffs) would necessarily do that." Motion for Protective Order at 6. Defendants also do not provide one scintilla of evidence to show that Plaintiff would, or has even threatened, to utilize the deposition in any improper manner.

Instead, Defendants provide one purported threat against Magedson that is totally unrelated to the videotaped deposition, and unrelated to Plaintiff. Further, the purported threatening letter is not signed, not authenticated and constitutes impermissible hearsay.

Defendants also reference an "angry" business owner that has created a website to discuss Defendants, www.bad-business-rip-off.net . Ironically, Defendants complain about a company utilizing a website for the express purpose of providing critical information about them, something Defendants' website does, and one of the reasons why the instant suit was filed. Regardless, Plaintiff has no association with www.bad-business-rip-off.net, nor does it operate a website that criticizes Defendants. Again, Defendants' argument has nothing to do with Plaintiff, and does not establish "good cause."

Defendants next seem to utilize their prognostic abilities by arguing that if the deposition was allowed to circulate freely, it would "certainly be misused by hostile people in hostile public forums…The video transcript would be edited, altered, and manipulated to

---

[1] It should be noted that Defendants fail to state that the website postings include comment, editing and/or manufactured complaints directly from Defendants about Plaintiff. Further, Defendants fail to state that the only way a company that has complaints issued against it can rebut the complaints is to provide Defendants with tens of thousands of dollars just to provide its "rebuttal."

create slanted and false impressions, and it would be posted on internet blogs and websites. The video deposition transcript would be used as an instrument to unjustly annoy, embarrass, and oppress." Motion at 6. This gross speculation is not based on fact, and it is unclear how Magedson could possibly aver, under oath, that this would undoubtedly occur. Nonetheless, there does not exist any evidence that Plaintiff will widely disseminate the videotaped deposition.

In fact, Defendants only "evidence" is one purported threatening letter, one website criticizing Defendants and "Plaintiff's curious unwillingness to agree to reasonable restrictions on the use of the videotaped deposition." Motion at 7. However, the "reasonable" restrictions consisted of, among other things, "prohibiting Plaintiffs from altering, publishing, circulating, or distributing the video transcript." Id. Plaintiffs, however, might utilize the videotaped deposition for purposes of responding to subpoenas with regards to other lawsuits, similar to Mr. Whitelock's issue. Plaintiff might wish to provide the videotaped deposition to experts, witnesses and other interested parties for the purpose of assisting it in litigation. Undoubtedly, Plaintiff will wish to utilize the videotaped deposition in the Arizona action filed by Magedson against the undersigned law firm. These are wholly appropriate uses for the videotaped deposition that might fall outside the "reasonable" restrictions.

Further, although Plaintiff has no intention whatsoever, in utilizing the videotaped deposition on a website directed at Magedson, Defendants are seeking to abridge Plaintiff's First Amendment right to free speech. As Magedson has purposefully interjected himself into the public specter, he has clearly placed himself voluntarily into a position where his actions and statements will be scrutinized. This is especially true due to the fact that

11

Defendants maintain a website that criticizes other companies, and only allows companies to defend themselves by paying tens of thousands of dollars to Defendants. Should Plaintiff somehow distort the videotaped deposition, then Defendants could take legal action to defend them. Clearly, as evidenced by the already pending spurious action filed by Defendants against Plaintiff's attorneys and an attorney's wife, Defendants are aware of the legal mechanism to protect them.

In Condit v. Dunne, 225 F.R.D. 113 (S.D. N.Y. 2004), the District Court was confronted with a similar issue. In Condit, the plaintiff's attorney was quoted in the New York Post as stating that the defendant "was in 'deep, deep, trouble' as a result of his deposition testimony and that the 'transcript will be interesting, but the video will be even more interesting.' Further, in an email correspondence with defense counsel, Mr. Wood stated that 'when the public learns of Mr. Dunne's testimony, whatever reputation he enjoyed will be lost forever in my opinion.'" Condut, 225 F.R.D. at 114. The defendant moved for protective order to bar the public dissemination of the videotaped deposition of the defendant. Id. The Court found:

> Though the case law is muddled, the Court is persuaded that defendant fails to allege sufficiently good cause for sealing the videotape transcript of his deposition testimony, with specificity or otherwise. The Court finds no case law that would support sealing the video under the facts of this case; therefore, the Court finds that movant has failed to satisfy either standard.

Id. at 116. Therefore, even though the Court heard threats from plaintiff's counsel that the videotaped deposition would be disseminated, the Court did not find good cause to seal the videotaped transcript. In the instant matter, there do not exist any evidence, whatsoever, that Plaintiff plans to disseminate the videotape to the public, nor utilize the videotape in any improper manner. Thus, Defendants clearly cannot establish good cause

12

to deny Defendants the ability to observe the videotape. Id.; see also Flaherty v. Seroussi, 209 F.R.D. 295 (N.D.N.Y.2001) (Court found that the movant failed to establish good cause for protective order even though plaintiff's counsel stated: "relishes the opportunity to question [the Mayor and is] going to concentrate [his] efforts on knocking Mayor Seroussi's teeth down his throat.")

The cases cited by Defendants to support their position, Baker v. Buffenbarger, 2004 WL 2124787 (N.D. Ill. 2004) and Paisley Park Enterprises, Inc. v. Uptown Productions, 54 F.Supp.2d 347, 349 (S.D. N.Y. 1999), do not support their position. Those cases involved actual findings that the parties were going to utilize the deposition transcripts for improper purposes. However, in the instant action, no finding has been, or can be made.

### E. Circuit Court's Protective Order

As to the Circuit Court's Protective Order, there exists only one limitation. The court Ordered on October 12, 2005 that "Plaintiffs may take a video deposition, but cannot publish video on World Wide Web or otherwise…" See Order, Exhibit "B" to Defendants' Motion. Defendants represent that the Circuit Court "prohibited the dissemination of the videotaped deposition" and production of the videotape "would undermine what the Circuit Court sought to achieve when it precluded any dissemination of the videotaped deposition outside of the Federated litigation." Motion at 4. These statements are a complete misrepresentation of the Circuit Court's Order. Nowhere in the Order does the Circuit Court Judge state that the videotaped deposition could not be utilized outside of the litigation, he only Ordered that plaintiffs could not publish video on the World Wide Web or otherwise. Nothing in the Order prohibits the production of

the videotaped deposition pursuant to Subpoena in the instant action.

## CONCLUSION

It is unclear as to why Defendants did not receive the Subpoena at the same time that it was served on the third party. Undersigned is sure that it was mailed contemporaneously, but cannot aver to that fact simply due to the volume of mail generated by the undersigned law firm's office. If the Subpoena was not mailed to Defendants, it was an oversight and was certainly not intentional. Nonetheless, Defendants had sufficient time to voice their objections and prepare thorough briefs regarding same.

Substantively, Defendants cannot show good cause as to why the videotaped deposition should not be produced. Further, Defendants do not oppose the production of any other documents, as no mention is made in the Amended Motion to any other documents other than the videotape. Defendants have not shown that Plaintiff will do anything improper with the videotape. Even if Defendants did make a showing, the threat would have to rise to a level of **actual** harm to Defendants. This also was not established. Accordingly, for the foregoing reasons, Plaintiff's Motion should be **DENIED.**

Respectfully submitted,

By: /s/ Shawn L. Birken
    Scott W. Rothstein, Esq.
    FBN: 765880
    Shawn L. Birken, Esq.
    FBN: 418765
    Matthew S. Sackel, Esq.
    FBN: 0017903
    ROTHSTEINROSENFELDT ADLER
    **Counsel for Plaintiff**
    401 East Las Olas Boulevard, Suite 1650
    Fort Lauderdale, Florida 33301
    Tele: 954/522-3456
    Fax: 954/527-8663

Dated: March 2, 2007    E-Mail: srothstein@rra-law.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, by mail, this 2nd day of March, 2007, to: Maria Crimi Speth, Esq., Jaburg & Wilk, P.C., Counsel for Defendants, 3200 North Central Avenue, Suite 2000, Phoenix, AZ 85012.

ROTHSTEIN ROSENFELDT ADLER

By: /s/ Shawn L. Birken
    Scott W. Rothstein, Esq.
    Shawn L. Birken, Esq.
    Matthew S. Sackel, Esq.

H:\swrdocs\03-8471\Pleadings\Response to Motion for protection.doc