Maria Crimi Speth, #012574 (Admitted *Pro Hac Vice*)
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| WHITNEY INFORMATION NETWORK, INC.; a Colorado corporation,<br><br> Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, LLC, an Arizona limited liability company; BADBUSINESSBUREAU.ORG, an Arizona limited liability company; and ED MAGEDSON, an individual,<br><br> Defendants. | Case No: 2:04-CV-47-ftm-29<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND, ALTERNATIVELY, MOTION FOR RECONSIDERATION RE: MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR SANCTIONS** |

 Pursuant to Fed. R. Civ. P. 56(b) Xcentric Ventures, LLC, ("Xcentric"), and Ed Magedson ("Magedson") (collectively, the "Defendants") respectfully move this Court for a order granting them summary judgment in this case on the basis that there are no material facts in dispute and that Defendants are entitled to judgment as a matter of law. In the alternative, Defendants respectfully request that the Court reconsider its prior ruling *denying* their Motion to Dismiss because this Court lacks personal jurisdiction over the Defendants. In addition, Defendants seek an award of their attorneys' fees.

## I. INTRODUCTORY COMMENT

 The issues presented in this motion are not novel, but the facts and history are unfortunately complex. In an effort to assist the Court, this short introductory comment is offered to provide context for the arguments presented below.

10297-8/DSG/DSG/577485_v1

## II.   BACKGROUND/PROCEDURAL HISTORY

As the Court is aware, this case was commenced more than three years ago on January 27, 2004 with the filing of a Complaint (Doc. #1) by Plaintiff WHITNEY INFORMATION NETWORK, INC. ("WIN" or "Plaintiff") and its principal, RUSS WHITNEY ("Mr. Whitney"). The facts and procedural history are thoroughly discussed in the 11th Circuit's decision (Doc. #74) which *remanded* this matter for further proceedings. As such, only a very short summary of the facts/history is presented.

WIN's initial Complaint included multiple claims for common law trademark infringement, federal Lanham Act infringement/dilution, and common law defamation. According to ¶¶ 22–25 of the original Complaint, and ¶¶ 19–22 of the First Amended Complaint (Doc. # 56), WIN is a Florida-based company which advertises through "informercials" seeking to entice consumers to attend "free" seminars to learn how they can earn money investing in real estate.

Defendant Xcentric is an Arizona-based LLC which operates a website located at www.RipoffReport.com and www.BadBusinessBureau.com (the "ROR Site" or "Rip-Off Report"). Defendant ED MAGEDSON is the founder and "EDitor-in Chief" of Rip-Off Report.

Shortly after this case began, Defendants moved to dismiss (Doc. #6) on the basis that the Court lacked personal jurisdiction over them. That motion was denied on September 8, 2004 (Doc. #24).

Immediately following that ruling, on September 21, 2004, Defendants filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) (Doc. #26). The Motion to Dismiss was *granted* on July 14, 2005 (Doc. #49), but the case was dismissed *without prejudice*.

On July 28, 2005, WIN filed a Motion for Reconsideration (Doc. #51). On August 3, 2005, the Court issued an order (Doc. #52) which granted in part, and denied in part, WIN's motion. In that order, the Court clarified that because the dismissal was without

prejudice, WIN was permitted leave to file an amended complaint. After requesting, and receiving, additional time do to so, on September 27, 2005, WIN filed its First Amended Complaint (Doc. #56; the "FAC"). The FAC is the current operative complaint in this action.

On October 21, 2005, Defendants moved to dismiss (Doc. #57) the FAC on the basis of lack of personal jurisdiction. On February 15, 2006, the Court issued an order (Doc. #69) *granting* the motion and dismiss, this time with prejudice.

On March 16, 2006, WIN filed a Notice of Appeal (Doc. #72), and on September 1, 2006, the Eleventh Circuit issued a decision (Doc. #74) *reversing* the dismissal, but inviting the Court to consider additional issues relating to personal jurisdiction. On February 23, 2007, the Court entered an order (Doc. #82) denying the Motion to Dismiss for lack of jurisdiction. Defendants filed their Answer (Doc. #98) on March 9, 2007.

Obviously, because of (or despite) this convoluted history, the underlying merits of this case have received little attention in the past three years. Naturally, in the context of Rule 12 motion, the Court must either assume all of the allegations to be true, even if they are not true (in the case of a motion under 12(b)(6)), or the Court must generally resolve factual disputes in favor of the non-moving party (in the case of a motion under Rule 12(b)(2)).

It is now time for this case to move from the abstract to the real. Regardless of what Plaintiff has *alleged* in its Amended Complaint, those allegations cannot stand because there is not now, nor has there ever been, a single shred of evidence to support them.

Specifically, the core issue is this—pursuant to the Communications Decency Act, 47 U.S.C. § 230(c)(1) (the "CDA"), Defendants are not liable for material created by a third party. Knowing this and in an effort to avoid the CDA's effects, Plaintiff has *alleged* that Defendants personally created defamatory material. That allegation is false, no evidence whatsoever supports it, and thus no triable issue of fact exists.

**III.   STANDARD**

A party opposing a Motion for Summary Judgment must point to specific facts and must produce sufficient evidence in support of its position to establish that a factual dispute truly exists.  The non-moving party cannot rest upon mere allegations or denials in the pleadings to defeat the motion:

> Rule 56 makes clear that "[w]hen a motion for summary judgment is made and supported as provided in this rule, <u>an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading</u>, but ... must set forth <u>specific facts</u> showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). [citation] "A dispute about a material fact is 'genuine' if the '<u>evidence is such that a reasonable jury could return a verdict for the non-moving party</u>.' " "<u>The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law</u>."

*Dadeland Depot, Inc. v. St. Paul Fire And Marine Ins. Co.*, ___ F.3d ___, 2007 WL 562862, *7 (11th Cir. Feb. 26, 2007) (emphasis added) (internal citations omitted) (quoting *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  A party cannot defeat summary judgment merely by reciting *allegations* for which there is no *evidence*.

This is the case here.  Plaintiff's First Amended Complaint is founded upon allegations which are literally pure fiction, without a single shred of proof to support them.  Because Defendants support this motion with affidavits denying all the essential allegations against them, and because Plaintiff has no proof whatsoever to support its claims, summary judgment must be granted in favor of Defendants.  The mere *allegations* that Plaintiff has made are insufficient to create a triable question of fact in this context, and thus summary judgment is mandated here.

**IV.     ARGUMENT**

    **A.     Communications Decency Act—Summary**

Although this issue has been previously briefed to some extent, a short review is appropriate.

It is well-established law that under certain circumstances, those who "publish" or "distribute" defamatory statements via traditional methods (i.e., a newspaper or magazine) can be liable for false statements authored by a third party:

> At common law, "primary publishers," such as book, newspaper, or magazine publishers, are liable for defamation on the same basis as authors. Book sellers, news vendors, or other "distributors," however, may only be held liable if they knew or had reason to know of a publication's defamatory content.

*Barrett v. Rosenthal*, --- Cal.Rptr.3d ----, 2006 WL 3346218, *4 (Cal. Nov. 20, 2006) (citing *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997); Prosser & Keeton, The Law of Torts (5th ed.1984) § 113, pp. 810-811; Rest.2d Torts, § 581; *Osmond v. EWAP, Inc.* 153 Cal.App.3d 842, 852-854 (1984)).

For many years, this rule made sense because the publisher of traditional media sources can always review content <u>before</u> publication—in other words, virtually every word in a newspaper has been or could be reviewed by the publisher before printing. For that reason, courts have allowed defamation plaintiffs to sue a <u>publisher</u> even if the content at issue was written by a third party.

In recent years, the Internet has presented a new paradigm wherein people can publish statements by the millions on public message boards virtually instantly, at any time of the day or night, without any opportunity for pre-publication review by the site operator. Allowing traditional publisher or distributor based liability against website operators in this context would thus provide an immense incentive for such websites to prohibit any publication of messages by third parties, thereby reducing the amount of free speech available online.

5

For that reason, in 1996 Congress enacted the Communications Decency Act, 47 U.S.C. § 230, which prohibits all civil actions that treat an interactive computer service as the "publisher or speaker" of messages transmitted over its service by third parties. This federal statute, which was passed by Congress with the intent to "promote unfettered speech," provides in relevant part that:

> No <u>provider</u> or user of an <u>interactive computer service</u> shall be treated as the <u>publisher</u> or speaker <u>of any information provided by another information content provider</u>.

47 U.S.C. § 230(c)(1) (emphasis added). Section 230 further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Green v. America Online,* 318 F.3d 465, 470 (3rd Cir. 2003) (noting that the CDA, "'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions - such as deciding whether to publish, withdraw, postpone, or alter content.'").

An outstanding explanation of this law and its history is set forth in the California Supreme Court's recent opinion in *Barrett v. Rosenthal*, --- Cal.Rptr.3d ----, 2006 WL 3346218 (Cal. Nov. 20, 2006), cited above. In fact, as the *Barrett* Court recognized, the CDA has been universally interpreted as providing <u>immunity</u> to interactive websites for content created by a third party. *See Barrett*, 2006 WL 3346218, *18 note 18; (citing *Blumenthal v. Drudge*, 992 F.Supp. 44, 51 (D.D.C. 1998); *Ben Ezra, Weinstein, and Co., Inc. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Morrison v. America Online, Inc.*, 153 F.Supp.2d 930, 933–934 (N.D.Ind. 2001); *PatentWizard, Inc. v. Kinko's, Inc.* 163 F.Supp.2d 1069, 1071 (D.S.D. 2001); *Green v. America Online*, 318 F.3d 465, 470-471 (3rd Cir. 2003); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-1124 (9th Cir. 2003); *Doe One v. Oliver*, 755 A.2d 1000, 1003-1004 (Conn.Super.Ct. 2000); *Doe v. America Online, Inc.*, 783 So.2d 1010, 1013-1017 (Fla. 2001); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 40-42 (Wn.App. 2001); *Barrett v.*

6

*Fonorow* 799 N.E.2d 916, 923-925 (Ill.App.Ct. 2003); *Donato v. Moldow* 865 A.2d 711, 720-727 (N.J. Super.Ct.App.Div. 2005); *Austin v. CrystalTech Web Hosting*, 125 P.3d 389, 392-394 (Ariz.App. 2005)).

Secondary authority has also explained that:

> [The CDA's] provisions set up a <u>complete shield</u> from a defamation suit for an online service provider, <u>absent an affirmative showing that the service was the actual author of the defamatory content</u>. Accordingly, a number of courts have ruled that the ISP was immune from liability for defamation where allegedly libelous statements were made available by third parties through an ISP or were posted by third parties on the server's billboards, as the ISP fell within the scope of 47 U.S.C.A. § 230.

Jay M. Zitter, J.D., Annotation—*Liability of Internet Service Provider for Internet or E–mail Defamation* § 2, 84 A.L.R.5th 169 (2000) (emphasis added) (citing Pantazis, Note, *Zeran v America Online, Inc.: Insulating Internet Service Providers From Defamation Liability*, 34 Wake Forest L. Rev. 531 (1999)); *see also Batzel v. Smith,* 333 F.3d 1018, 1027–28 (9th Cir. 2003) (recognizing, "Making interactive computer services and their users liable for the speech of third parties would severely restrict the information available on the Internet. Section 230 therefore sought to prevent lawsuits from shutting down websites and other services on the Internet.") (quoting *Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 983–84 (10th Cir. 2000).

### B. CDA Immunity Applies To Defendants

In order for a defendant to avail himself of the CDA's immunity, <u>three</u> elements must be established: "[1] the defendant must be a provider or user of an interactive computer service; [2] the asserted claims must treat the defendant as a publisher or speaker of information; and [3] the information must be provided by another information content provider." *Schneider*, 31 P.3d at 39. The uncontested facts prove that each of these elements is present, and thus the CDA bars <u>all</u> of Plaintiff's claims here.

#### 1. Defendants Are An "Interactive Computer Service"

The ROR Sites are indisputably an "interactive computer service" provider as that term has been defined by CDA § 230 and as interpreted by various courts:

7

> An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server …" .

*Batzel*, 333 F.3d at 1030 (quoting 47 U.S.C. § 230(f)(2)). This definition includes any website that allows multiple users to connect to it. *See, e.g., Gentry v. eBay, Inc.,* 99 Cal.App.4th 816, 831 & n. 7, 121 Cal.Rptr.2d 703 (2002) (on-line auction website www.eBay.com is an "interactive computer service"); *Schneider*, *supra*, 31 P.3d at 40–41 (on-line bookstore www.Amazon.com is an "interactive computer service"); *Barrett v. Clark*, 2001 WL 881259 at *9 (Cal. 2001) (California Supreme Court holding online newsgroup considered an "interactive computer service"); *see also Ben Ezra*, 206 F.3d at 985 (parties conceded that AOL was an interactive computer service when it published an on-line stock quotation service); *Zeran*, 129 F.3d at 330 (AOL found to be "interactive computer service" when it operated <u>bulletin board service for subscribers</u>); *Blumenthal v. Drudge*, 992 F. Supp. 44, 49–50 (D. D.C. 1998) (parties conceded that AOL was an "interactive computer service" even when it published on-line gossip column).

Here, because they allow multiple users to access the Rip-Off Report site to post comments and review comments left by others, Defendants' ROR Sites plainly fall within the CDA's definition of "interactive computer service". This fact has been recognized by this Court and is not seriously disputed here: "In this case, Defendants are a service provider as they publish information by consumers on their website. They do not write the information. Thus, Defendants are immune by virtue of § 230(c)(1) [of the CDA] … ." *Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2005 WL 1677256 (M.D.Fla. 2005). This finding, which is unaffected by the Eleventh Circuit's remand, confirms that the ROR Sites qualify an "interactive computer service". Thus, the first element of CDA immunity has been established.[1]

---

[1] Although there can be no dispute that defendants are a provider of an interactive computer service, the statute also applies to the <u>user</u> of an interactive computer service. Defendants also qualify under that description.

### 2. Plaintiff's Claim Treats Defendants As Publisher/Speaker

The second element of CDA immunity cannot seriously be contested. Plaintiff clearly seeks to impose liability upon Defendants for "publishing" material about Plaintiff on the ROR Sites. Plaintiff's single defamation claim literally treats the Defendants as standing in the shoes of the publisher and/or speaker of the offensive material. The second element of CDA immunity has been established.

### 3. All Reports Were Created By Third Parties

Not surprisingly, this issue is the single most important point. As explained above, it is beyond dispute that the CDA provides "a <u>complete shield</u> from a defamation suit for an online service provider, <u>absent an affirmative showing that the service was the actual author of the defamatory content</u>." Thus, in order to avoid that problem, WIN has claimed that Defendants Xcentric and Magedson <u>were the actual authors of defamatory statements</u>.

Specifically, the FAC contains the following allegations accusing Defendants of directly creating defamatory material:

- ¶ 39. "In addition to failing to verify the accuracy of the chosen complaints, <u>Defendants often tailor and re-write the complaints themselves</u>, adding words such as 'ripoff,' 'dishonest,' and 'scam,' notwithstanding the nature of the complaint, after which Defendants would have the 'client' anonymously post the complaint on Defendants' website." (emphasis added)

- ¶ 40. "Furthermore, and upon information and belief, <u>Defendants would also create fictional complaints themselves,</u> which were then attributed to people with false names or 'anonymous' titles from fictional locations around the United States, despite knowing that such complaints were fabricated by Defendants themselves, and were false and slanderous. (emphasis added)

- ¶ 48. "Here, Defendants publish and make available for viewing more than dozen false stories about Plaintiff, <u>the content of which the Defendants themselves largely created</u>, with reckless disregard for the truth of such stories. (emphasis added)

These allegations are <u>pure fiction</u>. There is not now, and has never been, a single shred of proof to support these statements, because they are 100% false. As explained in

9

the affidavits submitted herewith, each and every person involved in the operation of Rip-Off Report has sworn that they never, at any time, created any reports about WIN, defamatory or otherwise, nor have they "tailored or re-written" the reports of others. (Statement of Facts. ¶ 5, 8 11)

With that evidence before the Court, WIN can no longer hide behind the unsubstantiated claims in its pleadings; in order to avoid summary judgment, WIN must produce <u>evidence</u> sufficient to support a finding in its favor. *See Dadeland Depot, Inc.*, supra, 2007 WL 562862, *7. Because WIN has no such evidence, summary judgment <u>must</u> be entered in favor of Defendants.

In addition, the Court should understand what has actually happened here—WIN is, and was, fully aware of the fact that the CDA expressly protects Defendants from any/all liability provided they did *not* create the offending content. Indeed, it is well-known that in the past several years, Defendants have been sued approximately twenty (20) times for claims relating to the publication of allegedly defamatory statements on Rip-Off Report. It is equally well-known that Defendants have <u>never lost a single case</u> involving CDA immunity for third-party statements.

Knowing that it could not bring an action alleging that Defendants should be liable merely for publishing statements authored by third parties, WIN alleged facts it knew were untrue—i.e., that Defendants *have* created defamatory content. By making these false claims, WIN knew that its Complaint would survive a Rule 12(b)(6) attack because in that context, the Court must assume the facts in the Complaint are true, even if they are not. WIN surely knew that it would never prevail on the merits (because there is no way for it to prove what it claims). WIN's goal in this case, however, was never to prevail on the merits, but rather to cause Defendants to divert their limited resources to attorney's fees rather than using those funds to expand and improve the Rip-Off Report website.

If that conclusion is not crystal clear to the Court, it should be. Again, because Defendants have been unsuccessfully sued on this *exact* same issue so many times before, they have first-hand experience observing frustrated Plaintiffs who disagree with the law,

and who therefore generate fictitious facts in a vain effort to obtain a result which the law does not permit; holding a website operator liable for information created by third party users of the site. *See Barrett*, 2006 WL 3346218, *17 (holding, "Plaintiffs are free under section 230 to pursue the originator of a defamatory Internet publication. Any further expansion of liability must await Congressional action.") (emphasis added).

Under these circumstances, given the extremity of WIN's conduct in this case wherein more than three years of judicial resources have been wasted pursing a case that was frivolous from the outset, Defendants respectfully suggest that upon disposition of this Rule 56 motion, the Court should also issue an Order to Show Cause pursuant to Fed. R. Civ. P. 11(c)(1)(B) requiring WIN and WIN's counsel to show cause why they should not be sanctioned.

### C. Plaintiff's "Extortion" Claims Are Not Material

The FAC contains allegations regarding Defendants' involvement in an "illicit extortion scheme". *See*, *e.g.*, FAC ¶¶ 34–36, 43. These allegations, while also baseless, create no barrier to summarily disposing of this case because the FAC contains only a single cause of action for state-law defamation. There is no claim for "*attempted extortion*" present in the Amended Complaint, and there is no known authority to support the viability of such a civil claim under Florida law.

Even if there were, by WIN's own admission, such a claim would meaningless here because, "Defendants never succeeded in their attempts to extort Plaintiff because Plaintiffs commenced this action before Defendants had an opportunity to seek such payment from Plaintiff, and in any event, Plaintiff would have refused to pay any extortion fees for the removal of the defamatory material." FAC ¶ 43.

These "extortion-related" allegations are pure surplusage and do not create a triable issue of fact because they are not material to the single claim involved here.

### D. The Court Should Reconsider Its Ruling On Personal Jurisdiction

Even though Defendants seek an adjudication of this case on the merits, it must still be noted that the facts here demonstrate that prior rulings to the contrary

11

notwithstanding, this Court lacks personal jurisdiction over Defendants. The reason for this is simple—Plaintiff has argued that Defendants are subject to personal jurisdiction in Florida because they "committed and continues to commit a tort in Florida by publishing false and defamatory information on its websites about Plaintiffs … ." FAC ¶¶ 4(b), 5(b), 6(b).

As demonstrated above, because Defendants are not the authors of any defamatory statements, they are entitled to complete immunity under the CDA. Therefore, they have <u>not</u> committed any tort, whether in Florida or anywhere else, merely by virtue of publishing statements on Rip-Off Report which third parties created. That conduct—website publishing—is not tortious, and therefore it could not support the exercise of personal jurisdiction over Defendants in Florida.

## V. CONCLUSION

As litigators and judges each know, subject to the restrictions of Rule 11, any party can make any allegation they wish in a Complaint. Even allegations which are entirely false can and will survive a Motion to Dismiss under Rule 12(b)(6) because in that context the factual claims are taken as true.

That rule no longer applies here. Plaintiff is no longer free to make claims which it knows are false simply in order to force the continuation of this case. This manner of conduct is the very definition of "abuse of process".

Because Defendants have presented evidence flatly denying their authorship of any defamatory materials regarding WIN, in order to defeat this motion, WIN must produce sufficient evidence to support a finding in its favor at trial. Its own speculation, rumor, hearsay and innuendo fail to satisfy this standard. Because it is certain that WIN will find no evidence to support its claim, Defendants are entitled to judgment as a matter of law.

In addition, based on the affidavits submitted herewith, because the facts establish that Defendants have *not* directed tortious activity at this state, Defendants respectfully

10297-8/DSG/DSG/577485_v1

request that the Court, alternatively, reconsider its prior ruling denying Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

Finally, Defendants respectfully suggest that the Court issue an order requiring Plaintiff and Plaintiffs' counsel to appear and show cause, if any they may have, as to why they should not be sanctioned pursuant to Rule 11(c) for making knowingly false statements of fact to this Court.

DATED this 21st day of June, 2007.

**JABURG & WILK, P.C.**

s/Maria Crimi Speth
Maria Crimi Speth, Esq.
Attorneys for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June, 2007, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Steven Neil Lippman
Shawn L. Birken
Scott W. Rothstein
Rothstein Rosenfeld Adler
Suite 1650
401 E Las Olas Blvd
Ft Lauderdale, FL 33301
Attorneys for Plaintiff

10297-8/DSG/DSG/577485_v1

                              Brian J. Stack
                        Stack, Fernandez, Anderson,
                          Harris & Wallace, P.A.
                      1200 Brickell Ave., Suite 950
                          Miami, FL 33131-3255
                          Attorneys for Defendant


                              <u>s/Debra Gower              </u>

10297-8/DSG/DSG/577485_v1