UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 2:04-cv-47-FtM-34 SPC

WHITNEY INFORMATION
NETWORK, INC., a Colorado corporation,

    Plaintiff,

v.

XCENTRIC VENTURES, LLC., an
Arizona limited liability company;
BADBUSINESSBUREAU.ORG, an
Arizona limited liability company; and
ED MAGEDSON, an individual,

    Defendants.

_____/

**RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND, ALTERNATIVELY, MOTION FOR RECONSIDERATION RE: MOTION TO DISMISS PLAINTIFF' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR SANCTIONS <u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Plaintiff, Whitney Information Network, Inc. ("WIN"), hereby files this Response to Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law and states:

On September 27, 2005, WIN filed its First Amended Complaint [Court Document No. 56] against defendants, Xcentric Ventures, LLC, Badbusinessbureau.org and Ed Magedson, alleging a cause of action for defamation *per se* based upon derogatory comments about WIN contained on the "Rip-off Report" website. On June 21, 2007, each of the defendants filed their Motion for Summary Judgment and, Alternatively, Motion for Reconsideration Re: Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction and Motion for Sanctions [Court

Document No. 115] (the "Summary Judgment Motion") in which they contend that the Communications Decency Act, 47 U.S.C. § 230(c)(1)("CDA"), grants them immunity from WIN's claim. Alternatively, defendants again seek dismissal for lack of personal jurisdiction (despite this Court's and the Eleventh Circuit's determinations to the contrary). Because defendants are responsible, at least in part, for the creation or development of the content on the "Rip-off Report" website they lose the protection of the CDA. Further, since Mr. Magedson is not the owner or operator of the website he is not entitled to the protection of the CDA. Accordingly, the Summary Judgment Motion must be denied. Additionally, since the defendants have conclusively been determined to be subject to personal jurisdiction in this Court, their alternative motion for reconsideration must be denied. Finally, defendants have asserted no basis for the imposition of sanctions.

### A.   Motion for Summary Judgment Standards

Rule 56(c), Fed. R.Civ. P., mandates that a moving party is only entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "The substantive law applicable to the case determines which facts are material." Fitzpatrick v. City of Atlanta, 3 F.3d 1113, 1115 (11th Cir. 1993)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party seeking summary judgment bears the burden of demonstrating that no genuine dispute as to any material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-248; Pritchard v. Southern Company Services, 92 F.3d 1130, 1132 (11th Cir. 1996). In Pritchard, the Eleventh Circuit reiterated

that "the evidence must be viewed in the light most favorable to the non-moving party." 92 F.3d at 1132. Elaborating on this often-cited standard, the Eleventh Circuit has held that not only must a court resolve all reasonable doubts as to the facts in favor of the party opposing summary judgment, but the court must also "draw all justifiable inferences in his favor." Fitzpatrick, 3 F.3d at 1115.

At a minimum at this stage of these proceedings genuine issues of material fact exist and defendants are incapable of establishing an entitlement to a judgment in their favor as a matter of law. Consequently, the Summary Judgment Motion must be denied.

### B. Defamation *Per Se* Standards

"Under Florida law, the elements of a defamation claim include 'a false and defamatory statement concerning another.'" Johnson v. Clark, 484 F.Supp. 2d 1242, 1247 (M.D.Fla. 2007); Thomas v. Jacksonville Tel., Inc., 699 So. 2d 800, 803 (Fla. 1st DCA 1997). A statement is generally defamatory where it injures a person in his trade or in his profession. Scholz v. RDV Sports, Inc., 710 So. 2d 618, 625 (Fla. 5th DCA 1998). Determining whether a statement is defamatory requires the finder of fact to decide whether, "from the language of the comment, it does not seem unreasonable to infer that persons hearing the same and possessed of a common mind might have taken it to mean that the plaintiff was a person with whom commercial relations were undesirable." Id. (quoting Wolfson v. Kirk, 273 So. 2d 774, 778 (Fla. 4th DCA 1973)).

In their Summary Judgment Motion defendants do not address whether or not the statements at issue are defamatory and, therefore, cannot obtain summary judgment on this issue should this Court find that they are not protected by the CDA.

ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre, Suite 1650, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301

C.  **Communications Decency Act**

  1.  **Mr. Magedson is not protected by the CDA because he does not own or operate the website on which the defamatory statements are made**

The defamatory statements at issue are contained on a website called the "Rip-off Report" which is operated by Xcentric Ventures, LLC. Transcript of August 1, 2007, deposition of Edward Magedson ("Magedson Transcript") at pp. 27 & 68. Mr. Magedson is not the owner of Xcentric Ventures, LLC. Id. at pp. 23-26.

The CDA states, in pertinent part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA preempts any inconsistent state or local law. 47 U.S.C. § 230(e)(3). As a result, the CDA "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998). "The immunity applies to a defendant who is the 'provider…of an interactive computer service' and is being sued 'as the publisher or speaker of any information provided by' someone else." Fair Housing Council of San Fernando Valley v. Roommates.com, LLC, 489 F.3d 921 (9th Cir. 2007); 47 U.S.C. § 230(c).

"Magedson does not qualify for immunity under the CDA because he is neither a provider nor a user of an interactive computer service." MCW, Inc. v. Badbusinessbureau.com, L.L.C., 2004 WL 833595 at *9 (N.D. Tex. 2004); 47 U.S.C. § 230. MCW sued the operators of the same "Rip-off Report" website at issue here for using its marks in connection with disparaging comments about it and its goods or

4

services on the "Rip-off Report" website. 2004 WL 833595 at *2. Defendants sought to dismiss the action because, among other things, they claimed their actions were protected by the CDA. Id. The court in MCW rejected that argument as to Mr. Magedson for the foregoing reason. Because Mr. Magedson is not, as a matter of law, entitled to immunity pursuant to the CDA, the Summary Judgment Motion must be denied as to him.

> **2. None of the defendants are protected by the CDA because they are responsible, in whole or in part, for the creation or development of the postings on the "Rip-off Report" website on which contain the defamatory statements**

Defendants contend that they merely post information provided by third parties on the "Rip-off Report" website and therefore are afforded immunity pursuant to the CDA. CDA "immunity is not so broad as to extend to an interactive computer service that goes beyond the traditional publisher's role and takes an active role in creating or developing the content at issue." MCW, 2004 WL 833595 at *8. "In determining whether the defendants qualify as information content providers, the critical issue is whether they are 'responsible, in whole or in part, for the creation or development of [any disputed] information.'" Id. at *9; 47 U.S.C. § 230(f)(3).

The "Rip-off Report" website contains postings by "consumers" about their experiences. While defendants contend in self-serving statements that they do not create the content of the "Rip-off Report" website, the evidence is to the contrary. In order to post a report on the "Rip-off Report" website one needs to follow a number of procedures including "Categorize your report by selecting from our list of categories." Magedson Transcript at pp. 132-133 (Exhibit 6). In order to do so, a number of choices are provided from which a selection must be made. Id. at p. 133. Xcentric Ventures, LLC chooses

5

ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre, Suite 1650, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301

which categories are included for selection. Id. at pp. 136 & 142-143. Among the categories for selection are "con artists", "corrupt companies" and "false TV advertisements", which categories were used on the postings at issue regarding WIN. Id. at pp. 144-153 (Exhibit 8). The creation of these categories from which a user of the "Rip-off Report" website must choose, in and of themselves, constitutes, as a matter of law, the creation or development of the content at issue and takes defendants outside the protection of CDA immunity. MCW, 2004 WL 833595 at * 10 & n 10. The MCW court found that defendants created "report titles and various headings" "such as 'Con Artist,' 'Scam,' and "Ripoff," and organize the reports under headings such as 'Con Artists' and 'Corrupt Companies", Id., just like the foregoing reveals. Based upon this the MCW court held that "[t]he titles and headings are clearly part of the web page content. Accordingly, the defendants are information content providers with respect to the website postings and thus are not immune from MCW's claims." Id. at *9.

In Fair Housing Council, the Ninth Circuit considered whether "Roommates.com" was afforded protection under the CDA. In order to use Roommates.com's service a questionnaire must be completed including the selection of options contained in it. 489 F.3d at 926. This is the same process used on the "Rip-off Report" website discussed in the prior paragraph. The Ninth Circuit found that the website "creat[ed] or develop[ed]" the forms and answer choices. As a result, Roommate is a content provider of these questionnaires and does not qualify for CDA immunity for their publication." Id. The same conclusion applies to the defendants.

ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre, Suite 1650, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301

The Ninth Circuit in Fair Housing Council further posited a fact pattern strikingly similar to the one in the instant action. The Court stated:

> Imagine, for example, www. harrassthem. com with the slogan "Don't Get Mad, Get Even." A visitor to this website would be encouraged to provide private, sensitive and/or defamatory information about others-all to be posted online for a fee. To post the information, the individual would be invited to answer questions about the target's name, addresses, phone numbers, social security number, credit cards, bank accounts, mother's maiden name, sexual orientation, drinking habits and the like. In addition, the website would encourage the poster to provide dirt on the victim, with instructions that the information need not be confirmed, but could be based on rumor, conjecture or fabrication.
>
> It is not clear to us that the operator of this hypothetical website would be protected by the logic of Carafano. The date match website in Carafano had no involvement in the creation and development of the defamatory and private information; the hypothetical operator of harrassthem.com would. By providing a forum designed to publish sensitive and defamatory information, and suggesting the type of information that might be disclosed to best harass and endanger the targets, this website operator might well be held responsible for creating and developing the tortious information. Carafano did not consider whether the CDA protected such websites, and we do not read that opinion as granting CDA immunity to those who actively encourage, solicit and profit from the tortious and unlawful communications of others.

Id. at 928  This hypothetical fact pattern is eerily similar to the facts before this Court in this action.

The home page of the "Rip-Off Report" website states that its purpose is "to file & document complaints about Companies or Individuals who ripoff consumers." Magedson Transcript at pp 49-50 (Exhibits 1 & 2). It solicits those who believe they are the "Victim of a consumer Rip-off" who "Want justice". Id. People are encouraged to file reports; they are told that "Filing a Rip-Off Report™ is important because you are helping us to help you, and others like you, achieve justice. We are able to accomplish this by working with the proper authorities for prosecution, and working with lawyers by

7

ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre, Suite 1650, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301

using your Report to help organize lawsuits" and "The more Reports filed on a Company or individual, the more likely it is that the authorities and attorneys will want to take action." Id. at pp 54-55 & 69-71 (Exhibits 1 & 2). In this regard Xcentric Ventures, LLC has assembled materials filed on its website and submitted them to a governmental agency who might be interested. Id. at p 58. To further entice people to post reports they are told that "Rip-Off Report™ works regularly with most TV News magazines & Networks and their affiliates, NBC, CBS, ABC, Fox News and local and National newspapers including The New York Times the Wall Street Journal to Auto Motive News" such that "Reporting your experiences on Rip-off Report is the next best thing to getting your story on TV or in a newspaper." Id. at pp 71-72 & 88-89 (Exhibit 1). In this regard Xcentric Ventures, LLC has provided information from reports posted on the "Rip-off Report" website to reporters. Id. at pp 74-75. Facilitating a connection between the people positing reports on the "Rip-off Report" website and the media is an inducement to people to post reports on the "Rip-off Report" website. Id. at pp 75-76. As the foregoing reveals, Xcentric Ventures, LLC is not merely a passive publisher of information provided by others. Xcentric Ventures, LLC explicitly acknowledges this by stating that "We are anxious and willing to join forces with victims and attorneys to stand up for the rights of consumers and help them get justice. E-mail us. Both victims and attorneys should send their e-mails to: ClassAction@ripoffreport.com" and "We get requests every week for class action lawsuits; bringing victims together with lawyers willing to sue the company after reading your filed Rip-off Report™." Id. at pp. 84-85 & 89 (Exhibit 1). This email address (ClassAction@ripoffreport.com) would go to Xcentric Ventures, LLC's office. Id. at p. 85. Xcentric Ventures, LLC even solicits the disclosure

8

of privileged information, Id. at p. 76 (Exhibit 1)("If you are an employee or ex-employee with privileged information about the company or individual reported, and you can provide 'insider information', please click on the REBUTTAL Box at the end of the specific Rip-off Report™ you wish to give information on. This sort of information is often very helpful to an investigation and always needed."); which solicitation it now realizes is inappropriate, Id. at pp. 77-79. People are encouraged to "USE YOUR REPORT TO GET WHAT IS COMING TO YOU" by extorting things from the reported entity ("Faxing your Rip-off Report™ to the Company or Individual you have just reported can serve as a very valuable negotiating tool. Include in your negotiation that you have the ability to UPDATE your Report and reflect their good business practices by explaining that their eagerness to satisfy the complaint and make things right will be seen by the entire world. Also, explain that failure to respond/rectify the situation will also be seen."). Id. at p. 80 (Exhibit 1)(emphasis in original). Xcentric Ventures, LLC encourages such reports even though it knows that people can post a report with derogatory comments that are totally false for spiteful purposes. Id. at pp 81-81. The solicitation closes with "Don't let them get away with it!  File your Report Now!" Id. (Exhibit 1). By engaging in these activities defendants operate outside the protection of the CDA. "The defendants cannot disclaim responsibility for disparaging material that they actively solicit. Furthermore, actively encouraging and instructing a consumer to gather specific detailed information is an activity that goes substantially beyond the traditional publisher's editorial role… They are participating in the process of developing information."  MCW, 2004 WL 833595 at * 10. This is they type of inappropriate solicitation which takes the defendants outside the CDA's protection. Fair Housing

9

<u>Council</u>, 489 F.3d at 928.

Not only do the defendants solicit reports, they take an active role in shaping the content of the postings on the "Rip-off Report" website. Under a heading "What makes a good Rip-off Report?" they provide "guidance on what [consumers] should think about in preparing their Rip-Off Reports", Magedson Transcript at p. 137 (Exhibit 6), including guidance on preparing a title such as "Be creative when using the example words. It will make your report more interesting", <u>Id</u>. at pp. 140-141 (Exhibit 7). The home page of the "Rip-off Report" website contains a "front page" section which contains a picture and description of the "Top Rip-off Reports", "Top Rip-off Links" and "Featured Rip-off Reports." <u>Id</u>. at pp 52-53 & 92-94 (Exhibits 1 & 2). Not only does Xcentric Ventures, LLC decide which submissions are included in the "Top Rip-off Reports", "Top Rip-off Links" and "Featured Rip-off Reports", <u>Id</u>. at pp 53 & 92-94, under a heading "How can my story be featured on the Home page?" they provide "guidance to a person who wants to place a Rip-Off Report as to how his might be deemed worthy of being in the top Rip-off Reports or featured Rip-Off Reports ….." <u>Id</u>. at p. 137-138 (Exhibit 6). This type of activity precludes defendants from utilizing CDA immunity. <u>MCW</u>, 2004 WL 833595 at * 10; <u>Fair Housing Council</u>, 489 F.3d at 928.

Defendants sell a "Revenge Guide" on the "Rip-off Report" website. Magedson Transcript at p 96 (Exhibits 2 & 3). Mr. Magedson prepared this "Revenge Guide." <u>Id</u>. at p 109. This "Revenge Guide" provides that "YOUR FIRST STEP TO REVENGE. First go to RIP-OFF Report to file your report and begin your Rip-off Revenge." <u>Id</u>. at p 103 (Exhibit 3)(emphasis in original). This activity, as a matter of law, prevents defendants from obtaining CDA immunity. <u>MCW</u>, 2004 WL 833595 at * 10; <u>Fair Housing Council</u>,

489 F.3d at 928.

Advertising is also sold on the "Rip-off Report" website. Magedson Transcript at p 110 (Exhibit 4). Xcentric Ventures, LLC acknowledges that the more hits it receives on its "Rip-off Report" website the greater the likelihood it can sell advertising and the greater amount it could sell that advertising for. Id. at p 111. In addition, donations are solicited on the "Rip-off Report" website and, likewise, the more hits the website receives the greater the likelihood it will obtain more and larger donations. Id. at p 112-115 (Exhibit 5). Donations are solicited to fund investigation of consumer complaints and to assist consumers. Id. at p 124. The "Rip-off Report" website states that "TOGETHER, WE ARE A CONSUMER-REPORTING NEWS AGENCY, BY CONSUMERS, FOR CONSUMERS" and that "In response to reports placed on the website, we research abuses and help individuals defend their rights. Since our inception, we have helped consumers collect well over a million dollars to date …." Id. at pp 124-125 (Exhibit 5)(emphasis in original). These actions preclude defendants from utilizing the CDA's immunity. Fair Housing Council, 489 F.3d at 928.

One can avoid having reports posted about them on the "Rip-off Report" website by paying defendants a fee through participation in what is called the corporate advocacy program. Magedson Transcript at p. 155. For this fee, defendants tell those people who might submit a report that "these guys are pretty good. They'll address your thing. Somebody will contact you in X number of days." Id. at p. 165. Defendants "try to calm them down." Id. The corporate advocacy program member then has an opportunity to deal with the person submitting the report and if they can satisfy that person the report is never posted on the "Rip-off Report" website. Id. at 166-168. Even if the person

11

submitting the report is not satisfied, Xcentric Ventures, LLC might still decide not to post his report on the "Rip-off Report" website if it determines that the corporate advocacy program member's response is acceptable. Id. at 173-180 & 203-205. This ability to prevent the positing of submitted reports is only available to those who pay the fee to belong to the corporate advocacy program. A corporate advocacy program member may retain defendants to investigate and publish their findings regarding the truthfulness of complaints about that member. Id. at 181 (Exhibit (9). These activities also preclude defendants from utilizing the CDA's immunity. Fair Housing Council, 489 F.3d at 928.

While people are encouraged to say whatever they want in reports posted on the "Rip-off Report" website (and, as shown *supra* at pp 7-9, defendants solicit and encourage such postings), the people about whom a report is posted are constricted in what they are allowed to do in rebuttal. Magedson Transcript at pp. 182-189 (Exhibits 10 & 11). They are not allowed to make "trivial comments", whatever that means; Xcentric Ventures, LLC decides if a rebuttal contains a "trivial comment" in which event it may not get posted on the "Rip-off Report" website. Id. at 183-184 (Exhibit 10). Mr. Magedson concedes that this standard is inconsistently enforced. Id. at 263-264. People considering a rebuttal are told there is a fee to submit multiple rebuttals. Id. at 186 (Exhibit 11)(Although defendants contend, contrary to what they say on the website, there was never such a fee, there is no evidence that anybody was told this). If Xcentric Ventures, LLC does not like a rebuttal it is not posted on the "Rip-off Report" website. Id. at 189 & 229-30.

Contrary to their position, evidence exists that Mr. Magedson himself prepares reports posted on the "Rip-off Report" website. Dickson Earl Woodard testified that:

12

> Q. Ed [Magedson] will actually write the reports, though?
> A. Yes.
> Q. He'll write the reports, and he'll write the headings on the report?
> A. Yeah. I mean that's part of what he does, is the background and the due diligence, and probably more than highly likely hacking into the networks that would afford him the necessary data to produce details or - - afford him the necessary data to produce details or - - and/or he does have some complaints that he can - - he can kind of combine or make - - make with the data that he does have and what he - - the result is a very readable, believable sounding, heart-wrenching story about somebody's getting shafted. But he only needs, like, two complaints or just to get into their net - - somebody's network, and he's got, you all of their clients…

**Dickson Earl Woodard Deposition at 147-48.** Mr. Woodard further testified:

> Q: So what I've gathered from all of your testimony, Dickson, is that Ed Magedson has indirectly told you that he is responsible for making posts about companies. He will make these posts.
> A. Yes.
> Q. And then he will manipulate the search engines; is that true?
> A. No question about the search engines. That's where the money is made.

**Dickson Earl Woodard Deposition Vol. II at 480.**

Since factual issues remain concerning defendants activities with regard to the "Rip-off Report" website, and some undisputed facts (based upon defendants' own testimony) reveal that their conduct precludes them, as a matter of law, from utilizing CDA immunity, the Summary Judgment Motion must be denied.

   D.   <u>**Personal Jurisdiction**</u>

Defendants contend that this Court lacks personal jurisdiction over them. Defendants make this argument even though this Court, as well as the Eleventh Circuit, have previously held that personal jurisdiction is proper in this Court due to their tortious

ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre, Suite 1650, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301

activities in the state. Judgment [Court Document No. 74]; Memorandum and Order [Court Document No. 82].

The United States Supreme Court in <u>Christianson v. Colt Industries</u>, 486 U.S. 800 (1988), held as axiomatic the doctrine that "`when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states in the same case. This rule of practice promotes the finality and efficiency of the judicial process by `protecting against agitation of settled issues.'" 486 U.S. at 815-816. This axiom is what has generally been referred to as the law-of-the-case doctrine. The law-of-the-case doctrine limits the extent to which an issue will be reconsidered once a court has already ruled on a particular issue. <u>Fagan v. City of Vineland</u>, 22 F.3d 1283, 1290 (3d Cir. 1994). This long standing doctrine is essential to ensure the practice that federal courts should generally "refuse to reopen what has been decided . . . ." <u>Messenger v. Anderson</u>, 225 U.S. 436 (1912). The United States Supreme Court noted that while "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, . . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was `clearly erroneous and would work a manifest injustice.'" 486 U.S. at 817.

Defendants do not even attempt to show any basis for this Court to reconsider its and the Eleventh Circuit's prior decisions as to personal jurisdiction. Rather, they simply argue that because they are entitled to complete immunity under the CDA they have committed no tort so they cannot be subject to jurisdiction in Florida. Summary Judgment Motion at pp. 11-12.

ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre, Suite 1650, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301

The prior determinations that personal jurisdiction over the defendants is proper in this Court is in accord with the governing law. "Florida courts subscribe to the rule that the tort of libel occurs wherever the offending material is circulated." Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998); citing Madara v. Hall, 916 F.2d 1510, 1515 (11th Cir. 1990)(finding jurisdiction over nonresident defendant for libel action on the basis that the libelous material was circulated in Florida, even though defendant was an individual and not the publisher of libelous information). Florida courts have consistently allowed personal jurisdiction over nonresident defendants in libel actions when alleged libelous material was circulated in Florida, especially when the libelous material was directed at a Florida entity and/or resident. Id. at 1515. Physical presence in Florida is not required to "commit a tortious act" for purposes of Florida's long-arm statute. Wendt v. Horowitz, 822 So. 2d 1252 (Fla. 2002)(finding that telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under 48.193(1)(b) if the alleged cause of action arises from the communication). Furthermore, committing a tortious act under Florida's long-arm statute does not require that a physical tort occur in this state. Id. at 1258. Florida courts have uniformly found that they have an interest in adjudicating disputes arising from publication, dissemination or communication of defamatory information in Florida. See, e.g., Becker v. Hooshman, M.D., 841 So. 2d 561 (Fla. 4th DCA 2003) (finding jurisdiction over nonresident moderator of an Internet chat room for posting numerous defamatory comments about a Florida resident, causing injury to a Florida resident); Silver v. Levinson, 648 So. 2d 240 (Fla. 4th DCA 1994) (mailing a letter into the State of Florida was sufficient). As clearly set forth in the First Amended Complaint, defendants facilitate the publication of defamatory material and disseminate this

15

defamatory material in Florida, which is specifically directed at win, a company with its principal place of business in Florida, such that defendants are subject to personal jurisdiction in Florida.

Since defendants offer no basis to alter the prior rulings of this Court and the Eleventh Circuit upholding personal jurisdiction over the defendants in Florida, which decisions this Court is bound to continue to follow and is in accord with governing law, defendants' alternative motion for reconsideration regarding their prior motion to dismiss for lack of personal jurisdiction must be denied.

Although not cited, it appears that Defendants seek reconsideration of the Eleventh Circuit and this Court's findings regarding personal jurisdiction Pursuant to Rule 60(b), Fed.R.Civ.P. Rule 60(b) "is designed to 'strike[ ] a balance between serving the ends of justice and preserving the finality of judgments.' " Batac Dev. Corp. v. B & R Consultants Inc., 2000 WL 307400, at *3 (S.D.N.Y. 2000) (quoting Nemaizer v. Baker, 793 F.2d 58, 61 (2nd Cir.1986)). "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir.2001); The moving party bears the burden of proof. Id. at 391; Am. Tissue, Inc. v. Arthur Andersen L.L.P., 2005 WL 712201, at *2 (S.D.N.Y. 2005).

Defendants also do not set forth any reason as to why this Court should revisit the issue of jurisdiction, other than it was in error. "Rule 60(b) was not intended to provide relief for error on the part of the Court." U.S. v. Failla, 164 F.Supp. 307, 312 (D.C.N.J. 1958); Ackermann v. United States, 340 U.S. 193 (1950); Nachod, etc. Co., Inc., v. Automatic Signal Corp., 32 F.Supp. 588 (D.C.Conn.1940). Nor was the Rule intended to
16

ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre, Suite 1650, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301

afford a substitute for an appeal. Morse-Starrett Products Co. v. Steccone, 205 F.2d 244, 249 (9th Cir. 1953)." Additionally, a party must introduce new evidence or law to utilize Rule 60(b)(6) and cannot rehash the same argument. United States v. Williams, 2007 WL 1320276, *5 (N.D.Fla. 2007) ("[H]e is not entitled to relief under Rule 60(b)(6) as he has not demonstrated extraordinary circumstances. There is no new law in Defendant's favor on the conflict of interest waiver issues, indeed, subsequent law supports the judgment.") Because Defendants' fail to point out any reason other than their belief that this Court erred, their untitled motion for reconsideration should be denied.

### E.   Sanctions

Although they make no argument to support their request, defendants request an order to show cause why sanctions should not be imposed pursuant to Fed. R.Civ. P. 11(c). Summary Judgment Motion at p 13. Defendants proffer no basis to support this request. It is also procedurally deficient as the requisite notice has not been provided. Fed. R.Civ. P. 11(c)(1). There is simply no basis for an imposition of sanctions (which is likely why defendants spend so little time on this request).

### F.   Conclusion

For the foregoing reasons the Summary Judgment Motion (defendants' request for summary judgment, request for reconsideration of their motion to dismiss due to a lack of personal jurisdiction, and request for sanctions) must be denied in its entirety.

17

ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre, Suite 1650, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301

Dated:  September 10, 2007

>Respectfully submitted,
>
>By: /s/ Shawn L. Birken
>Scott W. Rothstein
>Florida Bar No.: 765880
>Steven N. Lippman
>Florida Bar No.: 709638
>Shawn L. Birken
>Florida bar No.: 418765
>ROTHSTEIN ROSENFELDT ADLER
>**Counsel for Plaintiffs**
>401 East Las Olas Boulevard, Suite 1650
>Fort Lauderdale, Florida 33301
>Tele:  954/522-3456
>Fax:   954/527-8663
>E-Mail: sbirken@rra-law.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September, 2007, I electronically filed the forgoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day upon all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>/s/ Shawn L. Birken
>Shawn L. Birken

H:\swrdocs\03-8471\Pleadings\rresponse msj.doc

**SERVICE LIST**
United States District Court, Middle District of Florida
Fort Myers Division
Whitney Information Network, Inc. vs. Xcentric Ventures, LLC., et al.
Case No.  2:04-cv-47-FtM-34SPC

Scott W. Rothstein, Esq.
srothstein@rra-law.com
Steven N. Lippman, Esq.
slippman@rra-law.com
Shawn L. Birken, Esq.
sbirken@rra-law.com
ROTHSTEIN ROSENFELDT ADLER
401 East Las Olas Boulevard, Suite 1650
Fort Lauderdale, Florida 33301
Tele:  954/522-3456
Fax:   954/527-8663
**Counsel for Plaintiff**
  Whitney Information Network, Inc.

Brian J. Stack, Esq.
Stack, Fernandez, Anderson, Harris & Wallace, P.A.
1200 Brickell Ave., Suite 950
Miami, Florida 33131
bstack@stackfernandez.com
Tele.:  305/371-0001
Fax:    305/371-0002
**Counsel for Defendants**
 Xcentric Ventures, LLC, badbusinessbureau.org and EdMagedson

Maria Crimi Speth, Esq.
mcs@jaburgwilk.com
Jaburg & Wilk, PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
Tele.:  602/248-1089
Fax:    602/248-0522
**Counsel for Defendants**
 Xcentric Ventures, LLC, badbusinessbureau.org and EdMagedson